**Liani J. Reeves, OSB No. 013904**
liani.reeves@millernash.com
**Ed Choi, OSB No. 135673**
ed.choi@millernash.com
**Heather Van Meter, OSB No. 983625**
heather.vanmeter@millernash.com
Miller Nash, LLP
111 SW 5th Avenue, Suite 3400
Portland, OR  97204
503-224-5858/Telephone
503-224-0155/Facsimile

Attorneys for Defendant City of Brookings

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# MEDFORD DIVISION

| | |
|---|---|
| **ST. TIMOTHY'S EPISCOPAL CHURCH**, by and through **THE DIOCESE OF OREGON**, dba **THE EPISCOPAL DIOCESE OF OREGON**, an Oregon nonprofit corporation, and **REVEREND JAMES BERNARD LINDLEY**, vicar of St. Timothy's Episcopal Church, | Case No. 1:22-cv-00156-CL<br><br>**DEFENDANT CITY OF BROOKINGS' MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |
| Plaintiffs, | |
| v. | |
| **CITY OF BROOKINGS**, an Oregon municipal government, | |
| Defendant. | |

**TABLE OF CONTENTS**

I.    MOTIONS ...................................................................................................8

II.   INTRODUCTION ........................................................................................9

III.  APPLICABLE LEGAL STANDARD ......................................................11

IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS ...........................11

V.    POINTS AND AUTHORITIES ..................................................................18

      MOTION #1: PLAINTIFFS' RLUIPA CLAIM FAILS BECAUSE THERE IS
            NO INDIVIDUALIZED ASSESSMENT OF PLAINTIFFS' PROPERTY
            USES, AND ORDINANCE #21-O-795 ACTUALLY ALLOWS AN
            ACTIVITY THAT IS NOT OTHERWISE ALLOWED IN
            RESIDENTIAL ZONES ..................................................................18

      A.    RLUIPA GENERALLY ..................................................................18

      B.    NO INDIVIDUALIZED ASSESSMENT OF THE PROPERTY USES
            INVOLVED ....................................................................................19

      C.    THERE IS NO SUBSTANTIAL BURDEN ON ST. TIMOTHY'S
            RELIGIOUS EXERCISE ................................................................21

      D.    PLAINTIFFS CANNOT PREVAIL BASED ON A SELF-IMPOSED
            BURDEN ........................................................................................23

      E.    CITY USED LEAST RESTRICTIVE MEANS FOR COMPELLING
            GOVERNMENT INTEREST ..........................................................24

      MOTION #2: PLAINTIFFS' FIRST AMENDMENT FREE EXERCISE CLAIM
            ESSENTIALLY DUPLICATES PLAINTIFFS' RLUIPA CLAIM AND
            FAILS FOR THE SAME REASONS, AND BECAUSE THE
            ORDINANCE SERVES THE RATIONAL AND LEGITIMATE
            GOVERNMENT PURPOSE OF FEEDING THE NEEDY ...........................26

      MOTION #3: PLAINTIFFS' FIRST AMENDMENT FREE SPEECH AND
            ASSOCIATION CLAIM FAILS BECAUSE THERE ARE NO
            RESTRICTIONS ON SPEECH OR ASSOCIATION IN THE
            ORDINANCE ..................................................................................27

      MOTION #4: PLAINTIFFS' FOURTEENTH AMENDMENT DUE PROCESS
            CLAIM BASED ON OVERBREADTH AND VAGUENESS FAILS
            BECAUSE FR. LINDLEY HIMSELF UNDERSTOOD THE
            ORDINANCE, AND THE ORDINANCE IS NEITHER VAGUE NOR
            OVERBROAD ................................................................................29

A.    VAGUENESS DOCTRINE DOES NOT APPLY WHEN EVEN FR. LINDLEY ADMITS HE UNDERSTANDS THE ORDINANCE .................29

B.    PLAINTIFFS' OVERBREADTH CHALLENGE FAILS BECAUSE NO PROTECTED SPEECH OR EXPRESSIVE CONDUCT IS PROSCRIBED, AND THE ORDINANCE ACTUALLY ALLOWS OTHERWISE IMPERMISSIBLE CONDUCT .................................................31

MOTION #5: PLAINTIFFS' STATE CONSTITUTIONAL LAW CLAIM BASED ON ARTICLE I SECTIONS 2 AND 3 FAILS FOR ESSENTIALLY THE SAME REASONS AS PLAINTIFFS' FREE EXERCISE CLAIM .........................................................................................33

A.    OREGON'S INTERPRETATION OF ARTICLE I, SECTIONS 2 AND 3 HAS CHANGED OVER TIME .......................................................33

B.    OREGON COURTS HAVE LONG HELD THAT ZONING LAWS AND PERMIT REQUIREMENTS CAN BE APPLIED TO CHURCHES .............36

C.    PLAINTIFFS ADMIT THEIR OBJECTION TO THE ORDINANCE IS THE MERE FACT THAT A PERMIT IS REQUIRED, BUT OREGON LAW CLEARLY ALLOWS PERMITS TO BE REQUIRED OF CHURCHES EVEN OVER CHURCH RELIGIOUS OBJECTIONS ............38

MOTION #6: PLAINTIFFS' STATE CONSTITUTIONAL LAW CLAIM BASED ON ARTICLE I, SECTION 8 FAILS BECAUSE ORDINANCE #21-O-795 DOES NOT INHIBIT SPEECH IN ANY WAY .........................39

VI.    CONCLUSION .........................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................12

*Andon, LLC v. City of Newport News, Va.*,
63 F. Supp. 3d 630 (E.D. Va. 2014) .........................................................22

*Andon, LLC v. City of Newport News, Va.*,
813 F.3d 510 (4th Cir. 2016) .....................................................................24

*Arcara v. Cloud Books, Inc.*,
478 U.S. 697 (1986)...................................................................................33

*Baer v. City of Bend*,
206 Or. 221, 292 P.2d 134 (1956) ........................................................39, 40

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973)...................................................................................33

*Calvary Christian Center v. City of Fredericksburg, Va.*,
832 F. Supp. 2d 635 (E.D. Va. 2011) .......................................................29

*Capitol Square Review and Advisory Bd. v. Pinette*,
515 U.S. 753 (1995)...................................................................................29

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................12

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993)...................................................................................27

*City of Eugene v. Miller*,
318 Or. 480, 871 P.2d 454 (Or. 1994) ...................................................40, 41

*City of Mosier v. Hood River Sand, Gravel and Ready-Mix, Inc.*,
206 Or. App. 292, 136 P.3d 1160 (2006) (Landau, J.) ........................17, 21

*Damascus Comm. Church v. Clackamas Co.*,
45 Or. App. 1065, 610 P.2d 273, rev. den. 289 Or. 588 (1980), appeal
dismissed 450 U.S. 902 (1981)..................................................................39

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001 )(en banc)...................................................12

*Episcopal Student Foundation v. City of Ann Arbor*,
    341 F. Supp. 2d 691 (E.D. Mich. 2004)................................................................23

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir. 1998)..........................................................................32

*Grace United Methodist Church v. City of Cheyenne*,
    451 F.3d 643 (10th Cir. 2006) .........................................................22, 23, 25

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972).......................................................................................31

*Hamilton v. Schriro*,
    74 F.3d 1545 (8th Cir. 1996) .........................................................................26

*Harbor Missionary Church Corp. v. City of San Buenaventura*,
    642 F. App'x 726 (9th Cir. 2016) ...................................................................25

*Humanitarian Law Project v. United States Treasury Dep't*,
    578 F.3d 1133 (9th Cir. 2009) .......................................................................33

*IMS Health Inc. v. Ayotte*,
    550 F.3d 42 (1st Cir. 2008)............................................................................31

*Int'l Church of Foursquare Gospel v. City of San Leandro*,
    673 F.3d 1059 (9th Cir. 2011) .......................................................................21

*Ionian Corp. v. Country Mut. Ins. Co.*,
    744 F. Supp. 2d 1104 (D. Or. (Stewart, J.) 2010).........................................12

*Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*,
    699 F.2d 303 (6th Cir. 1983) .........................................................................23

*Love Church v. City of Evanston*,
    896 F.2d 1082 (7th Cir. 1990) .......................................................................23

*Maynard v. Cartwright*,
    486 U.S. 356 (1988).......................................................................................31

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984).......................................................................................32

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F.3d 1214 (11th Cir. 2004) .....................................................................23

*Milwaukie Co. of Jehovah's Witnesses v. Mullen*,
    214 Or. 281, 330 P.2d 5 (1958) ...............................................................37, 38

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998)............................................................................32, 33

