**Liani J. Reeves, OSB No. 013904**
liani.reeves@millernash.com
**Ed Choi, OSB No. 135673**
ed.choi@millernash.com
**Heather Van Meter, OSB No. 983625**
heather.vanmeter@millernash.com
Miller Nash, LLP
111 SW 5th Avenue, Suite 3400
Portland, OR  97204
503-224-5858/Telephone
503-224-0155/Facsimile

Attorneys for Defendant City of Brookings

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **ST. TIMOTHY'S EPISCOPAL CHURCH**, by and through **THE DIOCESE OF OREGON**, dba **THE EPISCOPAL DIOCESE OF OREGON**, an Oregon nonprofit corporation, and **REVEREND JAMES BERNARD LINDLEY**, vicar of St. Timothy's Episcopal Church,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF BROOKINGS**, an Oregon municipal government,<br><br>Defendant. | Case No. 1:22-cv-00156-CL<br><br>**DEFENDANT CITY OF BROOKINGS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.    INTRODUCTION

The only issue in this case is Ordinance #21-O-795.  The parties previously

agreed that other land use violations by St. Timothy's are the subject of a different proceeding.[1]
Plaintiffs do not challenge the Brookings Land Development Code generally, and there is no
dispute that St. Timothy's is located in a Residential R-1 zone.  Plaintiffs also do not challenge
the list of permitted and conditionally permitted uses of Residential R-1 zoned property.  For
these reasons, Defendant City of Brookings focused its Motion and focuses this Response on the
Ordinance, not irrelevant material contained in Plaintiffs' Motion.

There is no dispute that St. Timothy's soup kitchen constitutes a "restaurant"
under ORS 624.010(9)(a), as Bishop Akiyama admitted.  Defendant's Motion, Statement of
Facts, para. 12.  Plaintiffs fail to mention that the Brookings Land Development Code does not
allow restaurants at all in residential zones such as the R-1 zone where St. Timothy's is located.
Defendant's Motion, Statement of Facts, para. 13.  More importantly, Plaintiffs fail to
acknowledge that Ordinance #21-O-795 now legally *allows* benevolent meal services, also
known as "soup kitchens," as a conditionally permitted use in residential zones.  In other words,
the Ordinance permits St. Timothy's and others to do something that they otherwise would not
be allowed to do.

The only conditions in Ordinance #21-O-795 are that benevolent meal service
providers: (a) meet the requirements of a 501(c)(3) charitable organization (not at issue); (b)
comply with public health requirements (which St. Timothy's now does); (c) the structures used
comply with applicable building, fire, and public works standards (not at issue); (d) comply with
off-street parking requirements (not at issue); and (e) have meal services occur between 9:00
a.m. and 5:00 p.m. (which St. Timothy's does) for no more than three hours at a time (which St.

---

[1] *See* Defendant's Motion for Summary Judgment ("Defendants' Motion"), n. 1; Sondag Dec., para. 18.  All
references to Defendants' Motion are intended to incorporate those references as if fully set forth in this Response.

Page 2    DEFENDANT CITY OF BROOKINGS' RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

Timothy's does) no more than two times per week. Complaint, Exh. 2; Defendants' Motion, Statement of Facts, para. 8.

The only part of Ordinance #21-O-795 that St. Timothy's does not already comply with is that *every other week* they serve three meals not two, and on the alternating weeks serve two meals per week.[2]  However, Plaintiffs present no evidence that serving meals three days per week on site is required by their religion or faith, as opposed to Fr. Lindley's personal desire.  Plaintiffs readily admit that St. Timothy's only served meals <u>one</u> day per week from 2009 to at least 2015.  Plaintiffs' Motion, p. 3.  Prior to that, Plaintiffs admit St. Timothy's only operated a food bank and <u>did not provide meals at all</u>.  Plaintiffs' Motion, p. 3.  Even now, at least two weeks each month St. Timothy's only serves two meals on site, it is only alternating weeks that it serves three meals.  Plaintiffs also admit that nothing in their religion requires St. Timothy's to provide benevolent meal services at all, indeed very few of the Diocese's churches do so, and nothing requires benevolent meals be served *on site* at St. Timothy's church location versus at other churches, including those a few hundred feet away, or in other parts of the city. *See* Defendant's Motion, Statement of Facts, para. 1.

