**KRISTEN CLARKE**
Assistant Attorney General
**CARRIE PAGNUCCO**
Chief
**NOAH SACKS**
**MAX LAPERTOSA**
Trial Attorneys
Max.Lapertosa@usdoj.gov
Civil Rights Division
Housing and Civil Enforcement Section
U.S. Department of Justice
950 Pennsylvania Avenue NW—4CON
Washington, DC  20530
Tel.: (202) 598-9726/Fax: (202) 514-1116

**KELLY ZUSMAN, DC BAR # 90002808**
First Assistant United States Attorney
District of Oregon
**MICHAEL JETER, OSB # 165413**
michael.jeter@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Tel.: (503) 727-1064/Fax: (503) 727-1117

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

Case No. 1:22-cv-00156-CL

**ST. TIMOTHY'S EPISCOPAL CHURCH**, *et al.*,

Plaintiffs,

v.

**CITY OF BROOKINGS**, an Oregon municipal government,

Defendant.

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

**TABLE OF CONTENTS**

<strong>PAGE</strong>

I.      INTRODUCTION ..............................................................................................1

II.     INTEREST OF THE UNITED STATES ........................................................1

III.    RELEVANT BACKGROUND .......................................................................2

      A.    *St. Timothy's History and Establishment of its Meal Service* .................2

      B.    *The City's Actions to Restrict St. Timothy's Meal Service* ......................3

IV.    ARGUMENT ..................................................................................................7

      A.    *Plaintiffs' Claims Are Covered by RLUIPA* ..........................................7

      B.    *The City is Not Entitled to Summary Judgment on Plaintiffs'
        Substantial Burden Claims* ...................................................................13

            1.    *Plaintiffs' Distribution of Free Meals to Persons in Need Is
              "Religious Exercise" Under RLUIPA* .......................................13

            2.    *Plaintiffs Had a "Reasonable Expectation" That They Could
              Distribute Free Meals to Persons in Need at St. Timothy's Church* ........15

            3.    *The City Has Not Demonstrated as a Matter of Law That the
              Burden on Plaintiffs' Religious Exercise Was Not "Substantial"* ...........19

            4.    *The City Has Not Demonstrated as a Matter of Law That
              Other Sites Were Readily Available for Plaintiffs' Distribution
              of Free Meals to Persons in Need* ............................................21

      C.    *The City Has Not Demonstrated as a Matter of Law That the Ordinance
        Furthers a Compelling Governmental Interest, Nor That It Employed
        the Least Restrictive Means of Furthering That Interest* .....................23

            1.    *Legal Standard* ........................................................................23

            2.    *The Ordinance Does Not Further the City's Purported Governmental
              Interest of Promoting "Public Safety and Welfare"* ................24

**PAGE**

3.   *Restricting Meal Services to the Needy to Two Days Per Week*
     *Is Not the Least Restrictive Means of Protecting*
     *the City's Identified Interests* ....................................................................27

V.   CONCLUSION ...............................................................................................30

# TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE**

*Al Saud v. Days*, 50 F.4th 705 (9th Cir. 2022) ............................................................ 27

*Andon, LLC v. City of Newport News*, 813 F.3d 510 (4th Cir. 2016) ........................... 15

*Bethel World Outreach Ministries v. Montgomery Cnty. Council*,
   706 F.3d 548 (4th Cir. 2013) ................................................................ 15, 21

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ..................................... 13, 28

*Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993) ................ 18

*Citizens for Responsible Gov't State Political Action Comm. v. Davidson*,
   236 F.3d 1174 (10th Cir. 2000) ..................................................................... 7

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ............................................................. 8

*City Walk – Urb. Mission Inc. v. Wakulla Cnty.*, 471 F. Supp. 3d 1268 (N.D. Fla. 2020) ........... 10

*Civil Liberties for Urban Believers v. City of Chi.*, 342 F.3d 752 (7th Cir. 2003) ....................... 22

*Dilaura v. Ann Arbor Charter Twp.*, 30 F. App'x 501 (6th Cir. 2002) ................................... 9, 12

*Fifth Ave. Presbyterian Church v. City of N.Y.*, 293 F.3d 570 (2d Cir. 2002) ............................ 13

*Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033 (9th Cir. 2018) ........................................ 7

*First Lutheran Church v. City of St. Paul*,
   326 F. Supp. 3d 745 (D. Minn. 2018) ........................................ 13-14, 19-20, 26, 28

*Fulton v. City of Phila.*, 141 S. Ct. 1868 (2021) .................................................... 24, 28

*Grace Church of N. Cnty. v. City of San Diego*, 555 F. Supp. 2d 1126 (S.D. Cal. 2008) ...... 23, 24

*Grace United Methodist Church v. City of Cheyenne*,
   451 F.3d 643 (10th Cir. 2006) ................................................................. 12, 14

*Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957 (9th Cir. 2011) ..................... 12

*Guru Nanak Sikh Soc'y v. Cnty. of Sutter*, 456 F.3d 978 (9th Cir. 2006) ............................ *passim*

*Holt v. Hobbs*, 135 S. Ct. 853 (2015) .......................................................................... 28

**PAGE iii –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

**CASES (continued):**                                                    **PAGE**

*Int'l Church of Foursquare Gospel v. City of San Leandro*,
   673 F.3d 1059 (9th Cir. 2011) ............................................................ *passim*

*Johnson v. Baker,* 23 F.4th 1209 (9th Cir. 2022) ........................................ 14

*Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*,
   915 F.3d 256 (4th Cir. 2019) ............................................................ 16

*Konikov v. Orange Cnty.*, 410 F.3d 1317 (11th Cir. 2005) ........................... 11

*Lakewood, Ohio Congregation of Jehovah's Witnesses v. City of Lakewood*,
   699 F.2d 303 (6th Cir. 1983) ............................................................ 14

*Martin v. Houston*, 196 F. Supp. 3d 1258 (M.D. Ala. 2016) ...................... 10

*Mast v. Fillmore Cnty.*, 141 S. Ct. 2430 (2021) ...................................... 23

*Micah's Way v. City of Santa Ana*, No. 8:23-cv-00183-DOC-KES,
   2023 WL 4680804 (C.D. Cal. June 8, 2023) .................................. 13, 17

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) ............ 14

*Ne. Fla. Ch. of Associated Gen. Contractors of Am. v. City of Jacksonville*,
   508 U.S. 656 (1993) ...................................................................... 7

*New Harvest Christian Fellowship v. City of Salinas*,
   29 F.4th 596 (9th Cir. 2022) ...................................................... 15, 21, 23

*Saints Constantine & Helen Greek Orthodox Church v. City of New Berlin*,
   396 F.3d 895 (7th Cir. 2005) ............................................................ 21

*San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004) ............ 22

*Stuart Circle Parish v. Bd. of Zoning App.*, 946 F. Supp. 1225 (E.D. Va. 1996) ............ 14, 20

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981) ........................... 13

*United States v. City of Troy*, 592 F. Supp. 3d 591 (E.D. Mich. 2022) ...................... 16

*United States v. City of Walnut*, No. CV-10-6774-GW,
   2011 WL 12464619 (C.D. Cal. Jan. 13, 2011) .................................. 12

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ............................... 7

**CASES (continued):**                                                         **PAGE**

*Walker v. Beard*, 789 F.3d 1125 (9th Cir. 2015) ........................................................ 27

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005)............................................... 27

*Westchester Day Sch. v. Vill. of Mamaroneck*,
   504 F.3d 338 (2d Cir. 2007)....................................................... 8, 19, 21, 24

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985).................. 12

*World Outreach Conference Ctr. v. City of Chi.*, 591 F.3d 531 (7th Cir. 2009) ......................... 13

**STATUTES:**

28 U.S.C. § 517............................................................................................................. 1

Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA),
   42 U.S.C. § 2000cc(a)(1) .............................................................. 1, 8, 23, 27
   42 U.S.C. § 2000cc(a)(2)(A)...................................................................... 8
   42 U.S.C. § 2000cc(a)(2)(B)...................................................................... 8
   42 U.S.C. § 2000cc(a)(2)(C).............................................................. 8, 10, 11
   42 U.S.C. § 2000cc-2(f) .............................................................................. 1
   42 U.S.C. § 2000cc-3(g).............................................................................. 19
   42 U.S.C. § 2000cc-5(7)(A) .................................................................. 13, 14

Or. Rev. Stat. Ann. tit. 49, ch. 616 (West 2023)...................................................... 10

Or. Rev. Stat. Ann. § 624.010(9)(a) (West 2023)................................................. 10, 18

**ORDINANCES:**

Brookings, Oregon, Municipal Code,
   § 17.01.030........................................................................................... 2
   § 17.08.020........................................................................................... 6
   § 17.08.180........................................................................................... 9
   §§ 17.20.010-110.................................................................................... 9
   § 17.20.040....................................................................................... 6, 9
   § 17.20.040(B)....................................................................................... 2
   § 17.20.040(V)....................................................................................... 6
   § 17.124.050(A) .................................................................................... 6
   § 17.132............................................................................................. 10
   § 17.136............................................................................................. 10

**OTHER AUTHORITIES:**                                                       **PAGE**

Brookings, Property Watch Program,
    https://www.brookings.or.us/346/Property-Watch-Program (last visited Oct. 31, 2023)........... 6

## I.    INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] to address questions with respect to Defendant City of Brookings's ("City") motion for summary judgment on Plaintiffs' claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5.  As explained below, the Court should deny summary judgment to the City on Plaintiffs' claim that the City imposed a "substantial burden" on Plaintiffs' religious exercise by restricting Plaintiffs from distributing meals to persons in need at a house of worship, in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(1).  The United States does not address the parties' other claims or arguments.

## II.    INTEREST OF THE UNITED STATES

Plaintiffs allege that the City violated RLUIPA by substantially burdening Plaintiffs' religious exercise when it first prohibited, and then enacted a land use ordinance that significantly restricted, Plaintiffs' long-established, faith-based practice of providing free meals to persons in need at St. Timothy's Church in Brookings, Oregon.  This case raises important questions involving RLUIPA's applicability to land use laws that impact or restrict faith-based services and outreach programs to persons in need.  The Attorney General is charged with enforcing RLUIPA, 42 U.S.C. § 2000cc-2(f), and therefore has an interest in the proper interpretation and resolution of the legal issues raised in the City's summary judgment motion.

---

[1]  Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

**PAGE 1 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

## III.    RELEVANT BACKGROUND

### A.    *St. Timothy's History and Establishment of its Meal Service*

Since 1953, St. Timothy's Episcopal Church ("St. Timothy's") has operated at 401 Fir Street in Brookings.  *See* Pls.' Mot. Summ. J. ("Pls. Mot.") 3, ECF No. 43.  In 1989, the City adopted its current zoning code.  Def.'s Mot. Summ. J. ("Def. Mot.") 12, ¶ 3, ECF No. 54; *see also* Brookings, Or. Mun. Code ("Brookings Code") § 17.01.030.[2]  Under the code, St. Timothy's was zoned as an R-1 single-family residential district.  Pls. Mot. 3; Def. Mot. 12, ¶ 3. Churches are one of 21 non-single-family residential uses—including hospitals, nursing homes, day care facilities, country clubs and golf courses, public halls, and bed-and-breakfasts—that may operate in R-1 districts subject to a conditional use permit.  Brookings Code § 17.20.040(B). Because St. Timothy's pre-dated the Brookings Code, it operated under a "de facto conditional use permit."  Def. Mot. 12, ¶ 3.

In 2009, St. Timothy's, along with other churches in Brookings, began offering free lunchtime meals to persons in need.  Def. Mot. 13, ¶ 4; Pl. Mot. 3.  The City was fully aware of this activity.  From 2009 to 2018, Ron Hedenskog managed St. Timothy's meal service.  Decl. of Samantha Sondag ("Sondag Decl.") Ex. 3, Dep. of Ronald William Hedenskog ("Hedenskog Dep.") 12:1–3, ECF No. 51-3. For approximately six of those years, from 2012 to 2018, Mr. Hedenskog also served as the City's Mayor.  Hedenskog Dep. 13:4–10, 16:8–9, Def. Mot. 16, ¶ 11.  Additionally, Anthony Baron, the City's Public Works and Development Services Director, testified that he has known about St. Timothy's meal service since 2012, when he first began

---

[2] *See* https://www.codepublishing.com/OR/Brookings/#!/Brookings17/Brookings17.html (last visited Oct. 31, 2023); *see also* Def. Mot. 12, ¶ 3 (citing this link as the location of Brookings's land use code).

working for the City.  Sondag Decl. Ex. 4, Dep. of Anthony Baron ("Baron Dep.") 15:25–16:14,
ECF No. 51-4.

According to Plaintiffs, providing free meals to persons in need is "fundamental" to their
Episcopalian faith.  Decl. of the Rev. James Bernard Lindley ("Lindley Decl.") ¶ 2, ECF No. 48;
Decl. of the Rev. Diana Akiyama ("Akiyama Decl.") Ex. 3, at 1–3, ECF No. 44.  The Rev.
Lindley, who is St. Timothy's vicar, stated that "[i]t is my deeply held religious belief that
feeding the hungry, respecting the dignity of every human being, and building community are
necessary acts during our time on Earth."  Lindley Decl. ¶ 2.  He described St. Timothy's free
meals program as "acts of worship critical to my Christian faith."  *Id.* ¶ 4.  City officials testified
that, while they disagree with the Rev. Lindley's views on this question, they have no basis to
question the sincerity of his beliefs.  Hedenskog Dep. 45:15-46:11; Baron Dep. 15:8-11; Sondag
Decl. Ex. 1, Dep. of Janelle Howard ("Howard Dep.") 65:14-16, ECF No. 51-1.

     B.     *The City's Actions to Restrict St. Timothy's Meal Service*

Mayor Hedenskog testified that the number of individuals who use St. Timothy's meal
services increased significantly since 2009.  Hedenskog Dep. 15:7-14.  Concurrent with a rise in
homelessness in Brookings, the number of people St. Timothy's served per day tripled, and St.
Timothy's increased its meal service from one to at least three days per week.  Hedenskog Dep.
13:4-10, 15:7-14.  From 2015 to March 2020, St. Timothy's was serving free meals on
Saturdays, Sundays, Tuesdays, and every other Monday.  Lindley Decl. ¶ 6; Def. Mot. 15, ¶ 8.
However, from April 2020 through early 2022, due to the unavailability of other free meal
services in Brookings and in accordance with its religious beliefs to help the needy, St.
Timothy's served meals five to six times per week.  Lindley Decl. ¶ 8.

For approximately twelve years, St. Timothy's meal service operated without interference from the City. In early 2021, as part of a City-sponsored program to help people who were homeless, the City issued St. Timothy's a permit to host individuals living in cars on its property (a "Rule 2020-1 permit"). In response to the issuance of this permit, a neighbor urged the City to "reconsider allowing vagrants to continue to live at St. Timothy's church," citing concerns about "public safety and the personal expenses of homeowners living next to the church." Howard Dep. Ex. 15, at 93-113, ECF No 51-1. Another resident complained that St. Timothy's "hand[ed] out food all day and let transients hang out there and stroll over to the park to hang out." *Id.* Ex. 3, at 10.