*New Harvest Christian Fellowship v. City of Salinas*,
    463 F. Supp. 3d 1027 (N.D. Cal. 2020), *aff'd in part and rev'd in part*, 29
    F.4th 596 (9th Cir. Mar. 22, 2022)..........................................................24

*Petra Presbyterian Church v. Village of Northbrook*,
    489 F.3d 846 (7th Cir. 2007) ................................................................22, 24

*Playboy Enters., Inc. v. Welles*,
    279 F.3d 796 (9th Cir. 2002)..................................................................12

*Richardson v. Northwest Christian Univ.*,
    212 F. Supp. 3d 1132 (D. Or. 2017) ......................................................36

*San Jose Christian College v. City of Morgan Hill*,
    360 F.3d 1024 (9th Cir. 2004) ...............................................................22, 23

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018)...........................................................................30

*South Bay United Pentecostal Church v. Newsom*,
    985 F.3d 1128 (9th Cir. 2021) ...............................................................27

*Spence v. Washington*,
    418 U.S. 405 (1974) (per curiam)..........................................................29

*Spirit of Aloha Temple v. County of Maui*,
    322 F. Supp. 3d 1051 (D. Haw. 2018)...................................................24

*State v. Beagley*,
    257 Or. App. 220, 305 P.3d 147 (2013).................................................36

*State v. Hickman*,
    358 Or. 1, 358 P.3d 987 (2015) .............................................................35, 36

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ...............................................................28

*United States v. O'Brien*,
    391 U.S. 367 (1968)...............................................................................29

*United States v. Playboy Entm't Group, Inc.*,
    529 U.S. 803 (2000)...............................................................................25

*United States v. Rundo*,
    990 F.3d 709 (9th Cir. 2021) (per curiam).............................................33

*United States v. Wilgus*,
  638 F.3d 1274 (10th Cir. 2011) .................................................................26

*URI Student Senate v. Town of Narragansett*,
  631 F.3d 1 (1st Cir. 2011) ..........................................................................31

*Virginia v. Hicks*,
  539 U.S. 113 (2003) ....................................................................................33

*Vlasak v. Superior Court of California ex rel. County of Los Angeles*,
  329 F.3d 683 (9th Cir. 2003) ......................................................................32

*Walker v. Beard*,
  789 F.3d 1125 (9th Cir. 2015) ....................................................................26

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ....................................................................................31

*Women's Med. Ctr. of Nw. House. V. Bell*,
  248 F.3d 411 (5th Cir. 2001) ......................................................................30

*Yeakle v. City of Portland*,
  322 F. Supp. 2d 1119 (D. Or. 2004) ...........................................................32

**Statutes**

42 U.S.C. § 2000cc–5(7)(A) .............................................................................19

42 U.S.C. § 2000cc(a)(1)(B) .............................................................................25

ORS 624.010(9)(a) ......................................................................................10, 17

Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ....................19

RLUIPA ................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 56(a) .........................................................................................12

LR 7-2(b), 26-3(b), 54-1(c) ...............................................................................43

The undersigned counsel certifies that the parties conferred regarding the matters presented in these motions, but the parties were unable to resolve the issues.

## I.    MOTIONS

Plaintiffs' Complaint asserts six separate claims to attempt to invalidate City of Brookings Ordinance #21-O-795.  Defendant City of Brookings hereby moves this Court for an order granting summary judgment in its favor on all of Plaintiffs' claims, as follows:

**Motion #1**: Plaintiffs' RLUIPA Claim Fails Because There is No Individualized Assessment of Plaintiffs' Property Uses, and Ordinance #21-O-795 Actually Allows an Activity that is Not Otherwise Allowed in Residential Zones

**Motion #2**:  Plaintiffs' First Amendment Free Exercise Claim Essentially Duplicates Plaintiffs' RLUIPA Claim and Fails for the Same Reasons, and Because the Ordinance Serves the Rational and Legitimate Government Purpose of Feeding the Needy

**Motion #3**:  Plaintiffs' First Amendment Free Speech and Association Claim Fails Because There Are No Restrictions on Speech or Association in the Ordinance

**Motion #4**:  Plaintiffs' Fourteenth Amendment Due Process Claim Based on Overbreadth and Vagueness Fails Because Fr. Lindley Himself Understood the Ordinance, and the Ordinance is Neither Vague nor Overbroad

**Motion #5**:  Plaintiffs' State Constitutional Law Claim Based on Article I Sections 2 and 3 Fails For Essentially the Same Reasons as Plaintiffs' Free Exercise Claim

**Motion #6**:  Plaintiffs' State Constitutional Law Claim Based on Article I, Section 8 Fails Because Ordinance #21-O-795 Does Not Inhibit Speech In Any Way

These Motions are supported by the Points and Authorities below with referenced statutes and codes, pleadings on file, and the Declaration of Heather J. Van Meter with exhibits.

## II.    INTRODUCTION

This case arises from the "no good deed goes unpunished" files for a city government.  Defendant City of Brookings adopted Ordinance #21-O-795 in order to permit soup kitchens to <u>continue operating legally</u> – after having figured out that without the ordinance the existing soup kitchens in residential zones were unlawful.

In April 2021, city officials received a petition and complaint signed by 29 neighbors around St. Timothy's demanding the city address rampant problems in the neighborhood around St. Timothy's, including crime, vandalism, public safety threats, and public health and welfare problems arising there.  When a small town government is faced with a petition signed by dozens of residents, the mayor, city council, and staff did what any resident would hope they would do – look into the matter.

One of the services offered at St. Timothy's that drew needy and homeless persons to this residential area was a "benevolent meal service," at which meals were handed out for free to the general public several days per week, commonly called a soup kitchen.[1]  Mayor Hedenskog was very familiar with benevolent meal services, having volunteered to run the benevolent meal services *at St. Timothy's Episcopal Church* for a decade, and took a keen interest in <u>ensuring that benevolent meal services continued</u>.

While looking into the matters in the citizens' petition, city officials determined that no "restaurant," defined in ORS 624.010(9)(a) as an "establishment where food or drink is

---

[1] The parties have agreed that the numerous other St. Timothy's services violating city land use ordinances are a separate matter, currently at issue in a pending land use action, not part of this lawsuit. Van Mete Dec., Exh. R (Howard Dep., 113:11-114:11).  The parties also agreed that the City would not act on its notice of violation on St. Timothy's benevolent meal services until after summary judgment proceedings conclude in this case.  Id.

prepared for consumption by the public," was allowed in residential zones.[2]  In other words, the

St. Timothy's soup kitchen and others like it were already violating long-standing city land use

ordinances.

Mayor Hedenskog and others wanted to ensure benevolent meal services could

continue legally. Van Meter Dec., Exh. E (8/30/21 hearing transcript, p. 14).  Mayor Hedenskog

stated: "[w]e have no place in our Code to allow for that [benevolent meal service] on a

commercial kitchen, which is the definition from OHA, so we're trying to provide for that."  Id.

The City Council ultimately voted to *create* a new conditional use permit process for benevolent

meal service providers to continue operating in residential zones – adopting Ordinance #21-O-

795 unanimously on October 25, 2021.

Well before the ordinance was even adopted, Fr. Lindley of St. Timothy's

Episcopal Church, declared that he objected to <u>any</u> restrictions on his property and he would sue

the city. Van Meter Dec., Exh. E (8/30/21 hearing transcript, p. 56).  Fr. Lindley for St.

Timothy's Episcopal Church as well as Bishop Akiyama for the Diocese both testified clearly on

their objection: no permit should be required at all.  The City created a new <u>legal pathway</u> to

continue the benevolent meal services already being provided in residential zones.  If the City

had not done so, all benevolent meal services in residential zones were violating the City's land

use code.  But, often no good deed goes unpunished in city government – hence this lawsuit.  If

St. Timothy's prevails and Ordinance #21-O-795 is stricken, then the legal pathway for

benevolent meal services in residential zones ends; all providers of benevolent meal services in

residential zones will be in violation of the city codes and subject to immediate closure.

---

[2] Oregon Health Authority confirmed this for Fr. Lindley by email October 4, 2021.  Van Meter Dec., Exh. L (OHA informing Fr. Lindley that "the Oregon legislature determined many years ago that indigent populations should be treated equally in receiving food from licensed and inspected kitchens.").

### III.    APPLICABLE LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Normally the moving part has the initial burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001 )(en banc).  The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact.  *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

On cross-motions for summary judgment, the court considers each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other.  *Ionian Corp. v. Country Mut. Ins. Co.*, 744 F. Supp. 2d 1104, 1107 (D. Or. (Stewart, J.) 2010).

### IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Nothing in the Episcopal Church tenets of faith or scriptures or sacraments requires benevolent meal services to be served on site at St. Timothy's, or at all.  Fr. Lindley and Bishop Akiyama testified under oath that benevolent meal services are not required at all, in fact only three or four of the approximately 69 churches within the Diocese provide benevolent meal services at all.  Van Meter Dec., Exh. A (Lindley Dep. 153:14-156:8), Exh. B (Akiyama Dep. 42:17-43:10, testifying she is only aware of one other).  Nothing in the church's faith that prohibits Fr. Lindley from providing benevolent meal services in non-residential areas of the city (including using meals prepared in St. Timothy's own commercial kitchen).  Van Meter Dec., Exh. B (Akiyama Dep. 13:24-14:10, 40:8-41:24, 45:7-12, 55:14-56:17).  Nothing in the church's

faith that prohibits Fr. Lindley from choosing other means such as a food bank or making

donations to fulfill the general desire to feed the poor, and in fact most other churches do so, if

they do anything at all.  Id.  Nothing in the church's faith that prohibits Fr. Lindley from using

other church locations, including those churches with benevolent meal service permits, to fulfill

the general desire to feed the poor.  Id. Nothing in the church's faith that requires anyone from

the Episcopal Church to even be present – United Methodist Church serves meals at St.

Timothy's one day each week.  Van Meter Dec., Exh. A (Lindley Dep., 76:21-77:14).

   2. Fr. Lindley admits that he has in the past searched for other property for

benevolent meal services and other services but at the time did not find anything suitable, and he

has not looked recently.  Van Meter Dec., Exh. A (Lindley Dep., 112:13-115:16).  Notably, just

since 2020/21, St. Timothy's has received over $500,000 in grants from Oregon Health

Authority and other groups, and Fr. Lindley himself owns unused commercial property.  Van

Meter Dec., Exh. A (Lindley Dep., 98:11-100:20).[3]  St. Timothy's also could request money

from the Diocese but has not done so.  Van Meter Dec., Exh. B (Akiyama Dep. 21:3-19, 26:15-

20, 33:10-15).

   3. St. Timothy's Episcopal Church was a pre-existing church located in a

residential zone when the City of Brookings adopted its land use code in 1989.  Brookings

Municipal Code, Land Development Code, 17.01.010 et seq., available at

https://www.codepublishing.com/OR/Brookings/#!/Brookings17/Brookings1701.html#17.01.

Thereafter, the church continued to operate in the residential zone under a de facto conditional

use permit. Fr. Lindley acknowledged this fact in his 1999 land use application, filed when he

---

[3] Well over half the $410,000 in OHA grant money was used to pay wages to church volunteers, and not for meals or other services to needy persons.  Van Meter Dec., Exh. D.

was on St. Timothy's building committee (prior to becoming a pastor). Van Meter Dec., Exh. C (MC-1-99). In his 1999 application, Fr. Lindley sought and received a minor change (MC-1-99) to St. Timothy's de facto conditional use permit to slightly expand the building worship space, and the permit was granted. Id. There is no dispute that St. Timothy's is in a residential zone of the city, where restaurants are not allowed.  Van Meter Dec., Exh. B (Akiyama Dep. 45:23-46:7); Brookings Municipal Code 17.20.010 et seq., available at

https://www.codepublishing.com/OR/Brookings/#!/Brookings17/Brookings1720.html#17.20

(restaurants not an allowed permitted or conditional use, except under Ordinance #21-O-795).

        4.     In approximately 2009, various churches in the City of Brookings began working together to operate benevolent meal services to serve meals for free to the needy, working together to ensure a meal was available somewhere in the city six or seven days of the week.  Van Meter Dec., Exh. E (8/30/21 transcript, pp. 14, 17-18); Complaint, para. 21; Van Meter Dec., Exh. A (Lindley Dep. 68:10-71:11).  This included St. Timothy's. Complaint, para. 20.  This was a new use of the property, previously St. Timothy's had operated a food bank/food pantry.  Id.; Van Meter Dec., Exh. A (Lindley Dep. 82:1-14).  Mayor Ron Hedenskog managed the St. Timothy's benevolent meal services for 10 years, from its beginning in 2009 to approximately 2019.  Van Meter Dec., Exh. F (Hedenskog Dep. 12:1-15:11); Complaint, Exh. 1, p. 14.  The kitchen at St. Timothy's is a licensed and regularly inspected commercially inspected kitchen.  Van Meter Dec., Exh. A (Lindley Dep. 116:6-118:23).

        5.     Between 2010 and 2020, police activity at St. Timothy's increased dramatically, and the number of dispatch calls for police services at St. Timothy's went from 8 to 154. Van Meter Dec., Exh. G; Van Meter Dec., Exh. H; Van Meter Dec., Exh. F (Hedenskog

Dep., 72:7-75:14, 99:23-104:21).[4]  These counts are only for police calls to St. Timothy's

address, and do not include calls to neighboring properties or the adjacent Azalea Park.   Van

Meter Dec., Exh. I (Ltnt. Dotson Dep., 67:1-68:17, 83:1-10).  All other churches providing

benevolent meal services also had statistically significant police call increases in this timeframe.

Van Meter Dec., Exh. G.  During this same timeframe, 2010-2020, the City of Brookings'

population only increased by 408 people, from 6,336 to 6,744

(www.census.gov/quickfacts/brookingscityoregon).

    6.    Fr. Lindley has at various times admitted there are public safety problems

at St. Timothy's, and has personally called the police for assistance several times per year. Van

Meter Dec., Exh. A (Lindley Dep. 131:23-132:25, 158:4-159:5, 162:14-163:13). Fr. Lindley

relies on "Property Watch," a city police program paid by city tax dollars, that allows the police

to come to trespass people who are not allowed to be at St. Timothy's. Van Meter Dec., Exh. A

(Lindley Dep. 156:10-158:3).[5]  A police community resource officer, with position paid through

water bill assessments, also spends a considerable amount of time solely at St. Timothy's. Id.

    7.    In 2020, the COVID-19 pandemic arose.  During this time, the City of

Brookings created a temporary emergency permit to allow car-camping to attempt to address

homeless needs during the pandemic, Temporary Emergency Rule 2020-1.  Complaint, para. 24

and Exh. 1, p. 23.  St. Timothy's applied for and received a temporary permit, including agreeing

to abide by the health and sanitation requirements and camper number restrictions as part of the

temporary permit.  Van Meter Dec., Exh. A (Lindley Dep. 176:19-25).  St. Timothy's obtained

---

[4] Summaries of 2020 police calls are provided, police records relating to the calls are available upon request for 2020-2022.

[5] One could reasonably equate the receipt of over $500,000 in grants while expecting city police to address public safety problems to the moral hazard of privatized gains and public losses.

the car-camping permit, although did not always follow its limitations. Van Meter Dec., Exh. G (6/7/21 Council Workshop Report, p. 2); Complaint, para. 24-26; Van Meter Dec., Exh. F (Hedenskog Dep. 72:14-75:8); Van Meter Dec., Exh. J (Baron Dep., 117:14-19). Fr. Lindley later admitted the car-camping created many problems, got out of hand, and he would not do it again and regretted having done so. Van Meter Dec., Exh. A (Lindley Dep. 131:22-136:1); Van Meter Dec., Exh. K (other admissions). Fr. Lindley's admissions contradict Plaintiffs' Complaint paragraph 26.

8.      St. Timothy's Episcopal Church has approximately 30 to 40 parishioners. Van Meter Dec., Exh. A (Lindley Dep. 93:8-10). St. Timothy's benevolent meal service currently serves between 35 and 68 benevolent meals per sitting, three to four times per week, for a total of 105-272 meals and visiting persons per week. Van Meter Dec., Exh. A (Lindley Dep. 78:22079:5). The entire meal service lasts no more than two hours and is between the hours of 9:00 a.m. and 5:00 p.m. Van Meter Dec., Exh. A (Lindley Dep., 91:14-92:5).

9.      There is no dispute that public safety is a legitimate government concern and one of the reasons that city government exists. Van Meter Dec., Exh. A (Lindley Dep. 172:17-25) and Exh. B (Akiyama Dep. 70:3-14).

10.      In April 2021, the City of Brookings received a citizen's complaint letter and a petition[6] signed by 29 neighbors of St. Timothy's Episcopal Church, asking the City to do something about the criminal trespass, drug use, theft, harassment, trash, disorderly conduct, physical altercations, child neglect, noise, and other issues they attributed to transient persons

---

[6] One person involved in the petition was Brookings resident Brandon Usry, who lives directly across the street from St. Timothy's. Usry asked Public Works Director Tony Barron how to raise the issue before the City, and Mr. Barron told him what he would tell any resident, submit a petition or attend a Council meeting. Van Meter Dec., Exh. J (Baron Dep. 120:23-122:3).

obtaining services at St. Timothy's.  Id.; Complaint, Exh. 1, pp. 7-11.[7]

11.    City of Brookings Mayor Ron Hedenskog took a keen interest in ensuring that benevolent meal services would continue, having volunteered to manage the benevolent meal services at St. Timothy's Episcopal Church from the beginning in 2009 and for an entire decade.  Van Meter Dec. Exh. E (8/30/21 transcript, p. 14]).