Plaintiffs appear to drop their previously-stated sole basis for objection to Ordinance #21-O-795 --  that there is a permit required at all.  Defendants' Motion, Statement of Facts, para. 15.  Plaintiffs presumably abandon this objection because it is undisputed that St. Timothy's applied for and received at least two prior permits from the City of Brookings, a building permit and a car-camping permit.  Defendant's Motion, Statement of Facts, paras. 3, 7.

---

[2] St. Timothy's also lets members of a United Methodist Church from Smith River, California serve a fourth meal from St. Timothy's on Mondays, but this benevolent meal service by a different church of a different Christian denomination is not at issue, as plaintiffs are not claiming and could not claim this is part of *St. Timothy's* religious exercise.  Defendant's Motion, Statement of Facts, para. 1; Van Meter Dec., Exh. S (current meal schedule). United Methodist Church is not a party to these proceedings, and also could simply use a different church.

DEFENDANT CITY OF BROOKINGS' RESPONSE TO PLAINTIFFS' MOTION
             FOR SUMMARY JUDGMENT
4893-6231-1562.1

Fr. Lindley and Bishop Akiyama also admitted in deposition that nothing in their faith prohibits Plaintiffs from applying for permits.  Defendant's Motion, Statement of Facts, para. 16.

Ultimately, Plaintiffs' Motion must be denied because Plaintiffs present no evidence that serving benevolent meals three days per week every other week on site at St. Timothy's church in a residential zone is required by its religion, as opposed to Fr. Lindley's changing personal desires, or that the Ordinance substantially burdens religious exercise or in any other way violates Plaintiffs' rights.

## II.    RESPONSE TO PLAINTIFFS' "STATEMENT OF MATERIAL FACTS"

Although Plaintiffs' "Statement of Material Facts" is not limited the relevant facts in this case, Defendant does not here take time to respond to irrelevant matters such as Fr. Lindley's life history, except to point out this case is *not* about Fr. Lindley.[3]  Defendant also does not take time to address St. Timothy's pandemic-era activities such as opening its showers for public use (Colbert Dec., para. 2; Zellmer Dec., para. 3), long lines for COVID testing and vaccinations (Lindley Dec., Exh. 3, p. 1) without proper social distancing or masks, and other actions that directly violated the Governor's public health and safety orders during the declared emergency.[4]  Nor does Defendant respond to Plaintiffs' false claim that "people would go hungry [and] might start stealing food" (Zellmer Dec., para. 9)[5] if the Ordinance that *allows* benevolent meal services stands –Plaintiffs ignore the fact that, if they prevail, existing

---

[3] Plaintiffs also refer several times to Project Turnkey which would use state funds to turn an abandoned motel into a shelter – but no community group every submitted a completed application for the project, confirming city council concerns that there was not sufficient local support for the project to succeed.  St. Timothy's certainly never submitted an application.

[4] Plaintiffs' complaint that the City was attempting to ensure public health and safety in February and June 2021 (Plaintiffs' Motion, p. 10), when the COVID-19 pandemic was raging, does not warrant a response.

[5] *But see* plaintiffs' Bowyer Dec., para. 5 (describing getting daily food at food bank).

benevolent meal services will likely end.

Regarding Plaintiffs' claim that they readily sought an OHA license for their restaurant operations once they became aware of the need, this is not quite accurate. St. Timothy's own OHA application complains about the process, sarcastically asking if other churches are required to do the same. Van Meter Dec. (on file), Exh. Q, p. 1. Additionally, it was City employee Mr. Baron, a childhood friend of Fr. Lindley, who personally spoke with Fr. Lindley about the permit requirement so that St. Timothy's could comply with public health laws – hardly the act of a person or city "out to get" St. Timothy's as St. Timothy's claims. Van Meter Dec., Exh. T (Baron Dep., 11:15-13:12); Van Meter Dec., Exh. A (on file) (Lindley Dep. 116:6-122:2). Nor did Mr. Baron initiate any "challenge" to St. Timothy's de facto conditional use permit during St. Timothy's COVID-era violations, Mr. Baron simply provided relevant code sections in his role as Public Works Director in response to a request for the information in August 2020. Plaintiffs' Motion, p. 9; Sondag Dec., Exh. 4 (Dep. Exh. 36). Furthermore, Mr. Baron's communications with a resident complaining about the problems at St. Timothy's in November 2020 were consistent with the assistance he would provide any resident asking how to make a complaint (see Defendant's Motion, p. 15, n.6), and the language Plaintiffs quote is not even Mr. Baron's language as he *repeatedly* testified, although Plaintiffs deceptively omit this testimony. Van Meter Dec., Exh. T (Baron Dep. 58:2-62:5).[6]