In April 2021, neighbors presented the City with a "Petition to Remove Homeless from St. Timothy Church," which asked the City "to reconsider allowing vagrants to continue to live and congregate at St. Timothy's Church." *See id.* at 7-9. At a City Council meeting, the petition's author complained about "people just showing up in the middle of the night" engaging in "very suspicious behavior[.]" He further claimed that he had "multiple crimes committed on my [video] cameras," but that authorities had declined to prosecute. However, the only specific crimes he identified were one instance of his mail being stolen and littering. *See* Sondag Decl. Ex. 11, at 3-4.

In response to complaints about people congregating and receiving meals at St. Timothy's, the City reported St. Timothy's to various public health agencies, purportedly to ensure that St. Timothy's meal service "complies with the state's food sanitation requirements[.]" Sondag Decl. Ex. 14, Email from Dan Lawler to Erica Vaness (June 23, 2021

11:52 AM PDT).[3]  There is no evidence in the record that the City had previously raised health concerns over St. Timothy's meal service.  Nevertheless, at a June 7, 2021, City Council workshop, the City stated that St. Timothy's may be operating an unpermitted "commercial kitchen."  Howard Dep. Ex. 3, at 3.

St. Timothy's responded to these allegations by applying for and receiving a license to serve meals from the Oregon Health Authority ("OHA").  *See* Lindley Decl. ¶ 11 & Ex. 2.  This did not, however, put an end to the City's actions against St. Timothy's.  About a month later, on July 29, 2021, the City—citing the OHA license it had prompted St. Timothy's to obtain—notified St. Timothy's that it was illegally operating a "commercial kitchen" and a "restaurant" in a single-family residential district.  Howard Dep. Ex. 7; Def. Mot. 16, ¶ 12.  Again, there is no evidence in the record that the City had previously questioned whether St. Timothy's meal service was permitted under the zoning code, even though the City had been fully aware of this activity for over a decade.

On June 7, 2021, St. Timothy's Rule 2020-1 permit expired, and St. Timothy's ceased hosting people residing in vehicles on church property.  *See* Howard Dep. Ex. 3, at 1-6. Furthermore, at around the time that neighbors began complaining about trespassing and criminal activity at St. Timothy's, the church began participating in the Brookings Police Department's "Property Watch" program.  Under this program, St. Timothy's signed an agreement authorizing police officers to enter St. Timothy's without prior notice or authorization

---

[3]  The record demonstrates the pretextual nature of the City's purported "food sanitation" concerns.  Months before the City raised these concerns, City officials had discussed various code sections they believed could be used to "challenge . . . St. Tim's de facto Conditional Use Permit," including whether it was "[o]perating as a Mission" or "[o]perating a restaurant."  *See* Baron Dep. Ex. 36, at 1.

to curb nuisance issues and trespassing.  Lindley Decl. ¶ 10; *see also* Baron Dep. 38:9-16.[4]

Although it no longer allowed persons who were unhoused to sleep at St. Timothy's, it continued

to provide free meals to persons in need.

On October 25, 2021, in response to the neighbor complaints and citing police service

calls at or near St. Timothy's, *see* Def. Mot. 14, ¶ 5 & 16, ¶ 17, the City enacted an ordinance

amending the zoning code to create a new conditional permitted use for residential districts,

namely, "[b]enevolent meal services," and restricting how often such meal services could occur.

*See* Brookings Code § 17.20.040(V).  The new ordinance defines "[b]enevolent meal services"

as "a periodic food service operation that provides food to the public without charge." *Id.* §

17.08.020.  The ordinance requires organizations providing benevolent meal services to obtain

conditional use permits subject to several conditions, including that such meals may be served no

more than two days per week.  *Id.* § 17.124.050(A).  This limitation applies regardless of

whether providing "benevolent meal services" was the property's "primary use" or "in

combination with another use permitted outright or conditionally[.]"  *Id.* § 17.20.040(V).  No

such limitation applies to other conditionally permitted land uses that typically serve meals as a

secondary or incidental use of the property, including hospitals (which often have cafeterias),

country clubs, nursing homes, bed-and-breakfasts, and day care centers.  *See id.* § 17.20.040.

The ordinance effectively requires St. Timothy's to significantly reduce the number of

days it serves meals to persons in need.  Plaintiffs vociferously objected to this ordinance on

grounds that it compels them to violate their religious beliefs to feed those in need "when the

---

[4]  *See also* Brookings, Property Watch Program,
https://www.brookings.or.us/346/Property-Watch-Program (last visited Oct. 31, 2023).

**PAGE 6 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

need exists." Pls. Mot. 18-19; *see also* Akiyama Decl. Ex. 3, at 1-3.  For example, on August 2,

2021, Michael C. Dotten, the Chancellor of the Episcopal Diocese of Oregon, wrote a letter to

the City objecting to its proposal to limit when and how often the Church could offer meals,

explaining that the Church "feed[s] the poor multitudes" at "Jesus' command" and that "the poor

and elderly may not . . . be fed on the City's arbitrary 'frequency and volume' preferences," but

"must be fed when they are hungry."  Lindley Decl. Ex. 3.[5]

## IV.    ARGUMENT

### A.    *Plaintiffs' Claims Are Covered by RLUIPA*

The City argues that Plaintiffs' "substantial burden" claim is not actionable because it

does not satisfy one of RLUIPA's three prerequisites for bringing this claim.  Def. Mot. 18–21.

This argument is without merit.

RLUIPA prohibits a government from "impos[ing] or implement[ing] a land use

regulation that imposes a substantial burden on the religious exercise of a person, including a

---

[5]  The City recently proposed to amend this ordinance to permit "benevolent meal services" up to three days per week, while decreasing the number of hours such meals may be served per day.  *See* Pls.' Opp. to Def.'s Mot. Summ. J. ("Pls. Opp.") 4, ECF No. 69.  Even if enacted, this amendment would not moot Plaintiffs' RLUIPA claim because there is no guarantee that the City would not once again change its mind as soon as this litigation is over and impose some other limitation.  *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018) (holding that "voluntary cessation" does not moot a claim "if the government remains practically and legally 'free to return to [its] old ways' despite abandoning them in the ongoing litigation.'") (brackets in original) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)); *see also Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) ("Where a new statute 'is sufficiently similar to the repealed [statute] that it is permissible to say that the challenged conduct continues,' the controversy is not mooted by the change, and a federal court continues to have jurisdiction.") (quoting *Ne. Fla. Ch. of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n. 3 (1993)).  Furthermore, as Plaintiffs contend, the City's proposed three-day limitation would continue to substantially burden their religious exercise because it would still force them to turn away persons in need who are hungry.  *See* Pls. Opp. at 4 n. 5 & 20.

**PAGE 7 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
        *St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

religious assembly or institution, unless the government demonstrates that imposition of the

burden … (A) is in furtherance of a compelling governmental interest; and (B) is the least

restrictive means of furthering that compelling governmental interest."  42 U.S.C. §

2000cc(a)(1); *see Guru Nanak Sikh Soc'y v. Cnty. of Sutter*, 456 F.3d 978, 986–87 (9th Cir.

2006).  For this provision to apply, one of three conditions must be present:  first, the "program

or activity" must receive federal financial assistance, 42 U.S.C. § 2000cc(a)(2)(A); second, the

substantial burden would affect interstate commerce, *see id.* § 2000cc(a)(2)(B); or, third,

> the substantial burden is imposed in the *implementation of a land use regulation* or
> system of land use regulations, under which a government makes, or has in place
> formal or informal procedures or practices that permit the government to make,
> *individualized assessments* of the proposed uses for the property involved.

*Id.* § 2000cc(a)(2)(C) (emphasis added).[6]

The City claims that the third condition is "the only possible applicable subsection"[7] and

that it is not met here because the City did not conduct an "individualized assessment" of St.