12.    While city officials looked into the matter presented in the 29 citizens' petition and citizen complaint letter, city officials determined that no "restaurant" was allowed in residential zones of the city, for profit or not, benevolent or otherwise, either outright or with a conditional use permit.[8]  "Restaurant" is defined by the State of Oregon in ORS 624.010(9)(a) as an "establishment where food or drink is prepared for consumption by the public" (regardless for profit or not), and Oregon Health Authority confirmed this fact by email to Fr. Lindley in October 2021. Van Meter Dec., Exh. L.   In other words, city officials determined that St. Timothy's and other entities providing benevolent meal services in residential zones were already violating city land use ordinances.  Fr. Lindley understands that "benevolent meal service" means the soup kitchens, including the one at St. Timothy's.  Van Meter Dec., Exh. A (Lindley Dep. 124:25-125:15, 127:1-129:20)(disagreeing the soup kitchen meets the definition of "restaurant" under the statute, although Bishop Akiyama agreed it does meet that definition, Akiyama Dep. 38:20-23).

13.    Mayor Hedenskog and others on the City Council wanted to ensure

---

[7] As noted above, the parties have agreed that the numerous other St. Timothy's services violating city land use ordinances are a separate matter currently the subject of a pending land use action, and are not part of this lawsuit, which only relates to Ordinance 21-O-795.

[8] Although waiver is not asserted in this case, "it is well established that a local government cannot waive the requirements of the [land use] law." *City of Mosier v. Hood River Sand, Gravel and Ready-Mix, Inc.*, 206 Or. App. 292, 318-319, 136 P.3d 1160 (2006) (Landau, J.).

benevolent meal services could continue legally. Van Meter Dec., Exh. E (8/30/21 hearing transcript, p. 14). Mayor Hedenskog stated repeatedly "[w]e have no place in our Code to allow for that [benevolent meal service] on a commercial kitchen, which is the definition from OHA, so we're trying to provide for that." Id.; Van Meter Dec., Exh. F (Hedenskog Dep. 107:2-108:5).

14.     Numerous workshops and meetings ensued, and extensive public comment was taken. Complaint, Exh. 1, pp. 1-6, Exhs. 3-5. Plaintiffs and their legal counsel attended some or all of these workshops and meetings. Van Meter Dec., Exh. A (Lindley Dep. 131:6-11). Unlike other attendees representing entities providing benevolent meal services, St. Timothy's did not provide feedback on the actual ordinance, such as stating their requested number of days and hours for operating benevolent meal services, rather they declared they would file suit. Van Meter Dec., Exh. E (8/30/21 hearing transcript, p. 56).

15.     Fr. Lindley's and Bishop Akiyama's objection to the Ordinance is based on the fact that there is any permit required at all; in their view, the only permits that should be allowed are the permits that are agreeable to the church. Van Meter Dec., Exh. E (8/30/21 transcript, p. 56); Van Meter Dec., Exh. A (Lindley Dep. 139:21-141:21, 143:23-144:7); Van Meter Dec., Exh. B (Akiyama Dep. 48:4-53:22).

16.     On October 25, 2021, Brookings City Council unanimously voted to create a new conditional use permit process to enable benevolent meal service providers to continue providing benevolent meal services in residential zones – adopting Ordinance #21-O-795. Complaint, Exh. 5, pp. 7-8; Van Meter Dec., Exh. M (Ordinance #21-O-795). Nothing in the ordinance limits speech or prohibits anyone from speaking to anyone else. Van Meter Dec., Exh. B (Akiyama Dep. 67:15-18). The ordinance was drafted to not only meet but exceed the requests by benevolent meal service providers for numbers of days and hours. Van Meter Dec.,

Exh. J (Baron Dep. 99:15-100:22, 115:19-117:12). Thereafter, all other benevolent meal service providers applied for and obtained conditional use permits (permit fees were waived) and continue lawfully providing benevolent meal services to this day. Van Meter Dec., Exh. Q (other applications). The ordinance is not limited to religious organizations. Van Meter Dec., Exh. A (Lindley Dep., 121:7-122:1). St. Timothy's could apply for a permit as well, nothing in their faith prohibits it, but they have chosen not to do so. Van Meter Dec., Exh. A (Lindley Dep. 147:17-21); Van Meter Dec., Exh. B (Akiyama Dep. 59:14-21).  Fr. Lindley admits St. Timothy's is in violation of the Brookings code. Van Meter Dec., Exh. A (Lindley Dep. 129:21-130:9).

       17.     To date, the permit process has helped to successfully reduce the number of public safety and health and welfare issues at the benevolent meal services sites, except at St. Timothy's. Van Meter Dec., Exh. I (Dotson Dep., 84:5-89:9). St. Timothy's continues to be a major source of police calls and policing needs in the City of Brookings.  Id. at 84:5-84:18.

## V.    POINTS AND AUTHORITIES

**MOTION #1:** **Plaintiffs' RLUIPA Claim Fails Because There is No Individualized Assessment of Plaintiffs' Property Uses, and Ordinance #21-O-795 Actually Allows an Activity that is Not Otherwise Allowed in Residential Zones**

### A.    RLUIPA Generally

      The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., generally protects individuals' and religious institutions' "religious exercise" from governmental land use regulations that impose a "substantial burden" on that religious exercise. RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).

      Plaintiffs first claim for relief rests entirely upon Section 2000cc(a).  This section

prohibits implementation of a land use regulation in three distinct situations: (A) substantial

burden in a federally funded program; (B) substantial burden of interstate commerce; and (C)

"the substantial burden is imposed in the implementation of a land use regulation or system of

land use regulations, under which a government makes, or has in place formal or informal

procedures or practices that permit the government to make, <u>individualized assessments of the</u>

<u>proposed uses for the property involved</u>" (emphasis added). Subsection C is the only possibly

applicable subsection.

**B.    No Individualized Assessment of the Property Uses Involved**

   In order for this Court to consider plaintiffs' RLUIPA claim at all, plaintiffs must

first prove that subsection (C) applies to the City of Brookings' land use code and Ordinance

#21-O-795. In other words, plaintiffs must prove that the City of Brookings has in place a

system of land use regulations that involves individualized assessments of the proposed uses for

St. Timothy's property. Plaintiffs cannot meet their burden to prove this prerequisite.

   St. Timothy's Church is located in a Single-Family Residential zone, which only

permits single-family dwellings and certain types of manufactured homes. BMC chapter 17.20

(https://www.codepublishing.com/OR/Brookings/#!/Brookings17/Brookings1720.html#17.20).

St. Timothy's Church was located in a residential zone of the City of Brookings before the City

enacted its generally applied land use code. St. Timothy's was "grandfathered" in as a church

existing in a residential zone of the city where churches are not ordinarily allowed to exist, and

continued to operate under a de facto conditional use permit. The only existing reference to

"churches" and "religious institutions" in the land use code states that such buildings may be

allowed in residential zones under a conditional use permit, subject to BMC 17.124.100,

provided the religious institution is "located on a street adequate to serve the use" and "[a]ll off-

street parking facilities shall be adequately screened from abutting property to reduce noise and

other negative impacts." Nowhere else does the City's land use code refer to the term "church" or any other religious institution.

This case does <u>not</u> involve a general challenge to the City's land use code or its zonings and zoning restrictions or state land use laws, which plaintiffs would lose if such a general challenge were brought. See e.g. *City of Mosier v. Hood River Sand, Gravel and Ready-Mix, Inc.*, 206 Or. App. 292, 136 P.3d 1160 (2006) (Landau, J.).

This case arises from St. Timothy's more recent operation, since 2009, of what the State of Oregon considers and defines by statute as a "restaurant" within a residential zone. There is no dispute that restaurants were not allowed in residential zones of the City according to the City's land use code prior to Ordinance #21-O-795. "Restaurants" are categorized as a "permitted use" only in commercial and industrial park zones of the City.  Apart from an inapplicable exception for "bed and breakfast facilities," there are no conditional uses permitted in an R-1 residential zone for meal services of any kind. The City's generalized land use code restrictions that restaurants be located only in commercial or industrial park zones of the City is <u>not an individualized assessment of a property use</u> for land use regulation purposes.  Quite the opposite, the City's land use code broadly prohibited all restaurants in residential zones operated by any person or entity.