Plaintiffs' argumentative statement that Defendant engaged in an "attempt to shutter St. Timothy's feeding ministry" (Plaintiffs' Motion, p. 11) is directly contradicted by the fact that Ordinance #21-O-795 was proposed and unanimously adopted to *allow* benevolent meal services to continue. Defendant's Motion, Statement of Facts, paras. 12-14. To attempt to

---

6 Plaintiffs' lack of candor in this regard is confounding.

support Plaintiffs' false conspiracy theory, Plaintiffs point to a July 29, 2021 letter that was sent

to all known benevolent meal providers including St. Timothy's, stating "*The City wants to work

with St. Timothy's to ensure that its use of the property complies with the BMC's residential

zoning standards…*" and providing several options for compliance and offering to discuss other

options.  Plaintiff's Motion, p. 11.  Far from exhibiting any intent to "shutter" St. Timothy's

meal services, it indicates the City's attempt to work with St. Timothy's and other benevolent

meal providers to find solutions, as is Ordinance #21-O-795.  Plaintiffs' only other "support" for

this false conspiracy theory is Mr. Baron contacting OHA to determine if St. Timothy's was

properly listed on OHA's website as a bed and breakfast, and OHA corrected their error (Sondag

Dec., Exh. 4, p. 21)[7] – hardly a conspiratorial act to "shutter" St. Timothy's.

The current benevolent meals schedule in Brookings is as follows:[8]

| Mon. | Tues. | Weds. | Thurs. | Fri. | Sat. | Sun. |
|---|---|---|---|---|---|---|
| Smith River United Methodist Church (using St. Timothy's) 12:00-1:00 p.m. | St. Timothy's 12:00-1:00 p.m. | Star of the Sea Catholic Church 12:00 – 1:00 p.m. | Brookings Presbyterian Church 12:00 – 1:00 p.m. | Trinity Lutheran Church 12:00 – 1:00 p.m. | Every other Saturday: St. Timothy's *or* Church of the Nazarene 12:00 – 1:00 p.m. | St. Timothy's 3:00 – 4:00 p.m. |

The locations of these services are attached for the Court's convenience. Van Meter Dec., Exh.

U. At least two churches with conditional use permits to serve benevolent meals up to two days

per week, but only serving one day per week, are within less than 1000 feet, or less than three

---

[7] These communications arose after the county public health department closed with duties transferred to the state.

[8] Lindley Dec., paras. 6-8; Van Meter Dec., Exh. S.

Page 6    DEFENDANT CITY OF BROOKINGS' RESPONSE TO PLAINTIFFS' MOTION
          FOR SUMMARY JUDGMENT

football fields, from St. Timothy's.  Id.

Most relevant and telling in Plaintiffs' "Statement of Material Facts" is the fact that there is <u>no citation to any testimony or authority</u> whatsoever for this statement: "*Plaintiffs could not sign a CUP application agreeing to limit their feeding ministry while also adhering to their sincerely held religious belief to feed the hungry and care for those in need*."  <u>Plaintiffs cannot support this statement with any admissible evidence because it is not true.</u>  Fr. Lindley and Bishop Akiyama both readily admitted in deposition that nothing in their religion requires benevolent meal services at all, and nothing requires such meals be served on the site of St. Timothy's church as opposed to other churches, some of which are within easy walking distance a few hundred feet away, or multiple other locations in the City.  Defendant's Motion, Statement of Facts, para. 1; Attachment 1. Plaintiffs also admit that prior to 2006 they only had a food bank and provided no meal services, and until at least 2015 they only served one meal per week. Plaintiffs' Motion, p. 3.

## III.    ARGUMENT

**A.    Plaintiffs' RLUIPA Claim Fails Because There is no Individualized Assessment of Plaintiffs' Property Uses, No Substantial Burden on Religion, and Ordinance #21-O-795 Actually Allows an Activity That is Not Otherwise Allowed in Residential Zones**

### 1.    There Is No Individualized Assessment of the Property

As discussed in Defendant's Motion, pages 18-20, Plaintiffs can only bring an RLUIPA claim if the land use regulation at issue meets one of three requirements in Section 2000cc(a).  The only possibly applicable regulation is in Subsection C, which requires individualized assessments of the proposed uses for the property be involved.  Plaintiffs fail to meet this prerequisite for their claim to proceed.