----

[6]  These prerequisites reflect the fact that Congress enacted RLUIPA in response to *City
of Boerne v. Flores*, 521 U.S. 507 (1997), which invalidated the Religious Freedom Restoration
Act (RFRA) as applied to state and local governments on grounds that it exceeded Congress's
power under Section Five of the Fourteenth Amendment.  *Id.* at 533.  *See Guru Nanak*, 456 F.3d
at 985–86 (explaining history and basis of RLUIPA).

[7]  There is evidence of record that the City's restriction may directly affect interstate
commerce.  *See* Decl. of Heather Van Meter Ex. A, Dep. of the Rev. James Bernard Lindley
("Lindley Dep.") 76:21-77:14, ECF No. 63-1 (eliciting testimony that parishioners from the
United Methodist Church "across the state border" in California travel to Oregon once a week to
assist with St. Timothy's meal service).  In light of this evidence, the City does not explain why
restricting St. Timothy's meal service would not, as a matter of law, affect interstate
commerce—particularly given the City's characterization of this service as "commercial" in
nature.  *See Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 354 (2d Cir. 2007)
(construction of a school satisfies RLUIPA's Commerce Clause prerequisite); *Dilaura v. Ann
Arbor Charter Twp.*, 30 F. App'x 501, 510 (6th Cir. 2002) (proposed religious retreat met
interstate commerce requirements because "guests could certainly travel in interstate commerce
to attend their retreat and sleep at the house").

Timothy's property.  Def. Mot. 19-20.  Yet the City's statement that "city officials determined that St. Timothy's and other entities providing benevolent meal services in residential zones were already violating city land use ordinances," *id.* at 16, ¶ 12, is an admission that the City made an "individualized assessment" of St. Timothy's land use.  The City's determination that St. Timothy's practice of feeding persons in need was not a permitted use under the City's zoning code is precisely the sort of "individualized assessment" that RLUIPA covers.  *See Guru Nanak*, 456 F.3d at 986 ("RLUIPA applies when the government may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use.").

The City's argument that an "individualized assessment" is lacking because its code "broadly prohibited all restaurants in residential zones," Def. Mot. 20, misunderstands the term "individualized assessment" and misstates the City's zoning code.[8]  The code provisions for R-1 districts allow for single family homes and several enumerated conditional uses with obvious food service components, such as churches, hospitals, rest and nursing homes, bed and breakfasts, day care centers, and country clubs.  *See* Brookings Code § 17.20.040.  "Restaurants," however, are not expressly prohibited, and Brookings' code does not even define "restaurant."  *See* Brookings Code §§ 17.20.010—110, 17.08.180.  It is therefore far from clear that "restaurants" are prohibited in the R-1 zone.

Moreover, in St. Timothy's case, the City decided to adopt and apply a state law definition of "restaurant," *see* Def. Mot. 9-10 (citing Or. Rev. Stat. Ann. § 624.010(9)(a)), even

---

[8]  To the extent the City argues that zoning laws of general applicability are beyond RLUIPA's purview, the Ninth Circuit has squarely rejected this.  *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1066 (9th Cir. 2011) (rejecting argument that "generally applicable" zoning laws not subject to RLUIPA).

**PAGE 9 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

though that definition was taken from the state's regulatory code for the "Administration and Enforcement of Food, Drink, and Sanitation Laws Generally." *See* Or. Rev. Stat. Ann. tit. 49, ch. 616 (West 2023). The Oregon food service law definition is not, nor was it intended to be, a zoning or land use term and has nothing to do with usual zoning concerns like access, parking, or traffic. City officials nonetheless individually evaluated St. Timothy's meal service, decided that it fell within this state food service code definition, and then interpreted the Brookings zoning code's more generalized language to conclude that this activity was prohibited on St. Timothy's property. For purposes of RLUIPA, that is an "individualized assessment." *See Martin v. Houston*, 196 F. Supp. 3d 1258, 1266 (M.D. Ala. 2016) (RLUIPA's "individualized assessments prerequisite" satisfied where zoning law was enacted to restrict plaintiff's use of the property and local district attorney warned plaintiff that his ministry was a "nuisance" and threatened to evict residents served by the home); *see also City Walk – Urb. Mission Inc. v. Wakulla Cnty.*, 471 F. Supp. 3d 1268, 1281 (N.D. Fla. 2020) (RLUIPA's individualized assessment prong satisfied where county issued a "Notice of Violation and Notice of Repeat Violation" because "[i]n both notices, Defendant assessed Plaintiff's proposed use of the Property…").

Even though the City admits doing so, nothing in RLUIPA's text requires that the City actually conduct an "individualized assessment" before Plaintiffs may bring a claim. RLUIPA requires only that the City's land use regulations "*permit the government to make*, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C) (emphasis added). The City's zoning code "permits" the City to make individualized property assessments. *See* Brookings Code §§ 17.132 (authorizing variances), 17.136 (authorizing conditional use permits). And while the "substantial burden" must have been imposed in the "implementation" of a land use system that allows for individualized assessments, 42 U.S.C. §

**PAGE 10 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

2000cc(a)(2)(C), that is the case here. The City was "implementing" its land use code when it notified St. Timothy's that it could no longer provide free meal services at its church.

The Eleventh Circuit confirmed this understanding in *Konikov v. Orange County*, 410 F.3d 1317 (11th Cir. 2005). In that case, code officials repeatedly cited the plaintiff, a rabbi, for operating a "synagogue" on his property, which was a prohibited use under the zoning code. *Id.* at 1320-21. The plaintiff "never applied for a special exception to the Code" nor appealed the county's findings under state law. *Id.* at 1321. The Court of Appeals nevertheless held that plaintiff could bring a "substantial burden" claim under RLUIPA because the code's "special exception" process "provides for individualized assessments," even though the plaintiff had not availed himself of this process. *Id.* at 1323.

The City also argues that there has been no "individualized assessment" because Plaintiffs did not apply for a conditional use permit under the City's 2021 ordinance. Def. Mot. 20-21. This is without merit for two reasons. *First*, any such application would be futile and pointless given Plaintiffs' RLUIPA claims. Plaintiffs have alleged that restricting meal services to two days per week—the maximum a permit would have allowed—is a substantial burden on their religious exercise. Thus, applying for a permit is not required because this process would be "impossible or highly unlikely to yield governmental approval of the land use that claimants seek[.]" *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 981 (9th Cir. 2011).[9]

---

[9] For this reason, this case is "ripe" for adjudication. The City's ordinance limiting "benevolent meal services" to a maximum of two days per week represents the City's "definitive position on the issue" of when, and under what circumstances, Plaintiffs may distribute free meals to persons in need at their church. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985).

**PAGE 11 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

*Second*, the City's argument that Plaintiff must first apply for, and be denied, a conditional use permit reads into RLUIPA an administrative exhaustion requirement, even though it is well-established that RLUIPA's land use provisions do not require exhaustion.  *See id.* at 979 ("This circuit's district courts have likewise required finality (but not exhaustion of administrative remedies) under" RLUIPA); *United States v. City of Walnut*, No. CV-10-6774-GW, 2011 WL 12464619, at *3 (C.D. Cal. Jan. 13, 2011); *Dilaura*, 30 F. App'x at 508 (plaintiff not required to apply for conditional use permit to bring claim under RLUIPA).[10]  Requiring that plaintiffs apply for a conditional use permit to satisfy RLUIPA's "individualized assessment" prerequisite would impose a back door exhaustion requirement absent from the statute.  The Court should reject this effort.

Accordingly, the City's argument that Plaintiffs' substantial burden claims are not actionable under RLUIPA should be rejected.

---

[10]  The City cites *Foursquare Gospel* and *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006) (*see* Def. Mot. 20-21), but neither of those cases holds that a plaintiff must apply for a use permit or variance to satisfy RLUIPA's "individual assessment" prerequisite.  In *Foursquare Gospel*, the Ninth Circuit held only that "[t]he City's treatment of the Church's applications constitutes an 'individualized assessment,'" but did not hold that an actual assessment was required, let alone that the plaintiff needed to apply for zoning relief.  673 F.3d at 1066.  As for *Grace United Methodist Church*, it did not address at all whether the prerequisites for a substantial burden claim under RLUIPA were satisfied.