Additionally, there has been no individualized assessment of plaintiffs' property at all because plaintiffs never applied for a conditional use permit pursuant to Ordinance 21-O-795.  Although not consistently applied in the land use permit context, the Ninth Circuit has previously stated that "while [a] zoning scheme itself may be facially neutral and generally applicable," decisions to grant or deny specific permit and variance applications typically involve individualized assessments under the RLUIPA. *Int'l Church of Foursquare Gospel v.*

*City of San Leandro*, 673 F.3d 1059, 1066 (9th Cir. 2011); *see also Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649-55 (10th Cir. 2006).  Here, plaintiffs chose not to apply for a conditional use permit to allow benevolent meal services to continue lawfully, so even under the Ninth Circuit's somewhat inconsistent analysis, there has been no individualized assessment because plaintiffs never applied for a conditional use permit under the challenged ordinance.

**C.      There Is No Substantial Burden on St. Timothy's Religious Exercise**

In order to prevail on their claims, plaintiffs must prove that the challenged Ordinance #21-O-795 imposes a "substantial burden" on their "religious exercise."  "For a land use regulation to impose a 'substantial burden,' it must be 'oppressive' to a 'significantly great' extent. That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise. *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034–35 (9th Cir. 2004).

As a general matter, courts have recognized that religious institutions are not immune from land use regulations, and the fact that they are not able to build a church or other facility at a particular location does not by itself establish a "substantial burden" under the RLUIPA. To hold otherwise would mean that "every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA." *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007). The substantial burden requirement must be "taken seriously," because otherwise "the difficulty of proving a compelling governmental interest will free religious organizations from zoning restrictions of any kind." *Id. See also Andon, LLC v. City of Newport News, Va.*, 63 F. Supp. 3d 630, 642-43 (E.D. Va. 2014) ("Congress did not intend to permit religious organizations to exempt themselves from neutral zoning provisions").

Accordingly, the Ninth Circuit held in *San Jose Christian College* that a city's denial of a re-zoning application by the plaintiff to re-zone land from a hospital to religious educational facilities did not constitute a substantial burden, because the city's actions had not lessened the possibility that the college could find a suitable property. The court found there was no substantial burden because there was "no evidence in the record demonstrating that College was precluded from using other sites within the city." 360 F.3d at 1035.

This foregoing applies even if alternative locations involve additional costs or procedural requirements. In *Civil Liberties for Urban Believers v. City of Chicago*, for example, the court held that the scarcity of affordable land available for development and other conditions do not impose a substantial burden, and instead are "incidental to any high-density urban land use" and among "the ordinary difficulties associated with location (by any person or entity, religious or nonreligious) in a large city." 342 F.3d 752, 761-62 (7th Cir. 2003); *see also Love Church v. City of Evanston*, 896 F.2d 1082, 1086 (7th Cir. 1990).

The Ninth Circuit and other courts have come to similar conclusions. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 654-55 (9th Cir. 2006) ("while Grace United has a right to operate a daycare in Cheyenne, it has no right to build its daycare exactly where it pleases"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227-28 (11th Cir. 2004); *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303, 307 (6th Cir. 1983) ("building and owning a church is a desirable accessory of worship, not a fundamental tenet of the Congregation's religious beliefs."); *Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691, 705 (E.D. Mich. 2004) ("Although it may be 'incredibly beneficial' if Canterbury House were able to offer its own kitchen and dining room for such services, there is no indication that Canterbury cannot

continue to feed the hungry at such alternate locations [including 'many different local churches'], and thus fulfill its religious mission").

Based on the foregoing, and with the knowledge that Ordinance #21-O-795 actually allows something that is otherwise impermissible, there is no burden let alone a substantial burden of plaintiffs' religion.

### D.    Plaintiffs Cannot Prevail Based On A Self-Imposed Burden

At least two district courts within the Ninth Circuit have recently held that a self-imposed burden cannot for the basis for a valid RLUIPA claim. *Spirit of Aloha Temple v. County of Maui*, 322 F. Supp. 3d 1051 (D. Haw. 2018); *New Harvest Christian Fellowship v. City of Salinas*, 463 F. Supp. 3d 1027 (N.D. Cal. 2020), *aff'd in part and rev'd in part*, 29 F.4th 596 (9th Cir. Mar. 22, 2022) (briefly discussing the self-imposed burden doctrine, declining to adopt a bright-line rule). The Ninth Circuit stated that when "a religious group has imposed a burden upon itself" this fact is at least relevant to the substantial burden inquiry. 29 F.4th at 602. *See also Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 515 (4th Cir. 2016); *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) (plaintiff not substantially burdened when it purchased property in an industrial zone for use as a church after having been told that its special-use application would be denied).

St. Timothy's began its benevolent meal service, which is a restaurant under state statute, in 2009.  At that time, restaurants were not allowed in residential zones.  Prior to enactment of Ordinance #21-O-795, <u>no</u> person or entity could operate a "restaurant" of any type, for profit or benevolent, within a residential zone of the City.  Thus, the code prohibiting the conduct pre-dated the conduct.  Ordinance #21-O-795 created a conditional use permit to *allow* benevolent meal services to legally continue within residential zones.

Additionally, plaintiffs *for purposes of this lawsuit* insist that benevolent meal

services must be served, must be located at St. Timothy's and not elsewhere, and must be several times per week – even though none of these burdens are required by their faith or religious tenets.  Plaintiffs readily admit they could serve free meals to the general public elsewhere, or not at all, entirely consistently with their faith, they simply choose not to do so.  Plaintiffs admit they could serve two meals at St. Timothy's and serve other meals at other churches in residential zones that have permits, or elsewhere, they choose not to do so.[9]  These self-imposed burdens alleged by plaintiffs to support this lawsuit cannot form the basis of a valid RLUIPA claim.

### E.      City Used Least Restrictive Means for Compelling Government Interest

There is no dispute that "public safety and welfare" is a compelling government interest.  Courts generally recognize that governments have a legitimate purpose in "the promotion of public health, safety, and general welfare of [its] citizens." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006).  The Ninth Circuit has held that municipalities have a compelling interest "in promoting public safety and in preventing crime." *Harbor Missionary Church Corp. v. City of San Buenaventura*, 642 F. App'x 726, 730 (9th Cir. 2016).  Here, the City's adoption of the Ordinance arose from public safety and welfare concerns, specifically the desire to continue provision of benevolent meal services.

Even where an interest is compelling, the RLUIPA requires that it must be pursued through the least restrictive means. 42 U.S.C. § 2000cc(a)(1)(B). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 815 (2000).

---

[9] Plaintiffs' benevolent meal services already meet the timeframe and duration requirements of the ordinance.

Courts have recognized that literally proving that "*no* alternative forms of regulations" would suffice to serve the alleged governmental interest is "a formidable task … [I]n the abstract, such a thing can never be proven conclusively; the ingenuity of the human mind, especially if freed from the practical constraints of policymaking and politics, is infinite." *United States v. Wilgus*, 638 F.3d 1274, 1288-89 (10th Cir. 2011); *see also Hamilton v. Schriro*, 74 F.3d 1545, 1556 (8th Cir. 1996) ("It would be a herculean burden to require [the state] to refute every conceivable option in order to satisfy the least restrictive means prong"). The government's burden is thus two-fold: (1) it must support its choice of regulation; and (2) it must refute the alternative schemes offered by the challenger. *Id.*; *see also Walker v. Beard*, 789 F.3d 1125, 1137 (9th Cir. 2015) ("Although the government bears the burden of proof to show its practice is the least-restrictive means, it is under no obligation to dream up alternatives that the plaintiff himself has not proposed.").

In the situation at hand, it is admittedly difficult to make a "least restrictive means" analysis for Plaintiffs' Challenge to Ordinance #21-O-795 because the ordinance actually allows something, benevolent meal services, that is not otherwise allowed at all in residential zones. Ipso facto, the City not only used a "least restrictive means" but actually employed a "permissive means" in adopting the Ordinance. In other words, rather than restricting some religious exercise that plaintiffs otherwise would exercise, the City is allowing an activity that plaintiffs could not otherwise lawfully engage in within the residential zones of the City. The City also met and exceeded all other benevolent meal service providers' suggestions and requests for the proposed Ordinance language and scope. Under these circumstances, the City met the requirement to use "least restrictive means." For this reason, as well, Plaintiffs' first claim for relief fails.

**E.  If Plaintiffs Prevail, Then Benevolent Meal Services Likely Will End**

If Ordinance #21-O-795 is stricken on RLUIPA grounds, then the underlying land use code will remain in place, prohibiting any restaurants and benevolent meal services in residential zones.  The many other institutions that applied for and obtained conditional use permits and presently provide benevolent meal services in residential zones will likely be disappointed with this outcome, as will the persons served by their benevolent meal services. The general welfare will not be served by invalidating Ordinance #21-O-795, quite the opposite.