According to the Brookings Land Development Code, until adoption of

Ordinance #21-O-795, the residential zone in which St. Timothy's is located does not allow for any restaurants as either a permitted or conditionally permitted use.  Defendant's Motion, pp. 18-20.  Ordinance #21-O-795 now allows benevolent meal services as a conditional use for <u>any</u> person or entity meeting the Ordinance's requirements.  No individualized assessment of property is involved by the terms of the Ordinance.  Indeed, Ordinance #21-O-795 allows individual residents in private homes, church operators, and other non-profit groups to provide benevolent meal services as long as the Ordinance's conditions are met – the Ordinance does not make any individualized assessment of property in this regard.

Importantly, St. Timothy's never applied for a permit under Ordinance #21-O-795, such that there has never been an individualized assessment of its property at all to date – if it applied for a conditional use permit under the Ordinance, an individualized assessment of the property may be involved, but provided the Ordinance's terms are met the permit would likely be granted just like all other applicants to date.  Defendant's Motion, Statement of Facts, para. 16.  However, never having applied, St. Timothy's has never been the subject of an individualized assessment of its property.

For these reasons, Plaintiffs do not meet the prerequisite statutory requirement for their RLUIPA claim, and the claim fails.

## 2. There is No "Substantial Burden" on Plaintiffs, The Only Burden is Self-Imposed Based on Fr. Lindley's Personal Desires

This Court may be pleased to know that Plaintiffs and Defendant agree on two things: (1) that a "substantial burden" on Plaintiffs' exercise of religion is required for Plaintiffs' RLUIPA claim to succeed; and (2) a "substantial burden" on religion is one that is "oppressive to a significantly great extent."  Plaintiffs bear the burden to prove a "substantial burden" exists. *International Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1066 (9th

Cir. 2011).  Plaintiffs fail to meet this burden.

As discussed in Defendant's Motion, pages 21-22, courts generally recognize that religious institutions are not immune from land use regulations.  Plaintiffs seek to rely on RLUIPA for the principle that churches must be allowed to use church property in any manner they please.  This is not what RLUIPA says. RLUIPA requires Plaintiffs to prove that the land use regulation at issue imposes a "substantial burden," one that is "oppressive to a significantly great extent," on Plaintiffs' religious exercise before it is a potential violation.

Here, nothing in Ordinance #21-O-795 burdens Plaintiffs' exercise of religion at all – the ordinance *allows* Plaintiffs to do something they are not otherwise allowed to do under the Land Development Code - serve benevolent meals.  Because the Ordinance, by its terms, allows something not otherwise allowed, it cannot be considered a "substantial burden" at all. Plaintiffs admittedly continue weekly and nightly prayer services, operating their Community Garden, operating showers with towel and laundry services, and other church services and events (Mora Dec., para. 2; Zellmer Dec., para. 3).  There is no substantial burden on religious exercise.

Nor does Ordinance #21-O-795 involve a land use regulation that is "oppressive to a significantly great extent," it *allows* benevolent meal service providers to use the same location in a residential zone up to twice per week for benevolent meals.  This only impacts Plaintiffs' meal services once every other week on the alternating weeks when Plaintiffs choose to serve three meals.  Plaintiffs could use other churches to serve benevolent meals that one day every other week, including either of two churches with existing permits that are within a few hundred feet from St. Timothy's.  Plaintiffs could use a location in a different zone of the city – in fact Plaintiffs could potentially do this 24/7/365 if they choose.  In this regard, Plaintiffs' argument relies on a false, self-imposed binary choice of two days per week or not at all, based

entirely on Fr. Lindley's personal desire, not any religious tenet or requirement.

Plaintiffs' situation is a far cry from their cited *Harbor Missionary Church* case, in which the church was prohibited entirely from conducting any homeless ministry or services on church land, and the church would be required to sell its building and raise an estimated $1.4 million to relocate. *Harbor Missionary Church Corp. v. City of San Buenaventura*, 642 Fed. Appx. 726, 729-730 (9th cir. 2016). Rather, as in *Episcopal Student Foundation (Canterbury House) v. City of Ann Arbor*, Plaintiffs can fulfill Fr. Lindley's personal goal to serve meals multiple times per week from any number of very close locations and in any number of other alternative ways. 341 F. Supp. 2d 691, 705 (E.D. Mich. 2004) ("Although it may be 'incredibly beneficial' if Canterbury House were able to offer its own kitchen and dining room for [homeless meal] services, there is no indication that Canterbury cannot continue to feed the hungry at such alternate locations and thus fulfill its religious mission") (citing, among other cases) *Daytona Rescue Mission, Inc. v. City of Daytona Beach*, 885 F. Supp. 1554, 1560 (M.D. Fla. 1995), holding denial of permit did not substantially burden Plaintiff's free exercise where Plaintiff failed to show that city code prevented it from running shelter or food programs anywhere in Daytona Beach).