**PAGE 12 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

B.     The City is Not Entitled to Summary Judgment on Plaintiffs' Substantial Burden
       Claims

       1.     Plaintiffs' Distribution of Free Meals to Persons in Need Is "Religious
              Exercise" Under RLUIPA

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  Courts

have held that protected "religious exercise" includes not only services, prayers, or worship, but

also the provision of housing, shelter, and other social services when motivated by an entity's

sincerely held religious beliefs or mission.[11]  *World Outreach Conference Ctr. v. City of Chi.*,

591 F.3d 531, 535 (7th Cir. 2009) ("[T]here is no doubt that even the recreational and other

nonreligious services provided at the community center are integral to the World Outreach's

religious mission … Souls aren't saved just in church buildings.") (citations omitted); *Fifth Ave.

Presbyterian Church v. City of N.Y.*, 293 F.3d 570, 575 (2d Cir. 2002) ("[T]he Church has

demonstrated a likelihood of success in establishing that its provision of outdoor sleeping space

for the homeless effectuates a sincerely held religious belief and therefore is protected under the

Free Exercise Clause."); *Micah's Way v. City of Santa Ana*, No. 8:23-cv-00183-DOC-KES, 2023

WL 4680804, at *5 (C.D. Cal. June 8, 2023) (holding that faith-based organization's distribution

of food to those in need was "an important part of its Christian ministry" and therefore "falls

within RLUIPA's broad protection of religious exercise.") (citation and internal quotations

omitted); *First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 761 (D. Minn. 2018)

---

[11]  A religious belief is "sincerely" held if it reflects "'an honest conviction,'" and courts
should refrain from asking whether "religious beliefs are mistaken or insubstantial."  *Burwell v.
Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (quoting *Thomas v. Review Bd. of Ind.
Emp't Sec. Div.*, 450 U.S. 707, 716 (1981)).

**PAGE 13 –**  **STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
          *St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

(serving people who are homeless, needy and poor "is a form of First Lutheran's religious exercise."); *Stuart Circle Parish v. Bd. of Zoning App.*, 946 F. Supp. 1225, 1237 (E.D. Va. 1996) (under pre-RLUIPA version of RFRA, court held that providing meals to people who are homeless "constitutes the free exercise of religion" because doing so was "motivated by [plaintiffs'] religious belief").

The record is replete with evidence that Plaintiffs' provision of meals to persons in need constitutes religious exercise.  Plaintiffs have stated repeatedly that feeding people who are poor and unhoused is part of how they exercise their faith and that they "must be fed when they are hungry."  *See, e.g.*, Lindley Decl. ¶¶ 4, 9, Ex. 3; Akiyama Decl. Ex. 3, at 1–3.  The City's contention that providing "benevolent meal services" is not "required" by the Episcopalian faith (*see* Def. Mot. 11, ¶ 1), even if true, is irrelevant and foreclosed by RLUIPA's text, under which protected religious exercise need not be "compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A); *see also Johnson v. Baker*, 23 F.4th 1209, 1214-1215 (9th Cir. 2022) ("By the plain language of RLUIPA, we are forbidden from evaluating the centrality of a religious practice or belief."); *Grace United Methodist Church*, 451 F.3d at 660-61 (district court erred when it instructed jury that RLUIPA's substantial burden provision protects only those activities that are "fundamental" to plaintiff's religion.).[12]

---

[12]  The City cites a pre-RLUIPA Sixth Circuit opinion for the proposition that constructing a house of worship is not protected by the First Amendment because it was not "a fundamental tenet" of the plaintiff's religious beliefs.  Def. Mot. 22 (quoting *Lakewood, Ohio Congregation of Jehovah's Witnesses v. City of Lakewood*, 699 F.2d 303, 307 (6th Cir. 1983)). This case has clearly been superseded by RLUIPA.  *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225-26 (11th Cir. 2004) (rejecting *Lakewood* and other cases finding that "zoning decisions do not generally impose a substantial burden on religious exercise" as inconsistent with RLUIPA).

2.       *Plaintiffs Had a "Reasonable Expectation" That They Could Distribute Free Meals to Persons in Need at St. Timothy's Church*

The City argues that any substantial burden on Plaintiffs' religious exercise was "self-imposed." Def. Mot. 23-24. According to the City, because the zoning code prohibited "restaurants" in residential districts when St. Timothy's began operating its meal service in 2009, the City's decision to restrict Plaintiffs' provision of free meals to persons in need to two days per week amounts to a "self-imposed" burden. *See id.* at 20, 23-24. This argument both misstates the law and is unsupported by the evidence in the record.

The Ninth Circuit has recognized that a burden is "self-imposed" only when the plaintiff has actual advance knowledge that its proposed use would not be permitted on the property. *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 604 (9th Cir. 2022) ("New Harvest purchased a building that *it knew at the time* was subject to unique zoning restrictions," and thus "was *on notice* that the Assembly Uses Provision would prohibit it from conducting worship services on the first floor") (emphases added). This analysis is consistent with the holdings of other Courts of Appeal that "a critical function of RLUIPA's substantial burden restriction is to protect a plaintiff's *reasonable expectation* to use real property for religious purposes." *Andon, LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016) (emphasis added) (citing *Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 556-57 (4th Cir. 2013)). Thus, a plaintiff who knew that the proposed use was not permitted at the time they purchased the property cannot be said to have had a "reasonable expectation" to use the property in this manner. *See id.* (no reasonable expectation where "plaintiffs knowingly entered into a contingent lease agreement for a non-conforming property").

However, "reasonable expectation" does not mean that a land use must be expressly permitted or certain to gain approval. In *Guru Nanak*, the Ninth Circuit upheld a substantial burden claim where plaintiff sought and was denied two conditional use permits to build a Sikh temple: one in a single-family residential zone, and the second in an agricultural zone. 456 F.3d at 981-84. The Court of Appeals found that plaintiffs' religious exercise was substantially burdened even though the temple was not permitted as of right at either site. Similarly, in *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore County*, 915 F.3d 256 (4th Cir. 2019), the Fourth Circuit post-*Andon* held that a church had a "reasonable expectation" that it would be able to operate, even though it needed a variance because its parking lot violated the zoning code's setback requirements. *Id.* at 261-62. *Accord United States v. City of Troy*, 592 F. Supp. 3d 591, 610-11 (E.D. Mich. 2022) (holding that a mosque had a "reasonable expectation" that it would be able to operate despite needing setback and parking variances because, among other reasons, the city had granted similar variances for other houses of worship).

Here, there is ample evidence in the record that Plaintiffs had a "reasonable expectation" that they could distribute free meals to persons in need at St. Timothy's. *First*, St. Timothy's was operating on the property long before the zoning code was enacted, making it a "de facto conditional use." *See* Def. Mot. 12, ¶ 3. As a house of worship, St. Timothy's has been administering alms to the needy and providing food to those who are hungry in one form or another since at least 1985. Lindley Dep. 15:3-6, 82:1-14; Lindley Decl., ¶ 3; Akiyama Decl. Ex. 3. Accordingly, Plaintiffs had a reasonable expectation that they would be able to continue feeding those in need.

*Second*, the zoning code allows, as a conditional use, other businesses and facilities that commonly and typically serve meals as a secondary or ancillary use of their property. Hospitals,

for example, often have cafeterias that serve the public and prepare and serve food to patients. Country clubs often have restaurants and bars.  Nursing homes serve meals to residents in dining rooms.  Nursery schools and day care centers typically serve meals to students.  And meals are part of the title of a "bed and breakfast."  From these examples, St. Timothy's could have reasonably inferred that preparing and serving meals to persons in need—even in a "commercial" kitchen regulated by OHA—was a permissible secondary or ancillary use of the property and did not require any additional approval by the City.