**MOTION #2: Plaintiffs' First Amendment Free Exercise Claim Essentially Duplicates Plaintiffs' RLUIPA Claim and Fails for the Same Reasons, and Because the Ordinance Serves the Rational and Legitimate Government Purpose of Feeding the Needy**

The Free Exercise Clause of the First Amendment provides that the government "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." In determining whether a law prohibits the free exercise of religion, courts ask whether the law is "neutral and of general applicability." *South Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1140 (9th Cir. 2021). If the law is neutral and of general applicability— that is, the law does not "single out houses of worship for especially harsh treatment"—then the law need only survive rational basis review, even if it "has the incidental effect of burdening a particular religious practice." *Id.*; *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).

Here, Ordinance #21-O-795 does not impose any burden on the free exercise of religion, it actually permits an activity -- benevolent meal services -- that is not otherwise allowed in residential zones.  Additionally, Ordinance #21-O-795 is not limited to religious institutions, but instead applies to any non-profit entities existing in residential zones of the City. For these reasons, the ordinance does not "single out houses of worship," and rational basis

review is applicable.

"Under rational basis review, the rules will be upheld if they are rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1137 (9th Cir. 2009) (citing *Gadda v. State Bar of Cal.,* 511 F.3d 933, 938 (9th Cir.2007)). To invalidate a law reviewed under rational basis, "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Stormans*, 586 F.3d at 1137 (citing *Heller v. Doe by Doe,* 509 U.S. 312, 320 (1993).

As discussed above, there is no dispute that the City adopted the ordinance in order to further public safety and welfare, specifically allowing benevolent meal services to continue to feed the needy, which is a rational basis for the ordinance. Furthermore, all of the ordinance's requirements, such as number of days and times and a requirement to have proper health department licenses, all serve legitimate governmental purposes of public safety and health and welfare.

For these reasons, plaintiffs' Second Claim for Relief fails.

**<u>MOTION #3</u>: Plaintiffs' First Amendment Free Speech and Association Claim Fails Because There Are No Restrictions on Speech or Association in the Ordinance**

First and foremost, as noted above, Ordinance #21-O-795 permits an activity, benevolent meal services, that is otherwise not permitted in residential zones. For this reason alone, there are no new restrictions on any exercise of speech or association, and plaintiffs' third claim fails.

Additionally, plaintiffs' third claim fails because Ordinance #21-O-795 contains no prohibition on association or speech whatsoever. Bishop Akiyama herself admitted this fact. Nothing in the ordinance references speech of any type, let alone limits any speech. Also, nothing in the ordinance prohibits gathering of persons or association in any way, and nothing in

the ordinance restricts any person's "speaking and expressing the values of Christian scripture." Complaint, para. 75.  The Ordinance *allows* provision of benevolent meal services, the physical act of handing out food for free to the general public, during certain times of the day for a set number of hours a set number of times – it does not prohibit persons from being present on St. Timothy's property or hearing from Fr. Lindley at all at any time.  For these reasons as well, plaintiffs' third claim fails.

Finally, there is no dispute that private religious speech "is as fully protected under the Free Speech Clause as secular private expression." *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995). However, to be protected under the Free Speech Clause, the plaintiff must be engaged in actual speech or "expressive conduct." *Calvary Christian Center v. City of Fredericksburg, Va.*, 832 F. Supp. 2d 635, 642 (E.D. Va. 2011). Clearly, not every form of conduct can be expressive. As the Supreme Court has said: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). Rather, only conduct "sufficiently imbued with elements of communication" is entitled to constitutional protection. *Spence v. Washington*, 418 U.S. 405, 409 (1974) (per curiam).

Here, the meal service itself is not "expressive conduct."  The meals, whether boxed or wrapped or served on plates, contain no written messages in them.  The act of handing out food is not, by itself, "imbued with elements of communication," let alone religious communication.  When a person drives through a McDonald's and is handed food, that is not "expressive conduct," it is a mere physical action of handing food from one person to another -- being handed a McDonald's sandwich is not a religious experience. Likewise, being handed a

sandwich by a volunteer at a church is not religious expressive conduct.  In fact, Fr. Lindley and

Bishop Akiyama both agree that the meals can be served anywhere by anyone (including

members of other churches), or not at all.

For all these reasons, plaintiffs' third claim fails.[10]

**MOTION #4: Plaintiffs' Fourteenth Amendment Due Process Claim Based on Overbreadth and Vagueness Fails Because Fr. Lindley Himself Understood the Ordinance, and the Ordinance is Neither Vague nor Overbroad**

Brookings Municipal Code 17.08.020 defines a "benevolent meal service" as "a

periodic food service operation that provides food to the public without charge." Plaintiffs'

fourth claim alleges a Fourteenth Amendment Due Process violation because the ordinance is

vague and overbroad with respect to the terms "benevolent meal service" and "periodic" and "the

public without charge."

However, Fr. Lindley admits he understands the ordinance to reference the soup

kitchens such as the one operated by St. Timothy's.  For this reason alone, there is no actual

vagueness or confusion about the ordinance, and plaintiffs' fourth claim fails.

**A.     Vagueness Doctrine Does Not Apply When Even Fr. Lindley Admits He Understands the Ordinance**

The vagueness doctrine guarantees that ordinary people have "fair notice" of the

conduct that a statute proscribes. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). The test as

to whether a law is impermissibly vague is whether persons "of common intelligence must

necessarily guess at [their] meaning and differ as to [their] application." *Women's Med. Ctr. of

Nw. House. V. Bell*, 248 F.3d 411, 421 (5th Cir. 2001). Because vagueness attacks are based on

---

10 Plaintiffs' third claim also vaguely references an overbreadth or vagueness problem with the ordinance. However, this appears to duplicate plaintiffs' fourth claim discussed in defendant's Motion #4, incorporated by reference herein.

lack of notice, "they may be overcome in any specific case where reasonable persons would

know their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). Furthermore,

"perfect clarity and precise guidance have never been required even of regulations that restrict

expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

  As courts have observed, "we can never expect mathematical certainty from our

language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). "[W]ords are rough-hewn

tools, not surgically precise instruments," which inevitably means "some degree of inexactitude

is acceptable in statutory language." *URI Student Senate v. Town of Narragansett*, 631 F.3d 1,

13-14 (1st Cir. 2011). Consistent with this reality, "the fact that a statute requires some

interpretation does not perforce render it unconstitutionally vague." *IMS Health Inc. v. Ayotte*,

550 F.3d 42, 61 (1st Cir. 2008). If a law is susceptible to an interpretation that supports its

constitutionality, [courts] must accord the law such meaning. *Id*. (citing *United States v. Nat'l

Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)). "Where a statute does not define a term, [courts]

must give words their common and ordinary meaning, absent some established technical

definition, unless the legislature intended otherwise." *Id*.

  Here, Fr. Lindley, being of at least common intelligence, admitted he perfectly

understood what the ordinance addresses -- the soup kitchens.  For the sake of exercise, to the

extent dictionary definitions of the common words are needed at all, they must be applied by the

court.  These dictionary definitions include "periodic" with its ordinary dictionary meaning,

"occurring or recurring at regular intervals."  Webster's Dictionary online, www.merriam-

webster.com/dictionary/periodic, accessed October 1, 2023.  "Without charge" has its ordinary

meaning of "free" i.e. "not costing or charging anything."  Webster's Dictionary online,

www.merriam-webster.com/dictionary/free, accessed October 1, 2023.  The "public" also has its

ordinary dictionary meaning, "of or relating to people in general." Webster's Dictionary online, www.merriam-webster.com/dictionary/public, accessed October 1, 2023.  There is no guessing at meanings required by the ordinance, and therefore no vagueness.  For all these reasons, the ordinance is not vague, and plaintiffs' fourth claim fails.