Furthermore, Plaintiffs admitted in deposition that there is nothing in their religion requiring St. Timothy's to serve benevolent meals at all, let alone a certain number of days per week, or at a certain location. None of these are religious mandates – they are merely Fr. Lindley's personal desires. This is hardly the type of 'substantial pressure … to modify behavior and violate religious beliefs' as in *Guru Nanak Sikh Society* relied upon by Plaintiffs. St. Timothy's did not serve benevolent meals at all for many decades. Even after beginning benevolent meal services in 2009, it was only once per week for many years, during the time Fr.

Lindley was pastor at St. Timothy's.  For Fr. Lindley to now claim that serving benevolent meals

at least three days per week and only at St. Timothy's church location is required by his religious

faith is contradicted by Fr. Lindley's own admissions and his operations of St. Timothy's for

many years.  Such a self-imposed burden does not and cannot violate RLUIPA, as discussed in

Defendant's Motion, pp. 23-24.

Based on the foregoing, it is clear that there is no "substantial burden" on

Plaintiffs' religious exercise.  The only "burden" at all is a self-imposed burden based on Fr.

Lindley's own personal desires.   There is no RLUIPA violation involved.

### 3.    Plaintiffs Admit that Public Safety and Welfare Are Compelling Government Interests, and Here a Permissive Not Restrictive Means Was Applied

Even if an individualized assessment was involved, and even if a substantial

burden was involved, there is still no RLUIPA violation.  Plaintiffs admit that the government

interests at issue include public welfare, maintaining peace and order, and reducing crime, as

stated in Defendant's interrogatory responses.[9]  Fr. Lindley and Bishop Akiyama both admitted

at deposition that public safety is a legitimate government concern and in fact one of the reasons

that city government exists.  Defendant's Motion, Statement of Facts, para. 9.  There also is no

dispute that crime and maintaining peace and order at St. Timothy's was a problem – indeed Fr.

Lindley admitted things got "out of hand" at St. Timothy's, and police dispatch calls to St.

Timothy's went from 8 to 154 from 2010 to 2020 (years coinciding with St. Timothy's

benevolent meal services increases), while the City's population was essentially unchanged.

_____

[9] Plaintiffs falsely state that the City "could not produce a representative competent to testify to the government interests" of the City.  As is well-documented in the discovery dispute, defendant could not identify just one single city official to discuss *all* of the City's concerns and decision-makers' personal considerations in passing the Ordinance, because the process involved numerous persons at the planning and city council levels.  Instead, the City offered to arrange for depositions of numerous persons - an offer plaintiffs refused.

Defendant's Motion, Statement of Facts, paras. 5-7, 10.  There also is no dispute that Ordinance #21-O-795 has helped to successfully reduce the number of public health and safety and health and welfare issues at permitted benevolent meal service sites.  Defendant's Motion, Statement of Facts, para. 17.  Far from being a "general interest" of a city, addressing crime, public welfare and safety were the particularized interests at issue at St. Timothy's, according to its own neighbors, and these interests prompted the City's review of the situation.

Once the City received the residents' petition and complaints and reviewed the situation, it determined that the existing Brookings Land Development Code did not allow benevolent meal services in residential zones at all – meaning all benevolent meal service providers were in violation of the Code.  Mayor Hedenskog and others quickly moved to rectify this situation – unanimously adopting Ordinance #21-O-795 to *allow* benevolent meal services to continue.  Defendant's Motion, Statement of Facts, paras. 12-16.  Had the City not done so, every benevolent meal service provider in a residential zone was violating the City's Land Development Code.  Thus, adoption of Ordinance #21-O-795 was a permissive not a restrictive action.  Furthermore, the durations and times and frequency for meals contained in the Ordinance were based on and in fact *exceeded* the requests of those benevolent meal service providers that worked with the City towards the Ordinance's adoption.  Defendant's Motion, Statement of Facts, para. 14, 16.  In this regard, Plaintiffs' argument that the City *limited* the number of meals available to the needy by enacting the Ordinance is incorrect – the City did the opposite.