*Third*, the City was fully aware of St. Timothy's meal service for over a decade. Remarkably, Brookings's Mayor managed St. Timothy's meal service for nine years, including while serving as Mayor.  Hedenskog Dep. 12:1-3, 13:4-10, 16:8-9.  Yet the City took no action against St. Timothy's during this extensive time period.  *See Micah's Way*, 2023 WL 4680804, at *5 (holding that the fact that "City waited five years to cite Micah's Way for operating without a permit they never had in the first place" supported substantial burden claim).  Indeed, no one from the City appears to have told Plaintiffs during this time that St. Timothy's meal service even potentially raised zoning concerns.  That the City's highest-ranking officials would allow, and even help to administer, a program that they knew was violating City law for over ten years defies credibility.  Either the City did not care that St. Timothy's was providing a meal service to persons in need, or the City did not, in fact, regard this as a prohibited use.  Under either scenario, the City's conduct definitively undermines its claim that Plaintiffs lacked a "reasonable

expectation" that they would be allowed to provide free meals to persons in need at St.

Timothy's.[13]

*Finally*, the City's recent decision to classify St. Timothy's as a "restaurant"—which the

City then used as its basis for declaring the meal service a prohibited use—was not based on the

City's zoning code, but rather on a state definition that was enacted as part of the State's

regulation of sanitary conditions in the preparation of food.  *See supra* at 10.  Even though this

definition indisputably does not apply to local land use decisions, the City decided, on its own, to

adopt and apply it when determining that St. Timothy's was violating the City's zoning code.

Regardless of the appropriateness of that decision,[14] it is certainly not reasonable to expect St.

Timothy's—or any house of worship—to comb through state laws that have nothing to do with

local zoning and land use decisions to see if their proposed use might fit within some other

statutory definition that the City might conceivably decide to use in a particular zoning case.

---

[13]  The City argues that, under state law, it has not waived the zoning code's purported prohibition against "restaurants" in residential districts, *see* Def. Mot. 16 n.8, but that is irrelevant to and does not govern whether Plaintiffs had a "reasonable expectation" under RLUIPA.

[14]  The state law definition of "restaurant" that the City applied to St. Timothy's broadly includes any establishment "[w]here food or drink is prepared for consumption by the public." Or. Rev. Stat. Ann. § 624.010(9)(a) (West 2023).  It may therefore also apply to other, secular conditional uses that serve meals, such as hospitals, country clubs, and bed-and-breakfasts.  The failure to apply this definition equally to secular and non-secular land uses may violate RLUIPA's "equal terms" provision.  *See* 42 U.S.C. § 2000cc(b)(1) ("No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.").  That the ordinance restricting "benevolent meal services" does not facially single out religious institutions would not necessarily defeat an "equal terms" claim, given that every "benevolent meal service" in Brookings has been operated by a house of worship.  *See Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534-35 (1993) (facially neutral ordinance violated Free Exercise clause because suppressing religious activity "was the object of the ordinance" and the ordinance did so as part of its "real operation").

**PAGE 18 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

Under no circumstances can the City's strained and unorthodox method of interpreting its code in St. Timothy's case support the City's claim that Plaintiffs' burden is "self-imposed."

   3.   *The City Has Not Demonstrated as a Matter of Law That the Burden on Plaintiffs' Religious Exercise Was Not "Substantial"*

Although RLUIPA does not define "substantial burden," this term should be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).  "A substantial burden exists where the governmental authority puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Foursquare Gospel*, 673 F.3d at 1067 (quoting *Guru Nanak*, 456 F.3d at 988 (citations and internal quotations omitted)).  This pressure must be more than mere "inconvenience."  *Id*. (citation and internal quotations omitted).  However, "a burden need not be found insuperable to be held substantial."  *Id*. at 1068 (quoting *Westchester Day Sch.*, 504 F.3d at 349).

In *First Lutheran Church*, the court held that certain restrictions imposed by a city on the church's operation of a day shelter for persons who are poor and/or homeless, including a free meals service, were a "substantial burden" under RLUIPA, even though the city's restrictions did not foreclose these activities altogether.  326 F. Supp. 3d at 761-64.  As here, the church was located in a residential area and had been the subject of neighborhood complaints.  *Id.* at 753-55.  In response, the city imposed several restrictions, one of which limited the church to serving 20 people per day, a reduction from the 50-60 people the church normally served.  *Id.* at 762.  The court found that there was "obviously demand for the services that [the church] provide[d], and that demand vastly exceeds the limit the City imposed."  *Id*.  The court therefore held that the 20 person per day restriction was a "substantial burden" on the church's religious exercise because

the church "will have to turn people away," which "undermines their mission to provide services to any many people as they can" and their "message to be welcoming to the homeless, the lonely, and the needy." *Id.* at 762.

Many of the factors that the *First Lutheran* court found to support a finding of a substantial burden also exist here. The evidence shows that the need for St. Timothy's free meal service has increased substantially over the past few years. Even assuming the City granted St. Timothy's a conditional use permit, the ordinance would reduce St. Timothy's usual provision of meals to persons in need by as much as half, from four days per week (or even as many as five or six ) to two.[15] Thus, to comply with the ordinance, St. Timothy's would likely have to turn away persons who are hungry, thus forcing them to violate their religious beliefs.[16] This is axiomatic of the "substantial pressure" by governments "on an adherent to modify his behavior and to violate his beliefs" that RLUIPA guards against. *Foursquare Gospel*, 673 F.3d at 1067 (citation and internal quotation marks omitted); *accord Stuart Circle Parish*, 946 F. Supp. at 1238-39 (rejecting argument that a zoning ordinance that did "not prevent the feeding of the homeless but merely restrict[s] the number of persons who may be fed" was not be a "substantial burden" under similar provision of RFRA).

---

[15] Even assuming the City permitted food service three times a week (*see supra* note 5), this would still force Plaintiffs to turn hungry people away, as St. Timothy's serves meals four times a week (every other week), and has served meals five or six times per week when the demand so required. Lindley Decl. ¶¶ 6, 8.

[16] The City itself provides no services to people who are homeless. Howard Dep. 27:5-9.

**PAGE 20 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

4.    *The City Has Not Demonstrated as a Matter of Law That Other Sites Were Readily Available for Plaintiffs' Distribution of Free Meals to Persons in Need*

In its Motion, the City suggests that Plaintiffs were not substantially burdened because there might be other locations where Plaintiffs could conceivably feed those in need.  *See* Def. Mot. 11-12.  The City's speculative argument, however, is unsupported by the facts or law and should be rejected.

In *New Harvest Christian Fellowship*, the Ninth Circuit rejected a "bright-line rule" that "the existence of feasible alternative locations for a church to conduct its worship forecloses a finding of substantial burden."  29 F.4th at 602.  Although the "availability of alternative locations" is "plainly relevant" to the court's substantial burden inquiry, it is not determinative because "other circumstances may create a substantial burden even where an alternative location is technically available."  *Id.*

For an alternative site to be "available," it is not enough to show that the proposed use would be permitted in other zoning districts or parts of the city.  Rather, there must be other parcels that are available for occupancy and can accommodate the proposed religious use.  *See Foursquare Gospel*, 673 F.3d at 1067-68 (reversing district court's entry of summary judgment for city because there were no available sites for sale that would meet the church's needs).  Any asserted alternative location must be "quick, reliable, and financially feasible[.]"  *Westchester Day Sch.*, 504 F.3d at 352.  "[E]ven though other suitable properties might be available, ... the 'delay, uncertainty, and expense' of selling the current property and finding a new one are themselves burdensome."  *Bethel World Outreach Ministries*, 706 F.3d at 557-58 (quoting *Saints Constantine & Helen Greek Orthodox Church v. City of New Berlin*, 396 F.3d 895, 899-901 (7th Cir. 2005)).