**B.    Plaintiffs' Overbreadth Challenge Fails Because No Protected Speech or Expressive Conduct Is Proscribed, and the Ordinance Actually Allows Otherwise Impermissible Conduct**

"A statute is overbroad if, in addition to proscribing activities which may be constitutionally forbidden, it also encompasses speech or conduct which is protected by the First Amendment." *Yeakle v. City of Portland*, 322 F. Supp. 2d 1119, 1126 (D. Or. 2004) (citing *Thornhill v. Alabama*, 310 U.S. 88 (1940)). However, "courts are hostile to facial condemnation of a statute or ordinance whose primary focus is to prohibit tangible harms unrelated to the content of the speech." *Id*. Plaintiffs must demonstrate "that the ordinance, by its terms, seeks to regulate either spoken words or patently expressive or communicative conduct." *Vlasak v. Superior Court of California ex rel. County of Los Angeles*, 329 F.3d 683, 688 (9th Cir. 2003) (internal citations omitted). For a challenge of overbreadth to succeed, there must be "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

Plaintiffs present a facial challenge to the ordinance at issue.[11]  "Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998). As the

---

[11] Plaintiffs' claim four also references an "as applied" challenge, but the Ordinance has not been applied to plaintiffs' conduct to date so any "as applied" challenge is premature.  *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

Supreme Court explained in *Wash. State Grange v. Wash. State Republican Party*, facial challenges are generally disfavored for several reasons, including: (i) claims of facial invalidity often rest on speculation; (ii) facial challenges run counter to the principle of judicial restraint that courts should not anticipate a question of constitutional law in advance of the necessity of deciding it; and (iii) facial challenges may short circuit the democratic process by frustrating the intent of the legislature. *Finley*, 552 U.S. 442, 450-51 (2008). A law will survive a facial challenge so long as "it is clear what the statute proscribes in the majority of its intended applications." *Humanitarian Law Project v. United States Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009).

Where a facial challenge to an ordinance involves conduct, the ordinance's overbreadth "must not only be real, but substantial as well, judged in relation to [its] plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Thus, an ordinance will implicate the First Amendment if: (1) it inflicts an incommensurate burden on those engaged in First Amendment activities; or (2) it attempts to regulate conduct that involves expressive or communicative conduct. *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 703–04 (1986).

"Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *United States v. Rundo*, 990 F.3d 709, 713-14 (9th Cir. 2021) (per curiam) (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). The court should construe the challenged statute as constitutional "if [it] reasonably can do so." *Id*. at 714.

Here, the Ordinance is not overbroad because it does not proscribe any speech or

expressive conduct at all, but actually relates to conduct alone and *allows conduct* that is not otherwise allowed in a residential zone.  Courts also strongly disfavor overbreadth challenges, especially facial overbreadth, especially for conduct-related laws, and must construe the challenged enactment as constitutional if reasonably possible.  Here, it is assuredly reasonably possible to construe the ordinance as constitutional –it allows conduct that is not otherwise allowed in a residential zone.

For all these reasons as well, plaintiffs' fourth claim fails.

**Motion #5: Plaintiffs' State Constitutional Law Claim Based on Article I Sections 2 and 3 Fails For Essentially the Same Reasons as Plaintiffs' Free Exercise Claim**

Plaintiffs' fifth claim is based on Oregon Constitution Article I, sections 2 and 3. Art. 1, Sec. 2, the "freedom of worship" provision states, "All men shall be secure in the natural right to worship Almighty God according to the dictates of their own consciences."  Art. 1, Sec. 3, the "freedom of religious opinion" states, "No law shall in any case whatsoever control the free exercise, and enjoyment of religious opinions, or interfere with the rights of conscience."

**A.    Oregon's Interpretation of Article I, Sections 2 and 3 Has Changed Over Time**

Initially, in *City of Portland v. Thornton*, the Oregon Supreme Court held that Article I, Sections 2-4 are the equivalent to the U.S. Constitution First Amendment's religious freedom provision, stating the U.S. Constitution and Oregon Constitution provisions for religious freedom are "[o]bviously, the same thought."  For this reason, the Oregon Supreme Court followed the U.S. Supreme Court's First Amendment religious freedom cases when interpreting Oregon's own religious freedom provisions, until 1985.  174 Or. 508, 513, 149 P.2d 972 (1944) (case involving criminal statute aimed at preventing Jehovah's Witnesses from using children to sell and distribute religious materials).  Oregon courts have never held "that the practice of religion is beyond reasonable limitation."  Id.

In 1985, the Oregon Supreme Court separately ruled in *Salem College and Academy, Inc. v. Employment Division* on the Oregon Constitution Article I, sections 2 and 3 claims and the U.S. Constitution First Amendment claims, discussing the separate history of Article I, sections 2 and 3.  298 Or. 471, 695 P.2d 25 (1985) (approving generally applicable employment taxes on religious employers, but not one that distinguishes between types of religious employers).  As recognized in *Smith v. Employment Division*, separate analysis of the Oregon Constitution's religious freedom provisions and the First Amendment religious freedom provision is required, although the court did not specify a particular analysis due for interpreting Oregon's religious freedom provisions.  301 Or. 209, 213-214, 721 P.2d 445 (1986), *vacated and remanded on other grounds*, 485 U.S. 660 (1988).

Beginning in *Meltebeke v. BOLI*, Oregon courts began recognizing the applicable analysis -- that a general statutory or regulatory scheme that is neutral towards religious motivations is not subject to a valid challenge under Article I, sections 2 or 3 of the Oregon Constitution.  322 Or. 132, 148-149, 903 P.2d 351 (1995) (approving generally applicable employment discrimination laws).  The *Meltebeke* court held the applicable test to be: "A law that is neutral toward religion or nonreligion as such, that is neutral among religions, and that is part of a general regulatory scheme having no purpose to control or interfere with rights of conscience or with religious opinions does not violate the guarantees of religious freedom in Article I, sections 2 and 3."  322 Or. at 149.

The court slightly refined the applicable test in *State v. Hickman*, 358 Or. 1, 358 P.3d 987 (2015). In *State v. Hickman*, the Oregon Supreme Court considered application of the criminal statute for manslaughter in light of an asserted defense of religious freedom, specifically the reliance on "faith healing" by parents whose son died several hours after his premature birth.

358 Or. 1, 15–16, 358 P.3d 987, 994–95 (2015).  There, the court held:

> when analyzing freedom of religion claims under Article I, sections 2 and 3, this court has distinguished between applying rules that expressly target religion, on the one hand, and applying generally applicable and neutral rules to religiously motivated conduct, on the other hand. With regard to rules that specifically target religion, we apply "exacting" scrutiny to ensure that they comport with the commands of Article I, sections 2 and 3. With regard to rules that are generally applicable and neutral toward religion, however, the only issues for us to consider are whether there was "statutory authority to make such a regulation," or whether we should grant "an individual claim to exemption on religious grounds." 358 Or. at 15-16 (internal citations omitted).

The court then held that the particular mens rea of "knowledge" was not required to be proven for the criminal conviction, and individual exemption did not apply.  358 Or. at 24-25; *see also State v. Beagley*, 257 Or. App. 220, 305 P.3d 147 (2013) (similar criminal case involving faith healing).

Here, there can be no dispute that Ordinance #21-O-795 is a generally applicable and neutral law, it does not distinguish between religions, or between religious and non-religious, and does not seek to control religious opinion.  Thus, the Court's inquiry is only to determine whether there was "statutory authority to make such a regulation." Here, state and city land use laws and codes authorized the regulation (discussed below), and plaintiffs do not allege to the contrary.[12]  Ordinance #21-O-795 actually allows conduct that is not otherwise allowed in a residential zone.

For these reasons, plaintiffs' fifth claim for relief fails.

---

[12] Regarding when a court may grant "an individual claim to exemption on religious grounds," no court has granted such an exemption to date. This Court has recognized that no test for such an exemption has been articulated, but that the test cannot be simply that an exemption is granted any time a law allegedly conflicts with religious beliefs because it would be an exception swallowing the rule.  *Richardson v. Northwest Christian Univ.*, 212 F. Supp. 3d 1132, 1153-1154 (D. Or. 2017). No individual exemption is warranted in this case because there is no exceptional circumstance, and granting St. Timothy's an exception would swallow the rule because plaintiffs' objection is to any permit requirement at all.

**B.      Oregon Courts Have Long Held that Zoning Laws and Permit Requirements Can Be Applied to Churches**

The seminal Oregon case on application of zoning laws to churches is *Milwaukie Co. of Jehovah's Witnesses v. Mullen*, 214 Or. 281, 292-93, 330 P.2d 5 (1958), in which the Oregon Supreme Court considered a similar case to this one.  The City of Milwaukie previously adopted a zoning ordinance restricting certain buildings in single-family residential zones, allowing special use permits for other buildings including churches under certain circumstances. The church requested a permit to build a church on two lots in a residential zone; the permit was denied by the City Council on the basis that the proposed church would unreasonably increase traffic congestion and annoyance of neighbors from exhaust, noise and lights, factors the Council was admittedly allowed to consider in reviewing and rejecting the permit.  The church challenged the zoning ordinance in part on the grounds that the zoning ordinance impedes the church's religious exercise in violation of the U.S. Constitution First and Fourteenth Amendments (religious freedom) and in violation of Oregon Constitution Art. 1 Sec. 2, which had an identical interpretation to the U.S. Constitution First Amendment religious freedom guarantee. 214 Or. at 290-292.