For these reasons as well, the Ordinance does not violate RLUIPA because it was adopted to fulfill a particularized and compelling government interest and through a permissive not restrictive means.  Striking down the Ordinance, as Plaintiffs request, will render *all* benevolent meal service providers in residential zones in violation of the Brookings Municipal

Code, likely ending these benevolent meal services.  For all these reasons, Plaintiffs' Motion based on RLUIPA must be denied.

**B.      Plaintiffs' Free Exercise Claim Fails Because There Is No Suppression of Religion Imposed By the Ordinance**

Plaintiffs admit that, in order to violate the Free Exercise clause, a law must have the "object or purpose [of] suppression of religion or religious conduct."  Plaintiffs' Motion, p. 31.  However, Plaintiffs fail to acknowledge that if an ordinance is neutral and of general applicability, meaning it does not "single out houses of worship for especially harsh treatment," then rational basis review applies.  Defendant's Motion, p. 26.  Plaintiffs also fail to acknowledge that nothing in Ordinance #21-O-795 singles out houses of worship for especially harsh treatment – the Ordinance is neutral and generally applicable and actually *allows* an activity, one presently carried out only by churches, that is not otherwise allowed in residential zones.

Plaintiffs inexplicably liken Ordinance #21-O-795 to a city-wide ban on animal sacrifice that was adopted with the intent to suppress practitioners of the Santeria religion in the *Lukumi Babalu Aye* case.  However, as noted above, the Ordinance actually *allows* an activity that is otherwise not allowed in residential zones – providing benevolent meal services.  There is no *suppression* of religion in permitting benevolent meal services that would not otherwise be allowed.

Nor does the Ordinance restrict benevolent meal services to churches, as Fr. Lindley admits.  Defendant's Motion, Statement of Facts, para. 16.  Instead, the Ordinance by its terms allows any person or entity meeting the conditions in the Ordinance to provide benevolent meal services. The Ordinance is neutral on its face and in application – every entity requesting a conditional use permit and meeting the terms of the ordinance have received a permit, and all

fees were waived.  Defendant's Motion, Statement of Facts, para. 16.  Plaintiffs' claims are quite similar to the shotgun approach in the *Family Life Church v. City of Elgin* case, where the court denied all of the church's claims and entered summary judgment in the City's favor.  561 F. Supp. 2d 978 (N.D. Ill. 2008).  Specifically, the court in *Family Life Church* found that the City's requirement for a permit to operate a homeless shelter was facially neutral and any religious burden incidental, holding there was no Free Exercise violation.

Nor was any hostility directed *towards churches* in the Ordinance process.  On the contrary, Mayor Hedenskog actually managed the benevolent meal services at St. Timothy's for a decade and, knowing the benefits, worked to ensure that benevolent meal services could continue legally.  Defendant's Motion, Statement of Facts, paras. 11, 13.  Furthermore, during the democratic process leading to the Ordinance's unanimous approval, the providers of benevolent meal services[10] were asked what terms to include in the Ordinance, then their requests were not only met but exceeded in the final Ordinance terms.  Defendant's Motion, Statement of Facts, paras. 14, 16.[11]  These are hardly facts showing hostility towards churches – just another false conspiracy theory by Plaintiffs.   Argument and conspiracy theory is not a substitute for evidence on summary judgment.

Plaintiffs confusingly argue that Ordinance #21-O-795 did not affect conditionally-permitted bed and breakfasts, clubs, or lodges in residential zones, and somehow this triggers strict scrutiny.  However, a long list of entities may obtain conditional use permits in various residential zones, including hospitals, day cares, schools, country clubs, golf courses,

---

[10] Benevolent meal service providers all happen to be churches at present, but the Ordinance is not limited to churches and applies equally to any person or entity that meets 501(c)(3) requirements.

[11] Plaintiffs provided no input in the process, except to state they intended to file a lawsuit.

cemeteries, poultry farms, and amateur radio facilities.  Brookings Municipal Code, 17.20.040.

All of these entities and proposed uses already must meet different conditional use requirements

and approval processes, including planning department application, application review, public

notice and hearings, and possible approval or denial.  *See* Brookings Planning Handbook,

https://www.brookings.or.us/DocumentCenter/View/1175/Brookings-Planning-Handbook-

PDF?bidId=.  If any of these entities also want to provide benevolent meal services in residential

zones, they can certainly do so, provided they meet the terms of the Ordinance.