There is evidence in the record that Plaintiffs attempted to locate another suitable, affordable location for its meal services and were unable to do so. The Rev. Lindley testified that St. Timothy's former meal service manager—Mayor Hedenskog—attempted to locate an off-site location in the "Brookings-Harbor area" and told him "that there were no cost-effective options available in the community." He described Mr. Hedenskog's efforts as "diligent." Lindley Dep. 112:23—113:18; *see also* Sondag Decl. Ex. 18, Aug. 30, 2021 Mtg. Minutes at 59:17-60:1, ECF No. 51-18 (Mayor Hedenskog and the Rev. Lindley agreed that they searched for an alternative location for years and did not identify a single location). The City, for its part, has not identified a specific available parcel or property that it contends would be a "quick, reliable, and financially feasible" alternative for St. Timothy's meal service. At a minimum, this evidence is sufficient to defeat the City's motion for summary judgment on this question. *See Foursquare Gospel*, 673 F.3d at 1068 (testimony that no suitable location existed for church was "certainly more than the scintilla of evidence required to defeat summary judgment.").[17]

---

[17] The City relies on *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004), but that case is distinguishable. In that case, a college sought to re-zone a hospital for religious educational purposes. The city denied the application not on its merits, but because it was incomplete. *Id.* at 1028-29. The Court of Appeals held that the requirement to submit a complete application was, in and of itself, not a "substantial burden" on religious exercise, given that "it is not at all apparent that [the college's] re-zoning application will be denied." *Id.* at 1035. Unlike here, the challenged ordinance "imposes no restriction whatsoever on the College's religious exercise[.]" *Id.* Although the Court of Appeals also stated in *dicta* that "there is no evidence in the record demonstrating that [the] College was precluded from using other sites within the city," it also found no evidence that the city would not have required a similarly complete zoning application for a different property. *Id.* The City also cites *Civil Liberties for Urban Believers (C.L.U.B.) v. City of Chi.*, 342 F.3d 752 (7th Cir. 2003), but in *Foursquare Gospel*, the Ninth Circuit specifically rejected *C.L.U.B.*'s alternative location analysis, noting that the case imposed a "higher" substantial burden standard which "has been rejected in this circuit." *See Foursquare Gospel*, 673 F.3d at 1068-69.

Another relevant factor that the Court should consider is that St. Timothy's current site already has appropriate kitchen facilities to prepare and serve meals to large numbers of people. These facilities have been inspected and approved by OHA, as the City itself required.  *See* Lindley Dep. 120:24-121:9.  Thus, any "available" alternative facility would have to have similar facilities that could also pass OHA inspection.  The record contains no evidence as to whether such a property is available, and the church has told the City that it "does not have the means to move the feeding program to a permitted restaurant site."  Lindley Decl. Ex. 3 at 2.

      C.    *The City Has Not Demonstrated as a Matter of Law That the Ordinance Furthers a Compelling Governmental Interest, Nor That It Employed the Least Restrictive Means of Furthering That Interest*

         1.    *Legal Standard*

Under RLUIPA, once Plaintiffs have shown a substantial burden on their religious exercise, the burden shifts to the City to demonstrate that this burden "(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1); *New Harvest*, 29 F.4th at 601.  As with the First Amendment, RLUIPA subjects substantial burdens on religious activity that arise from land use regulations to a strict scrutiny analysis.  *See Guru Nanak*, 456 F.3d at 993; *accord Mast v. Fillmore Cnty.*, 141 S. Ct. 2430, 2432 (2021) (Gorsuch, J., concurring) (RLUIPA "requires the application of 'strict scrutiny.'").

A "compelling interest" is an "interest of the highest order."  *Foursquare Gospel*, 673 F.3d at 1071 (quoting *Grace Church of N. Cnty. v. City of San Diego*, 555 F. Supp. 2d 1126, 1140 (S.D. Cal. 2008) (citation omitted)).  Merely showing that an interest is "important" as a general matter is not sufficient; rather, the defendant must show "a compelling interest in imposing the burden on religious exercise in the particular case at hand, not a compelling interest

in general." *Grace Church*, 555 F. Supp. 2d at 1140 (quoting *Westchester Day Sch.*, 504 F.3d at

353); *see also Fulton v. City of Phila.*, 141 S. Ct. 1868, 1881 (2021) ("The City states these

objectives at a high level of generality, but the First Amendment demands a more precise

analysis."). The City must additionally demonstrate that its restrictions on religious exercise are

"narrowly tailored to accomplish" this compelling interest. *Guru Nanak*, 456 F.3d at 992; *see

also Fulton*, 141 S. Ct. at 1881 (city failed to show why granting an exception to a policy for

religious exercise would put the city's goals at risk).

> 2. *The Ordinance Does Not Further the City's Purported Governmental
> Interest of Promoting "Public Safety and Welfare"*

The City cannot demonstrate that restricting St. Timothy's meal service furthers the

City's generalized, overly vague interest in promoting "public safety and welfare." Def. Mot.

24. The City's primary evidence is a summary list of 154 police and service dispatch calls to St.

Timothy's during 2020. Def. Mot. 13-14, ¶ 5; Van Meter Decl. Ex. H. This evidence does not

and cannot satisfy the City's heavy burden of demonstrating that a two-day restriction on St.

Timothy's meal service furthers "public safety and welfare." *First*, this exhibit indicates only to

which address the responding officer was dispatched, not where the underlying incident

occurred. In fact, for those incidents indicating more serious allegations, many list an alternative

location where the actual incident appears to have occurred. *See*, *e.g.*, Van Meter Decl. Ex. H.,

at 2 ("assault" listed as "Winchuck River Road, Harbor" & "suicidal subject" listed at "15896 N

Wenborne Road") (capitalization altered). Furthermore, many of the calls are for non-criminal

activity such as medical attention or unspecified "information." *Id.* (capitalization altered).

*Second*, for incidents that did arise at St. Timothy's, the summary data do not indicate

when the calls occurred. Accordingly, the City presents no evidence that any of these calls

occurred during St. Timothy's meal service.  St. Timothy's typically serves meals from noon to 1:00 pm on weekdays and 3:00 pm to 4:00 pm on Sundays.  Lindley Decl. ¶ 7.  But the calls data is silent as to whether the incidents occurred during these times or at some other time.  St. Timothy's meal service cannot fairly or reasonably be held responsible for police calls that happened at other times of the day.  In short, the calls data cannot satisfy the City's heavy burden of showing that there is a significant public safety problem at St. Timothy's or that restricting the church's distribution of meals to persons in need would solve this problem.[18]

In any event, it is undisputed that St. Timothy's itself did not cause these alleged petty offenses or incidents, regardless of whether they occurred at St. Timothy's or during the meals service.  The City has not shown that the incidents in the neighborhood around St. Timothy's, which includes one of the City's largest public parks, can fairly be attributed to St. Timothy's.[19] The issues with noise, aesthetics, and crime that prompted the ordinance are byproducts of homelessness and poverty that would persist in Brookings regardless of St. Timothy's meal

---

[18]  The City's counsel's declaration states that the underlying dispatch and police reports describing these calls in more detail are "available upon request" but have not been produced to the Court due to confidentiality concerns.  Van Meter Decl. ¶ 9.  The United States has reviewed these reports and avers that, were the Court to accept the City's invitation and review these documents, it would find that (1) many of the calls for service involved alleged incidents that occurred off St. Timothy's property, including in Azalea Park; and (2) the overwhelming majority of these incidents did not occur during St. Timothy's meals service.  *Accord* Pls. Opp. at 8 (stating that only seven calls occurred during times when St. Timothy's served meals); Decl. of Samantha Sondag in Supp. of Pls.' Opp. to Def.'s Mot. Summ. J. ("Sondag Opp. Decl.") ¶ 13 (summarizing and describing calls).