In determining that the City Council did not act in an arbitrary and capricious manner, the court held that "arbitrary and capricious" means willful and unreasoning action in disregard of the facts and circumstances of the case, but "action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion had been reached."  Id. at 296.  The court held the City Council did not act in such a manner, finding the church failed to "clearly and plainly [show] that the decision [was] against the weight of the evidence or erroneous, unreasonable, or arbitrary, or … that the board acted arbitrarily or capriciously, that it arrived at its determination in an unfair manner, that its

action was illegal, that it abused its discretion." 214 Or. at 297.  The court also rejected the

church's Equal Protection and due process arguments.  Finally, in rejecting the church's religious

freedom arguments, the court agreed that generally prior restraints on the exercise of the

freedoms of religion and speech are not permitted, but "reasonable regulations of time and place

for the exercise of such freedoms are valid." 214 Or. at 314 (citing *Cantwell v. State of*

*Connecticut*, 310 U.S. 296, 303-304, 306 (1940) (holding "a state may by general and non-

discriminatory legislation regulate the times, the places, and the manner of soliciting upon its

streets, and of holding meetings thereon; and may in other respects safeguard the peace, good

order and comfort of the community, without unconstitutionally invading the liberties protected

by the [First and] Fourteenth Amendment"); *Cox v. State of New Hampshire*, 312 U.S. 569, 574

(1940); *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158 (1943); *Kovacs v. Cooper*, 336

U.S. 77 (1948); *Kunz v. People of State of New York*, 340 U.S. 290 (1950)). The court then held

the City's denial of a building permit for the church in Milwaukie's single-family residential

zoned area was permissible, stating the "building of churches is subject to such reasonable

regulations as may be necessary to promote the public health, safety, or general welfare." 214

Or. at 316, 330-331.

        Subsequently, in *Medford Assembly of God v. City of Medford*, the church lost its

challenge to the requirement for the church to obtain a conditional use permit to operate a

primary school inside the church building in a zoned residential area.  72 Or. App. 333, 335, 695

P.2d 1379, 1380 (1985).  Rather than apply for the conditional use permit, the church appealed to

LUBA and then the Oregon Court of Appeals, arguing in part that the City's requirement of a

conditional use permit violated the church's rights to religious freedom under the First

Amendment to the U.S. Constitution and Article 1, Section 3 of the Oregon Constitution.  Id.

The Court of Appeals held that conditional use permits for church schools are constitutional, and that permits for church buildings do not automatically permit church schools on the same location, because uses for churches and schools are more intensive and different requirements may apply and need to be met.  72 Or. App. at 335 (following *Damascus Comm. Church v. Clackamas Co.*, 45 Or. App. 1065, 610 P.2d 273, rev. den. 289 Or. 588 (1980), appeal dismissed 450 U.S. 902 (1981)).

Oregon courts also have addressed religious challenges involving public welfare programs.  In *Baer v. City of Bend*, 206 Or. 221, 229–30, 292 P.2d 134, 138 (1956), the Oregon Supreme Court considered individual religious-based objections to the city's new public water fluoridation program.  The Oregon court, quoting the Supreme Court of Appeals of Virginia, stated "[t]he individual cannot be permitted, on religious grounds, to be the judge of his duty to obey the regulatory laws enacted by the State in the interests of the public welfare." 206 Or. at 229-230 (quoting *Rice v. Commonwealth*, 49 S.E.2d 342, 347 (1948)(compulsory education case)).  The Oregon Supreme Court then held that the mere fact that a person asserts an objection to a governmental law or rule based on religious freedom is insufficient to establish its constitutional invalidity.  The court held that, although the government cannot interfere with religious belief and opinion, it can impede religious practices if done through enactment of reasonable laws for the protection of public health.  206 Or. at 234.

The ordinance at hand does not impede religious practices at all.  The ordinance allows benevolent meal services – handing out free food to the general public – in residential areas of the city when this activity would not otherwise be allowed.

C.     **Plaintiffs Admit Their Objection to the Ordinance is the Mere Fact That a Permit is Required, But Oregon Law Clearly Allows Permits to be Required of Churches Even Over Church Religious Objections**

Fr. Lindley and Bishop Akiyama both admit their objection to Ordinance #21-O-

795 is that it requires a permit at all.  Based on the foregoing case law, there is no dispute that cities can apply land use laws to churches, and can require permits of churches for certain conduct or actions, as part of neutral land use zoning programs.  Plaintiffs' objection to any permit being required is not well-founded.  Furthermore, Fr. Lindley himself previously applied for at least two permits, in 1999 for worship building expansion, and in 2020 for car-camping. Additionally, Fr. Lindley sought and obtained Oregon Health Authority licensing for its commercial kitchen.  Thus, plaintiffs' objection to permit requirements such as that contained in Ordinance #21-O-795 are particularly arbitrary.  As held in *Baer*, supra, "[t]he individual cannot be permitted, on religious grounds, to be the judge of his duty to obey the regulatory laws enacted by the State in the interests of the public welfare."

For all these reasons, plaintiff's' fifth claim for relief fails.

**MOTION #6: Plaintiffs' State Constitutional Law Claim Based on Article I, Section 8 Fails Because Ordinance #21-O-795 Does Not Inhibit Speech In Any Way**

Plaintiffs' final claim is based on Oregon Constitution Article I, section 8, which states: "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

When a law is challenged as violating Article I, Section 8, the analysis begins by categorizing the law, on its face, into one of three categories: (1) those laws that focus on the content of speech or writing; (2) laws that focus on forbidden effects but expressly prohibit expression used to achieve those effects; and (3) laws that focus on forbidden effects without reference to speech or expression at all. *City of Eugene v. Miller*, 318 Or. 480, 488, 871 P.2d 454 (Or. 1994). There presumably is no dispute that Ordinance #21-O-795 belongs in the third category.  To prove violation, a challenger to a law in the third category must show that the law

(1) reaches privileged communications, in a way that (2) impermissibly burdens protected expression as-applied. *City of Eugene*, 318 Or. at 489-90 (citing *State v. Plowman*, 314 Or. 157, 164-65, 838 P.2d 558 (1992) (en banc). When a law is challenged as-applied in this third category, the question is whether the law was applied so that it did, in fact, reach constitutionally-protected communication.  Id.

First and foremost, Ordinance #21-O-795 does not restrain free speech at all, a fact Bishop Akiyama herself admitted.  Plaintiffs remain free to say whatever they want, whenever they want, to whomever they want; and plaintiffs can associate with whomever they want and whenever they want.  For this reason alone, plaintiffs' sixth claim fails.

Additionally, as discussed extensively above (incorporated by reference), the ordinance actually allows the conduct of benevolent meal services that is not otherwise allowed in a residential zone.  An ordinance that allows conduct that is not otherwise allowed cannot violate Article I, Section 8.

Furthermore, as discussed above (incorporated by reference), the conduct addressed in the ordinance, benevolent meal services i.e. handing out free meals to the general public, does not involve speech or expressive conduct.  Therefore, no speech or expressive conduct is restrained by the ordinance.

For all these reasons, plaintiffs' sixth claim fails.

/ / /

/ / /

/ / /

/ / /

/ / /

## VI.    CONCLUSION

For the foregoing reasons, all of defendant's motions must be granted.

DATED:  October 6, 2023.

MILLER NASH, LLP

By s/Heather J. Van Meter
   Liani J. Reeves, OSB No. 013904
   liani.reeves@millernash.com
   Ed Choi, OSB No. 135673
   ed.choi@millernash.com
   Heather Van Meter, OSB No. 983625
   heather.vanmeter@millernash.com
   Attorneys for Defendant
   City of Brookings

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 10,420 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.


DATED:  October 6, 2023.

MILLER NASH, LLP


By s/Heather J. Van Meter
    Liani J. Reeves, OSB No. 013904
    liani.reeves@millernash.com
    Ed Choi, OSB No. 135673
    ed.choi@millernash.com
    Heather Van Meter, OSB No. 983625
    heather.vanmeter@millernash.com
    Attorneys for Defendant
    City of Brookings

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2023 I served the foregoing DEFENDANT

CITY OF BROOKINGS' MOTION FOR SUMMARY JUDGMENT on:

Amy Edwards
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
amy.edwards@stoel.com

Samantha K. Sondag
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
samantha.sondag@stoel.com

Rachelle D. Collins
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
Rachelle.collins@stoel.com

Walter Fonseca
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
wfonseca@ojrc.info

Franz Bruggemeier
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97205
fbruggemeier@ojrc.info

☑    by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

s/Heather J. Van Meter
Liani J. Reeves, OSB No. 013904
Ed Choi, OSB No. 135673
Heather Van Meter, OSB No. 983625
Attorneys for Defendant City of Brookings

Page 1    CERTIFICATE OF SERVICE