Plaintiffs then inaccurately point to senior meals at the Chetco Activity Center, a

senior center that is in a R-3 zone (not R-1 like St. Timothy's), and existed since 1986, thus pre-

dating Brookings' adoption of its Land Development Code in 1989.  Van Meter Dec., Exh. V

(Chetco Activity Center planning file relevant excerpts).  The Chetco Activity Center, due to its

pre-Code existence, was grandfathered in as a de facto permitted conditional use in the R-3 zone,

and the uses of the property pre-dating the Code's adoption were also grandfathered in,

*specifically including the senior meals served there*.  *Id*.[12]

Because there is no suppression of religion at all, because rational basis review

applies, and because Plaintiffs admit that public safety and health and welfare are legitimate

government interests, Plaintiffs' second claim based on the Free Exercise Clause fails.

## C.    Plaintiffs' Fourteenth Amendment Due Process Claim Fails Because Fr. Lindley Himself Understood the Ordinance, and the Ordinance is Not Vague

Here again, the Court may be pleased to know the parties agree on the applicable

standard, that vagueness requires that 'persons of common intelligence must necessarily guess at

the meaning and differ as to the application.' Plaintiffs' Motion, p. 35; Defendant's Motion, p.

---

[12] Plaintiffs did not ask any deponent about the Chetco Activity Center. Changes in use of a property with a de facto conditional use permit that arise *after* adoption of the Code are subject to review.

29.  In this case, Fr. Lindley, being of at least common intelligence, admits understanding the Ordinance applies to soup kitchens such as the one operated by St. Timothy's.  Defendant's Motion, Statement of Facts, para. 12.  Fr. Lindley also admits that St. Timothy's is currently in violation of the Ordinance.  Defendant's Motion, Statement of Facts, para. 16.  Plaintiffs fail to acknowledge Fr. Lindley's admissions in their motion.  Because vagueness attacks are based on lack of notice, "they may be overcome in any specific case where reasonable persons would know their conduct is at risk."  *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); Defendant's Motion, pp. 29-30.  Based on Fr. Lindley's admissions, Plaintiffs' Due Process claim fails.

To the extent the exercise of reviewing dictionary definitions is needed, the annotated definition of "benevolent meal service" is "a periodic [occurring at regular intervals] food service operation that provides food to the public [people in general] without charge [free]." Defendant's Motion, pp. 30-31. Plaintiffs do not challenge the definition of "food service operation."  Complaint, para. 83.  Plaintiffs attempt to argue this definition could apply to Halloween candy distribution, but that does not involve serving meals and is not a "food service operation."  Plaintiffs also suggest a neighborhood barbecue could be included, but that is not to the public/people in general, it is for neighbors in a neighborhood.  Plaintiffs also argue there is "selective enforcement," but not only is this not part of Plaintiffs' Complaint or claims, the only example Plaintiffs offer is the Chetco Activity Center which, as discussed above, has a de facto conditional use permit for its senior meal services.

Plaintiffs' Motion does not address Plaintiffs' "overbreadth" claim, and Plaintiffs appear to have abandoned this part of their claim.

For all these reasons, especially because Fr. Lindley admits understanding the Ordinance and knowingly violating it, Plaintiffs' Due Process claim fails.

**D.    Plaintiffs' First Amendment Free Speech and Association Claim Fails Because Plaintiffs Admit There Are No Restrictions on Speech in the Ordinance, Nor Are There Association Restrictions**

First and foremost, as discussed above, Ordinance #21-O-795 permits an activity, benevolent meal services, that is otherwise not allowed in residential zones.  For this reason alone, there are no "restrictions" on the exercise of free speech or association, because the Ordinance permits not restricts activity.

Additionally, Bishop Akiyama admitted no speech is addressed in the Ordinance. Defendant's Motion, Statement of Facts, para. 16. Plaintiffs argue without any evidence that the Ordinance is a "content-based restriction," but again argument and conspiracy theory is not a substitute for evidence at summary judgment – especially when Bishop Akiyama herself admits speech is not addressed in the Ordinance.  Content-neutral regulations do not violate the First Amendment provided they further a substantial governmental interest and do not unreasonably limit alternative communication avenues.  *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1033 (9th Cir. 2004).  The Ordinance does not limit any communication avenues at all, and was enacted to fulfill the government's interest in ensuring benevolent meals could continue.