[19]  Indeed, at least one planning commissioner who worked on the ordinance admitted that he simply co-mingled activity at the nearby park and St. Timothy's.  Sondag Opp. Decl. Ex. 7, Brookings Planning Comm'n Publ. Hr'g Tr. 19:6-12 (Oct. 5, 2021) ("When you can say that 30 feet away from the church is a park and anybody is free to walk into that park.  And I'm down there almost every day, and I see just as many people, if not more, in the park … So I really have trouble distinguishing between people using the park and people using St. Tim's food supply.").

**PAGE 25 –**    **STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

service—and indeed may even be made worse if St. Timothy's were forced to curtail its meal service.

In *First Lutheran*, the city asserted a nearly identical interest as here, namely, to "reduc[e] petty offenses allegedly committed by guests." 326 F. Supp. 3d at 763. The court held that limiting the number of people the church could serve did not further this interest because the "offenses are not caused by [plaintiffs]" but "are the understandable effects of homelessness and poverty, not the organizations that serve people who are homeless or poor." *Id.* at 763-64. The court noted that if the church "closed its doors tomorrow, its guests who are homeless or poor would still be homeless or poor, and the City would continue to experience the effects of homelessness and poverty." *Id.* at 764. And even assuming that all of the alleged offenses were committed by the church's guests, a point the court noted was "vigorously disput[ed]", the court held that the twenty-person limit would not mitigate these offenses because it would simply push people who are homeless "into the nearby neighborhood (thereby possibly increasing the incidence of such petty offenses in the neighborhood)" or force them into "other areas of the City . . . thereby increasing the incidence of such petty offenses elsewhere in St. Paul[.]" *Id.* "Thus," the court concluded, "the twenty-person limit does not further a compelling governmental interest." *Id.*

Likewise, the City's ordinance in this case does not further the City's asserted interests in promoting public welfare and safety because forcing St. Timothy's to turn away people who are hungry does not address the underlying incidences of petty offenses in Brookings. As the court in *First Lutheran* recognized, such action may only cause the subjects of the complaints to go to other neighborhoods within the city.

Finally, the record shows that even City officials themselves stated that the number of days on which the ordinance restricted meals service to was unrelated to public safety. At an October 5, 2021 Planning Commission meeting considering this restriction, commissioners frequently recognized that the two-day limitation was not necessary to the City's interests behind the ordinance. *See* Sondag Opp. Decl. Ex. 7.[20]

Accordingly, the temporal restriction on St. Timothy's meal service imposed by the City does not further the City's asserted governmental interests.

> 3.    *Restricting Meal Distribution to the Needy to Two Days Per Week Is Not the Least Restrictive Means of Protecting the City's Identified Interests*

Even if the City could demonstrate that reducing St. Timothy's meals service to two days per week furthered "public safety"—and it cannot—it would still have to show that this restriction "was the least restrictive means available to further that compelling interest." *Al Saud v. Days*, 50 F.4th 705, 713 (9th Cir. 2022) (citing *Walker v. Beard*, 789 F.3d 1125, 1137 (9th Cir. 2015)); 42 U.S.C. § 2000cc(a)(1). Under this analysis, the City must show that it "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Al Saud*, 50 F.4th at 713 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005)). This evidentiary burden is "'exceptionally demanding,'" and "requires the government to 'sho[w] that it lacks other means of achieving its desired goals without imposing

---

[20]  *See id.* at 20:24-21:1 ("My issue is not two days a week. The point of this is not two days a week. So if we want to go five, then let's let St. Timothy's do five. That's fine. But there should also be restrictions in regards to how they can advertise for this, how they can operate a commercial kitchen within their areas."), 21:9-11 ("So if we're going to bring this to a head, two days, five days, makes no difference."), 22:2-4 (recognizing that the primary reason for the ordinance was to establish a conditional use for meal services and that "it has nothing to do with the days").

**PAGE 27 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL

a substantial burden on the exercise of religion by the objecting part[y].'" *Holt v. Hobbs*, 135 S.

Ct. 853, 864 (2015) (brackets in original) (quoting *Hobby Lobby*, 573 U.S. at 728). Stated

another way, "so long as the government can achieve its interests in a manner that does not

burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881.

The City makes virtually no attempt to show that its meals restriction is "narrowly

tailored" or that it employed the least restrictive means of burdening St. Timothy's religious

exercise. *See Guru Nanak*, 456 F.3d at 992 (noting that "[t]he County effectively concedes that

it has no compelling interest, much less that the restrictions are narrowly tailored to accomplish

such interest" because "[t]he County presents no such argument in its briefs."). It does not

identify a single alternative that it considered to the ordinance's two-day limitation on St.

Timothy's meal service. *See* Def. Mot. 25.[21] The City did not consider, for example, increasing

the presence of community resource officers or other law enforcement officers in the area even

though evidence in the record shows that such a presence was a deterrent for criminal activity.

Lindley Dep. 156:10-158:3; 162:15-24; 163:7-13 ("I haven't had to make those phone calls [for

police service] nearly as much recently over the last year or so because of the community

resource officer being present.") The City could have considered requiring routine check-ins

with law enforcement officers and St. Timothy's. *See First Lutheran*, 326 F. Supp. 3d at 764

---

[21] Perhaps aware that it cannot meet this test, the City attempts to sidestep around strict
scrutiny by claiming that the ordinance *increased*, rather than reduced, the number of days St.
Timothy's was allowed to serve meals, *i.e.*, from none to two. *Id.* But as described above, this
claim rests entirely on the false premise that the City was restricting churches from distributing
free meals to persons in need in residential districts, when in fact it permitted this activity for
over a decade. Furthermore, the City's determination that its code prohibited these meals is
nothing more than a post-hoc, pretextual justification of its actions based on an unsupported and
novel reading of its zoning code. *See supra* at 2-3, 17-18.

(considering, but not deciding, whether a homeless shelter's suggestion of a more robust police presence and community policing would be a less restrictive means of serving the governmental interest in reducing crime in the area).

The City's failure to consider less restrictive alternatives is even more striking given St. Timothy's history of cooperating with the City on issues including crime reduction.  St. Timothy's voluntarily participates in the Police Department's Property Watch Program, under which it partners with community resource officers, instituted a curfew, and allows police officers to expel trespassing individuals from their property.  There is no evidence to suggest that St. Timothy's would not have been willing to work with the City on developing and adhering to conditions that were more narrowly tailored to reducing any identified negative impacts on the surrounding neighborhood.

V.    CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court

consider the above views in deciding the parties' summary judgment motions and deny the

City's motion.


Dated:  November 21, 2023

RESPECTFULLY SUBMITTED,

KELLY ZUSMAN                                           KRISTEN CLARKE
First Assistant United States Attorney        Assistant Attorney General

s/ Michael Jeter                                          s/ Max Lapertosa
MICHAEL JETER                                      CARRIE PAGNUCCO
Assistant United States Attorney            Chief
1000 SW Third Avenue                          NOAH SACKS
Suite 600                                                 MAX LAPERTOSA
Portland, OR  97204                              Trial Attorneys
Tel: (503) 727-1064                               Housing and Civil Enforcement Section
                                                             Civil Rights Division
                                                             U.S. Department of Justice
                                                             950 Pennsylvania Avenue NW—4CON
                                                             Washington, DC  20530
                                                             Tel: (202) 598-9726
                                                             Fax: (202) 514-1116
                                                             E-mail:  Max.Lapertosa@usdoj.gov


**PAGE 30 –    STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
*St. Timothy's Church v. City of Brookings*, 1:22-cv-00156-CL