Nor does the Ordinance prohibit gathering of persons or association in any way – the Ordinance *allows* provision of benevolent meal services that are not otherwise allowed in residential zones.  To be cognizable, an interference with protected associational rights must be direct and substantial or significant, not simply incidental or make it 'more difficult.'  *Lyng v. UAW*, 485 U.S. 360, 366, 367 & n.5 (1988).  Here, nothing about the Ordinance inhibits association at all.  Plaintiffs again confuse the facts of the Ordinance with Fr. Lindley's personal misperceptions and desires.  Plaintiffs argue without any evidence that the Ordinance prohibits them from associating with persons – but no such restriction appears in the Ordinance.  Indeed,

Page 17   DEFENDANT CITY OF BROOKINGS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

going several steps further, at pages 38 and 39, Plaintiffs argue *without any citation to evidence* that the Ordinance was adopted due to the City's disagreement with a message conveyed by St. Timothy's, and argue the Ordinance prohibits Plaintiffs from "meeting to worship, gather, discuss scripture and pray" – but again no such restriction appears in the Ordinance.  In fact, Plaintiffs' own declarants admit to continuing their regular associational activities (Mora Dec., para. 2; Zellmer Dec., para. 3). As noted above, argument and conspiracy theory is not a substitute for evidence at summary judgment.

Nothing in the Ordinance inhibits speech or association in any way, therefore Plaintiffs' First Amendment claims fail.

**E.    Plaintiffs' Claims Based on Oregon's Constitution Article I, Sections 2, 3, and 8 Fail For All the Reasons Discussed Above**

For purposes of Article I, Sections 2 and 3 of the Oregon Constitution, relating to religious freedoms, a general statutory or regulatory scheme that is neutral towards religious motivations is generally not subject to a valid challenge, provided statutory authority existed to make the regulation.  *See* Defendant's Motion, pp. 34-35.  Here, Ordinance #21-O-795 is a generally applicable and neutral law, it does not distinguish between religions, or between religious and non-religious, and does not seek to control religious opinion.  Id. Also, Plaintiffs do not allege or argue that the City Council lacked statutory authority to pass the Ordinance.

Plaintiffs argue, again without any supporting evidence, that the Ordinance "severely restricts their ability to minister to those in need" - but the Ordinance only addresses benevolent meals/food service operations, and then allows such meals to occur when they are not otherwise allowed in residential zones.  Fr. Lindley's Quixotic personal perception of the Ordinance is not a sufficient basis to support Plaintiffs' claim in the face of all evidence to the contrary.  As discussed above, argument and conspiracy theory is not a substitute for evidence at

summary judgment.

With respect to Plaintiffs' claim based on Article I, Section 8 free speech protections, as noted above, Bishop Akiyama admits the Ordinance does not address speech at all.  Nor does the Ordinance prohibit associations, as discussed above.  Under Ordinance #21-O-795, Plaintiffs remain free to say whatever they want, whenever they want, wherever they want, to whomever they want, and Plaintiffs remain free to associate with whomever they want, whenever they want.  For these reasons, as discussed in Defendant's Motion at p. 39-40, Plaintiffs' state law claims fail.

### IV.   CONCLUSION

Based on the foregoing, Plaintiffs' motion for summary judgment must be denied.

DATED:  November 17, 2023.

MILLER NASH, LLP


By s/Heather J. Van Meter
Liani J. Reeves, OSB No. 013904
liani.reeves@millernash.com
Ed Choi, OSB No. 135673
ed.choi@millernash.com
Heather Van Meter, OSB No. 983625
heather.vanmeter@millernash.com
Attorneys for Defendant
City of Brookings

11/13/23, 2:59 PM                                brookings oregon church map - Google Maps



## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2023 I served the foregoing DEFENDANT

CITY OF BROOKINGS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY

JUDGMENT on:

Amy Edwards
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
amy.edwards@stoel.com

Samantha K. Sondag
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
samantha.sondag@stoel.com

Rachelle D. Collins
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
Rachelle.collins@stoel.com

Walter Fonseca
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
wfonseca@ojrc.info

Franz Bruggemeier
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97205
fbruggemeier@ojrc.info

☑     by **electronic** means through the Court's Case Management/Electronic Case File system, which will send automatic notification of filing to each person listed above.

s/Heather J. Van Meter
Liani J. Reeves, OSB No. 013904
Ed Choi, OSB No. 135673
Heather Van Meter, OSB No. 983625
Attorneys for Defendant City of Brookings

Page 1    CERTIFICATE OF SERVICE