**Amy Edwards**, OSB No. 012492
amy.edwards@stoel.com
**Samantha K. Sondag**, OSB No. 154244
samantha.sondag@stoel.com
**Rachelle D. Collins**, OSB No. 214059
rachelle.collins@stoel.com
Stoel Rives LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380

**Walter Fonseca**, OSB No. 136349
wfonseca@ojrc.info
**Franz Bruggemeier**, OSB No. 163533
fbruggemeier@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: (503) 944-2270

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **ST. TIMOTHY'S EPISCOPAL CHURCH**, by and through **THE DIOCESE OF OREGON**, DBA **THE EPISCOPAL DIOCESE OF OREGON**, an Oregon non-profit corporation, and **REVEREND JAMES BERNARD LINDLEY**, vicar of St. Timothy's Episcopal Church,<br><br>              Plaintiffs,<br><br>    v.<br><br>**CITY OF BROOKINGS**, an Oregon municipal government,<br><br>              Defendant. | Case No. 1:22-cv-00156-CL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I. INTRODUCTION ............................................................................................................ 1

II. STATEMENT OF FACTS .............................................................................................. 2

      A.    The City Adopted the Ordinance Knowing That Plaintiffs Had Been
           Serving Four to Seven Days Per Week and That Plaintiffs' Religion Calls
           Them to Feed the Hungry When They Are Hungry. .............................................. 2

      B.    The City Defended the Ordinance in Litigation for Nearly Two Years
           Knowing That St. Timothy's Was Serving Meals Up to Four Days Per
           Week as Community Need Demanded. .................................................................. 3

      C.    Plaintiffs' Motion for Summary Judgment Affirms, Again, That Plaintiffs'
           Religious Belief in Feeding the Hungry Is Not Served by an Arbitrary
           Day-Per-Week Restriction. .................................................................................. 5

      D.    The City Purports to Revise the Ordinance to Limit "Benevolent Meals" to
           Three Days Per Week, Rather Than Two, to Serve Its Litigation Strategy. .......... 6

III. LEGAL STANDARD ................................................................................................... 9

IV. ARGUMENT .............................................................................................................. 11

      A.    The Case Is Not Moot: The Issues Presented Are Live and the Parties
           Have a Cognizable Interest in the Outcome. ...................................................... 11

      B.    The Case Is Not Moot: The Amended Ordinance Simply Disadvantages
           Plaintiffs to a Lesser Degree. .............................................................................. 13

      C.    The Case Is Not Moot: The City's Self-Serving Amendment Made for the
           Purpose of Litigation Underscores the Likelihood That Wrongful Behavior
           Will Persist. ....................................................................................................... 15

V. CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013)................................................................................................17

*Brooke v. Rihh LP*,
   No. 19-CV-06852-SI, 2020 WL 788889 (N.D. Cal. Feb. 18, 2020) ........................9

*Citizens for Responsible Gov't State Political Action Comm. v. Davidson*,
   236 F.3d 1174 (10th Cir. 2000) (quoting *Ne. Fla. Ch. of Associated Gen.
   Contractors of Am.*, 508 U.S. at 662 & n.3))...........................................................13

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982)................................................................................................15

*Clark v. City of Lakewood*,
   259 F.3d 996 (9th Cir. 2001), *as amended* (Aug. 15. 2001).................................10

*Cuviello v. City of Vallejo*,
   944 F.3d 816 (9th Cir. 2019) ........................................................................13, 14, 15

*Fikre v. F.B.I.*,
   904 F.3d 1033 (9th Cir. 2018) .........................................................................16, 18

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
   484 U.S. 49 (1987)....................................................................................10, 15, 16

*Idaho Rivers United v. Hudson*,
   173 F. Supp. 3d 1027 (D. Idaho 2016) ...................................................................10

*Nat. Res. Def. Council v. Cnty. of Los Angeles*,
   840 F.3d 1098 (9th Cir. 2016) ...............................................................................10

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,
   Fla.*,
   508 U.S. 656 (1993)....................................................................................13, 14, 15

*Nw. Env't Def. Ctr. v. Gordon*,
   849 F.2d 1241 (9th Cir. 1988) ...............................................................................10

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
   551 U.S. 701 (2007)................................................................................................17

*Safe Air For Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .................................................................10

*Speech First, Inc. v. Schlissel*,
    939 F.3d 756 (6th Cir. 2019) ...................................................................16

*Super Tire Eng'g Co. v. McCorkle*,
    416 U.S. 115 (1974) ................................................................................10

*Tandon v. Newsom*,
    593 U.S. 61 (2021)............................................................................16, 18

*Terenkian v. Republic of Iraq*,
    694 F.3d 1122 (9th Cir. 2012) .................................................................10

*Wall v. Wade*,
    741 F.3d 492 (4th Cir. 2014) ...................................................................16

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ...................................................................9

**Statutes**

Brookings Municipal Code § 17.84.050 .............................................................11, 16

Ordinance 21-O-795 ................................................................................................1

Ordinance 23-O-809 ................................................................................................6

Ordinance 21-O-795 ................................................................................................5

ORS 197.610(1) .....................................................................................................12

ORS 221.330...........................................................................................................16

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..............................................................9

**Constitutional Provisions**

Brookings Charter § 31(1) ....................................................................................11

## I.    INTRODUCTION

Since the City of Brookings ("City") began to consider limiting the ability of Brookings churches to serve the hungry more than two years ago, Plaintiffs have consistently informed the City, and the City has known, that: (1) St. Timothy's Episcopal Church ("St. Timothy's") offers meals more than two days per week, and has at all relevant times; and (2) Plaintiffs' religion calls them to feed the hungry when they need to be fed.  Plaintiffs repeated these refrains during 2021 City Council meetings in which regulation of "benevolent meals" was discussed, in multiple letters to the City requesting that it reconsider its inhumane and unlawful action, in the Complaint that Plaintiffs filed on January 28, 2022, in depositions conducted by the City, and in summary judgment briefing filed in October and November 2023.

Now, facing the prospect of a judgment against it, the City has decided to amend Ordinance 21-O-795 ("Ordinance") so that churches may feed the hungry up to ***three days*** per week, ***two hours*** per day, rather than up to ***two days*** per week, ***three hours*** per day.  The City's poorly considered effort to bolster its litigation position at the eleventh hour rings hollow.  As a factual matter, the case is not moot for at least two reasons: first, Plaintiffs have consistently asserted that the City's arbitrary limitation of its ability to minister to its community—whether two or three days per week—is a violation of their rights to religious exercise and free expression.  Second, it is undisputed that "St. Timothy's benevolent meal service currently serves [meals] . . . three to ***four times per week***."  City's Motion for Summary Judgment, Dkt. 54 ("City MSJ") at 15 (emphasis added).  As a matter of law, the case also is not moot because courts do not permit parties to game the legal system with self-serving voluntary cessation.

The issues presented in Plaintiffs' Complaint are very much live and the parties have a cognizable interest in the outcome of this ligation.  The Court can grant effectual relief by (1) enjoining enforcement of an ordinance that restricts the frequency and duration of Plaintiffs'

feeding ministry, and (2) declaring the City's action unlawful.  The City's Motion to Dismiss

("MTD") should be denied.

## II.  STATEMENT OF FACTS

**A.    The City Adopted the Ordinance Knowing That Plaintiffs Had Been Serving Four to Seven Days Per Week and That Plaintiffs' Religion Calls Them to Feed the Hungry When They Are Hungry.**

On October 25, 2021, the Brookings City Council voted unanimously to adopt the

Ordinance.  Complaint, Dkt. 1 ("Compl.") ¶ 46; Plaintiffs' Motion for Summary Judgment,

Dkt. 43 ("Plfs' MSJ") at 12.   The Ordinance restricted service of meals without charge in

residential neighborhoods to no more than three hours per day, two days per week.  MTD at 2.

Before that Council vote, Plaintiffs repeatedly advised the City that restricting St. Timothy's

ability to feed the hungry and minister to the poor violated their religious beliefs.  A non-

exhaustive list of Plaintiffs' efforts to educate the City follow:

1.    **August 2, 2021:** After the City's Public Works Director sent letters to St.

Timothy's and all other Brookings churches advising that they should limit or relocate their

feeding ministries—or, as the City had started calling them, "commercial kitchens"—Diocese

Chancellor Michael Dotten explained that feeding is a sacrificial act for Christians, and the

City's contemplated restriction was unlawful: "the poor and elderly may not 'potentially' be fed

on the City's arbitrary 'frequency and volume' preferences.  ***They, and all of them, must be fed***

***when they are hungry***."  *See* Declaration of Amy Edwards in Support of Plaintiffs' Opposition

to Motion to Dismiss ("Edwards Decl.") Exs. A, B (emphasis added).

2.    **August 30, 2021:** During the first City Council meeting in which the Ordinance

was presented (*see, e.g.*, Compl. Ex. 3), Fr. Bernie advised the Council that he considers serving

the hungry a sacrificial act, that St. Timothy's was serving meals "***five days a week***," and that he

disagreed that the City could "tell [the] church that it can only administer sacraments on a

particular day when **it has administered sacraments on seven days a week for many, many years**." Declaration of Heather Van Meter in Support of City's Motion for Summary Judgment, Dkt. 55, Ex. E (Tr. 33:13-16, 36:7-11).

3.        **October 5, 2021:** At a City Planning Commission meeting, Fr. Bernie explained that **St. Timothy's was serving meals "five days" per week, had been serving "six days" per week**, and that the proposed Ordinance failed to accommodate **the church's calling to "feed people when they're hungry**." *Id.*, *see also* Edwards Decl. Ex. C (Tr. 13:17-14;7, 16:17-19 (emphases added)).  In advance of the October 5 meeting, the Diocese also wrote the City and advised that the Ordinance infringed on St. Timothy's' right to religious exercise by, among other things, "depriv[ing] God's people from participating in the Body of Christ through denying them food."  Edwards Decl. Ex. D.

The City thus incorrectly states that "[t]here is no dispute that the terms of the ordinance, specifically the hours and number of days and timeframe, were based on not only meeting but exceeding the requests of existing benevolent meal service providers that contributed toward discussions at the time the ordinance was being considered."  MTD at 2.

**B.    The City Defended the Ordinance in Litigation for Nearly Two Years Knowing That St. Timothy's Was Serving Meals Up to Four Days Per Week as Community Need Demanded.**

St. Timothy's filed the instant litigation on January 28, 2022, after the City rejected Plaintiffs' repeated requests that it not adopt the Ordinance.  The Complaint stated that in early 2020, St. Timothy's was offering meals three to four times per week, and that during the COVID-19 pandemic the church served six days per week.  Compl. ¶¶ 20, 23.  Plaintiffs explained that increasing service to meet community need was "consistent with [Plaintiffs'] core religious beliefs."  *Id.* ¶ 23.  They explained that as of the date of filing, community need had called St. Timothy's to "serve[] free lunchtime meals four days per week."  *Id.* ¶ 48.  Plaintiffs

advised that "[t]he Methodist Church has and currently does use St. Timothy's space to provide its meals." *Id.* ¶ 21 n.1. They explained that "St. Timothy's will not agree to limit its meal service, which is a critical expression of congregants' Christian faith, to comply with the City's targeted restrictions." Compl. ¶ 7. The City reviewed and answered the Complaint, and proceeded to defend the Ordinance.

When the City deposed Fr. Bernie on April 12, 2023, it was again apprised of the fact that St. Timothy's was offering no-charge meals on its property up to four days per week: on Sunday, Monday, Tuesday, and every other Saturday. Edwards Decl. Ex. E. Father Bernie also confirmed that volunteers from the United Methodist Church served meals on Mondays, using ingredients provided by St. Timothy's. *Id.* at 76:21-77:18. With this knowledge, the City continued to defend the Ordinance.

Two days after deposing Fr. Bernie, the City served St. Timothy's with a Notice of Abatement for "operating a Benevolent Meal Service without a conditional use permit in addition to a variety of other social services." *Id.*, Ex. F at 46-49. In electing to stand by this Notice of Abatement, the City reviewed and relied on Fr. Bernie's deposition transcript (*id.* at 36-45), the same transcript in which Father Bernie reiterates that St. Timothy's offers no-charge meals on its property three to four days per week, with Methodist volunteers participating on Monday. With this knowledge, the City continued to defend the Ordinance.

In its October 6, 2023, Motion for Summary Judgment (Dkt. 54, City MSJ), the City stated that it was an "***undisputed material fact***" that "St. Timothy's benevolent meal service currently serves between 35 and 68 benevolent meals per sitting, ***three to four times per week*** . . . ." City MSJ at 15 (emphasis added). With this knowledge, the City asked the Court to dismiss Plaintiffs' claims and uphold the Ordinance as written.

**C.    Plaintiffs' Motion for Summary Judgment Affirms, *Again*, That Plaintiffs' Religious Belief in Feeding the Hungry Is Not Served by an Arbitrary Day-Per-Week Restriction.**

Like the City's Motion for Summary Judgment, Plaintiffs' Motion for Summary Judgment also cited evidence demonstrating that St. Timothy's was serving and had long served meals three to four days per week.  *See, e.g.*, Plfs' MSJ at 4-6, Declaration of Rev. James Bernard Lindley in Support of Plfs' MSJ, Dkt. 48 ("Lindley MSJ Decl.") ¶ 8.  The motion also noted how Plaintiffs had "[h]eed[ed] Christian scripture" and responded to community need by "increasing its lunch service . . . to five to six times per week" during the COVID-19 pandemic.  *See, e.g.*, Plfs' MSJ at 4-6.

Plaintiffs further argued that, after the Ordinance was adopted, "Plaintiffs could not sign a CUP application agreeing to limit their feeding ministry while also adhering to their sincerely held religious belief to feed the hungry and care for those in need."  *Id.* at 13.  Plaintiffs provided multiple citations to deposition testimony and scripture explaining how feeding the hungry is a core religious belief for Plaintiffs.  *Id.* at 2-5.  None of those citations state that it is Plaintiffs' religious belief that the hungry should be fed up to three days per week at their church or every day at a theoretical alternative location in a commercial zone.

The City's claim that Plaintiffs asserted in their Motion for Summary Judgment that "their objection is based on the fact that Ordinance #21-O-795 only allows meal services two times per week" is demonstrably incorrect.  MTD at 3-4.  The City's reliance on a single sentence in the introduction that *describes the language of the Ordinance as it existed as of the date of the filing* is transparent cherry picking at best—and a misrepresentation to the Court at worst.  MTD at 4 (citing Plfs' MSJ at 1-2).

**D.    The City Purports to Revise the Ordinance to Limit "Benevolent Meals" to Three Days Per Week, Rather Than Two, to Serve Its Litigation Strategy.**

On November 7, 2023, the City held a Planning Commission meeting in which City staff "propos[ed] a revision to amend the number of days per week that benevolent meal services are allowed from two days to three days per week and changing the hours benevolent meal services shall last from no more than three hours per day to no more than two hours per day." Edwards Decl. Ex. G at 12. The stated reason for the change was the one the City now advances in its Motion to Dismiss—the incorrect assertion that St. Timothy's had "express[ed] desire that the existing ordinance allow them to provide meals on their existing schedule, which is three days per week (their objection until now was to any permit requirement)." *Id.*[1] Fr. Bernie advised the City of its mischaracterization of Plaintiffs' position that same day:

> I want to be clear that neither I nor my church, St. Timothy's Episcopal Church, has requested a change to the benevolent meal service ordinance. We continue to maintain that the ordinance is unlawful regardless of whether it limits meal service to two days a week or three.

Declaration of Heather Van Meter in Support of MTD, Dkt. 76 ("Van Meter MTD Decl.") Ex. W at 7; *see also* Declaration of James Lindley in Support of Plaintiffs' Opposition to City MSJ (Dkt. 69 ("Plfs' MSJ Opp.")), Dkt. 70 ("Lindley Opp. Decl.") ¶ 2, Ex. 1. The Planning Commission voted to approve the revision regardless. Van Meter MTD Decl. Ex. W.

Just six days later, on November 13, 2023—in violation of the City's own notice provisions—the City Council considered the revision, now titled "Ordinance 23-O-809" (the "Amended Ordinance"). Van Meter MTD Decl. Ex. W. The rushed process allowed the City to file this Motion to Dismiss before the conclusion of summary judgment briefing. Counsel for

---

[1] The Planning Commission Staff Report also incorrectly stated that "the change will allow benevolent meal providers to provide meals every day of the week." *Id.* In fact, even under the present schedule, there will be days without a "benevolent meal." *See* MTD at 4 (chart showing days-of-week meals).

Plaintiffs advised the City of its procedural violation the morning of November 13, 2023, noting their concern that the lack of "proper notice . . . may impact the ability of interested members of the community to participate."  Edwards Decl., Ex. H.  The City proceeded with the November 13 evening meeting as planned.[2]  MTD at 4; Van Meter MTD Decl. Ex. W.

The City Council agenda regarding the Amended Ordinance contained the same falsehood as the Planning Commission Agenda: that "[o]ne unpermitted benevolent meal provider ha[d] expressed that the existing ordinance doesn't allow them enough days to provide meals on their existing schedule, which is three days per week."  Van Meter MTD Decl. Ex. W at 3.  Before the Council meeting, Father Bernie submitted a letter in which he *again* corrected the misstatement.  Lindley Opp. Decl. ¶ 3, Ex. 2.  This letter also repeated the same message that Plaintiffs had communicated to the City since it first began considering the Ordinance:

> [I]t is our sincerely and deeply held religious belief that we must feed the hungry when they are hungry and minister to the needy when a need exists.
>
> Those needs do not arise on pre-cleared schedules. If a stranger comes to the door of my church when I am there and he is hungry, I will offer him food if I can. That is simply what Christ commands me to do. By the same token, if there is unmet need in the community, we will endeavor to address it. That is precisely what happened during the COVID-19 pandemic. When community need increased, our faith called us to respond, including by serving meals six days per week for a period of time. If the same thing happened next week, our faith would call us to do that again.

*Id.*

The City Council nonetheless voted in favor of the Amended Ordinance.  Van Meter MTD Decl. Ex. W.  Had there been any doubt as to which "unpermitted benevolent meal

---

[2] Apparently recognizing that it failed to follow proper procedures for amending the Ordinance on November 13, the City Council amended the agenda for its December 11, 2023, City Council meeting at 4:49 p.m. on December 11 to include a vote to "ratify" the Amended Ordinance.  Edwards Decl. Ex. I.

provider" the Agenda referred, City staff clarified at the meeting, explaining that the revision was motivated by Plaintiffs' "attorney's summary judgment." Declaration of Samantha K. Sondag in Support of Plfs' MSJ Opp., Dkt. 71 ("Sondag Opp. Decl.") ¶ 5.

The City filed its Opposition to Plaintiffs' Motion for Summary Judgment four days later, on November 17, 2023. Dkt. 67 ("Response" or "City MSJ Opp."). In preparation for the current mootness argument, the City utilized that Response to walk back the "undisputed material fact" set forth in its Motion for Summary Judgment—that St. Timothy's provides benevolent meal service "***three to four times per week***"—and, instead, asserted that Plaintiffs were actually serving "three meals [per week] . . . and on the alternating weeks . . . two meals per week." *Compare* City MSJ at 4-5 *with* City MSJ Opp. at 15. Eleven days later, the City copied and pasted many of the unsupported and contradicted assertions from the Response into the instant Motion to Dismiss.[3]

The City attempts to justify its new calculation by suddenly excluding the fourth meal served by members of the United Methodist Church at St. Timothy's. MTD at 3 n.1. But it is Plaintiffs' *use* of the property at 401 Fir Street that the City seeks to regulate through the Ordinance, and Plaintiffs have long chosen to *use* that property to serve the hungry, including in collaboration with the United Methodist Church. As Fr. Bernie previously testified, "[w]e feel lucky to have the opportunity to share the St. Timothy's kitchen with our brothers and sisters at

---

[3] Incredibly, the City advises the Court that it is *Plaintiffs'* position that has changed over time, relying principally on the claim that Plaintiffs "abandoned" their objection to obtaining a permit under the Ordinance during summary judgment briefing. City MSJ Opp. at 2-5. This misstates the record. In their Opposition to the City's Motion, Plaintiffs *corrected* the City's misleading statements that Bishop Akiyama and Fr. Bernie object to the imposition of *any permits whatsoever* on churches. *Compare* City MSJ at 10, 17, 38-39 *with* Plfs' MSJ Opp. at 12-13. As Plaintiffs explained in their Opposition, that was *not* the witnesses' testimony. *See* Pltfs' MSJ Opp. at 12-13. Correcting this misstatement is, by no means, an "abandonment" of Plaintiffs' position.

Smith River UMC."  Lindley MSJ Decl. ¶ 8.  While the City might prefer that the United

Methodist Church volunteers "use a different location" (MTD at 3 n.1), there is no evidence or

even allegation that they will do so.

Additionally, the City incorrectly asserts that Plaintiffs "could not claim this is part of

[their] religious exercise."  The Monday meals at 401 Fir Street *are* part of Plaintiffs' religious

exercise.  Plaintiffs practice their religion by feeding those in need—including by welcoming

others who want to join in that effort.  Indeed, Episcopal Church Resolution No. 1976-A034

affirms "that the Episcopal Church at every level of its life [is] urged to act together and in

concert with other churches of Jesus Christ in all matters except those in which deep differences

of conviction or church order compel us to act separately."  Declaration of Rev. James Bernard

Lindley in Support of Plaintiffs' Opposition to MTD ("Lindley MTD Opp. Decl.") ¶ 2, Ex. 1.

Consistent with that principle, Plaintiffs welcome "sister churches that share [their] desire to feed

hungry people in the name of Jesus."  *Id.*  When Plaintiffs "share [their] feeding ministry with

other followers of Jesus," they believe they are "doing [their] part to unify people of faith and

fulfill Jesus' prayer that we 'all may be one' as found in the Gospel according to John chapter

17, verse 21."  *Id.* ¶ 3.

The Court should not condone the City's gamesmanship.  The Motion to Dismiss should

be denied.

### III.  LEGAL STANDARD

Mootness "pertain[s] to a federal court's subject-matter jurisdiction under Article III" and

is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)."

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A court may determine that it lacks subject

matter jurisdiction "either 'facially' or 'factually.'"  *Brooke v. Rihh LP*, No. 19-CV-06852-SI,

2020 WL 788889, at *2 (N.D. Cal. Feb. 18, 2020) (citations omitted).  A factual challenge exists

when the movant relies on extrinsic evidence and does not assert a lack of subject matter jurisdiction based solely on the pleadings. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a factual challenge, the court may consider extrinsic evidence. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

"'In seeking to have a case dismissed as moot . . . the defendant's burden is a heavy one.'" *Nat. Res. Def. Council v. Cnty. of Los Angeles*, 840 F.3d 1098, 1102 (9th Cir. 2016) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 66 (1987)). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001), *as amended* (Aug. 15. 2001) (internal quotation marks and citation omitted). When injunctive relief is sought, "courts of equity have broad discretion in shaping remedies," such that the question with respect to mootness "is not whether the precise relief sought at the time the application for an injunction was filed is still available," but "whether there can be *any* effective relief." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988) (emphasis in original, internal quotation marks and citation omitted); *see also Idaho Rivers United v. Hudson*, 173 F. Supp. 3d 1027, 1031 (D. Idaho 2016) ("A request for declaratory relief remains a live controversy when 'the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974))).

## IV.  ARGUMENT

**A.    The Case Is Not Moot: The Issues Presented Are Live and the Parties Have a Cognizable Interest in the Outcome.**

The City's recent action to amend the Ordinance does not moot the case because the Amended Ordinance continues to unlawfully restrict Plaintiffs' feeding ministry.  As summarized above, Plaintiffs have *repeatedly* asserted that their faith commands them to "feed people when they are hungry," and that an ordinance restricting their ability to do so violates their religious beliefs by limiting their ability to meet community need.  This is no idle concern. The record is clear that need for meal services fluctuates based on unpredictable factors such as pandemics, economic downturns, or increased living costs.  Indeed, the City itself acknowledges that Plaintiffs' feeding ministry schedule has shifted over the past decade from one to two to three to four to "six or seven" days per week as community need has requested.  MTD at 2, 3 n.1, 4, 5 n.3; City MSJ at 13, 15.  Just a few weeks ago, Plaintiffs served an extra meal at St. Timothy's on Thanksgiving to ensure that those experiencing loneliness in Brookings had a place to gather and break bread together.  In Fr. Bernie's experience, many individuals who are struggling need St. Timothy's' ministry the most during the holidays.  Lindley Opp. Decl. ¶ 4.

Nor is Plaintiffs' position "new," as the City states.  To the contrary, Plaintiffs have informed the City of their religious call to minister to the hungry on numerous occasions.  As relevant here, these efforts began at least as early as August 2021 and continued through the date that the City contends it "adopted" the Amended Ordinance. [4]  Edwards Decl. Exs. B-D, Van

---

[4] While the City asserts that it adopted the Amended Ordinance on November 13, 2023, its failure to follow its own rules calls that statement into question.  The City failed to provide 10 days' notice before the City Council hearing on the ordinance as required by Brookings Municipal Code § ("BMC") 17.84.050 and Or. Rev. Stat. § ("ORS") 221.330.  In addition, it does not appear that the City gave the Amended Ordinance two readings as required by Brookings Charter § 31(1).  Finally, it appears that the City has not posted a notice of post-acknowledgment with the Department of Land Conservation.  Such notice is typically due 35

Meter Summary Judgment Declaration, Ex. E (Tr. 33:13-16, 36:7-11); Lindley Opp. Decl. Exs. 1, 2; *see also* Compl. ¶ 47; Plfs' MSJ at 2-5; Plfs' MSJ Opp. at 5-6, 11-12.  At no point have Plaintiffs ever asserted that feeding people up to three days per week satisfies their sincerely held religious beliefs.

The Amended Ordinance does nothing to redress Plaintiffs' injuries.  Whether restricted to two days per week for three hours at a time or three days per week for two hours at a time, Plaintiffs remain at the mercy of the City's "arbitrary 'frequency and volume' preferences." Edwards Decl. Ex B.  The City's recent lightning "adoption" of the Amended Ordinance underscores the arbitrariness—and volatility—of these preferences.  There is no question that the self-serving amendment fails to eliminate the actual controversy as to whether the City may infringe on Plaintiffs' religious exercise with an arbitrary hours/days per week limitation.

Indeed, one need look no further than Plaintiffs' current meal schedule to conclude the case is not moot.  *As the City concedes*, every other week, St. Timothy's offers a *fourth* meal to meet community need.  The City offers no support for its newly manufactured argument that the Court should disregard the fourth meal because Plaintiffs invite members of the United Methodist Church to volunteer with them.  The Amended Ordinance, like the Ordinance, is a land use restriction that regulates the number and duration of so-called "benevolent meals" in residential zones, and there is no dispute that St. Timothy's currently offers benevolent meals four days per week.

There is nothing "hypothetical" about the facts presented to the Court for adjudication. *Contra* MTD at 6.  Plaintiffs' faith calls them to use their church to serve the hungry in their

---

days before the City can hold its first evidentiary hearing on proposed legislation.  ORS 197.610(1).

community.  Currently, the need requires them to offer, and they are in fact offering, meals

without charge up to four days per week.  The Amended Ordinance, like the Ordinance that

preceded it, burdens Plaintiffs' ability to fulfill that call.  As the parties have advised the Court in

prior briefing, the only event standing between Plaintiffs and a $720 daily fine for serving the

hungry at their church is the pending summary judgment briefing.  The controversy is very much

live, and Plaintiffs have a very strong interest in the Court ordering the City to cease interference

with their statutory and constitutional rights.

**B.**    **The Case Is Not Moot: The Amended Ordinance Simply Disadvantages Plaintiffs to a Lesser Degree.**

The City's Motion also must be rejected because the Amended Ordinance simply

interferes with Plaintiffs' legal rights to a lesser degree.  A defendant does not meet the heavy

burden of proving mootness when it merely replaces a challenged ordinance with one that

"differs only in some insignificant respect." *Ne. Fla. Chapter of Associated Gen. Contractors of*

*Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 661–62 (1993).  A city's repeal of or amendment

to an ordinance does not moot a case if the replacement or amendment simply disadvantages the

plaintiff "to a lesser degree" than the original.  *Id.* at 662; *see also Cuviello v. City of Vallejo*,

944 F.3d 816, 824 (9th Cir. 2019) (when amended ordinance continues to "threaten[] to harm a

plaintiff in the same fundamental way—even if to a lesser degree—the plaintiff will still have a

live claim for prospective relief"); *Citizens for Responsible Gov't State Political Action Comm.*

*v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) ("Where a new statute 'is sufficiently similar

to the repealed [statute] that it is permissible to say that the challenged conduct continues,' the

controversy is not mooted by the change, and a federal court continues to have jurisdiction."

(quoting *Ne. Fla. Ch. of Associated Gen. Contractors of Am.*, 508 U.S. at 662 & n.3)).

The Supreme Court's decision in *Northeastern Florida Chapter of Associated General Contractors of America* is instructive.  There, an association of general contractors challenged the constitutionality of an ordinance that required the city to award a certain percentage of city contracts to businesses owned by women or identified racial minority groups.  508 U.S. at 658-59.  The association argued that the ordinance unconstitutionally disadvantaged its members, most of whom did not meet the ordinance's minority requirements, in their efforts to compete for and obtain city contracts.  *Id.* at 662.  In the midst of litigation, the city revised the ordinance to apply only to women and African American contractors, instead of the seven different racial minority groups identified in the original ordinance.  *Id.* at 660-61.  The Supreme Court held that the case was not moot, reasoning that "[t]he new ordinance may disadvantage [the association members] to a lesser degree than the old one, but insofar as it accords preferential treatment to black- and female-owned contractors . . . it disadvantages them in the same fundamental way."  *Id*. at 662.  Similarly, the Amended Ordinance disadvantages Plaintiffs in the same fundamental way as the Ordinance by restricting their ability to answer Christ's call and serve the community.

The Ninth Circuit has similarly held that when the gravamen of a plaintiff's complaint remains unaffected by revisions to a challenged law, the action is not moot.  *See Cuviello*, 944 F.3d 816.  In *Cuviello*, the plaintiff challenged an ordinance that required individuals to obtain a permit and comply with certain conditions to use sound-amplifying devices within the city.  *Id*. at 822.  The plaintiff sought to use a bullhorn to amplify his voice at animal mistreatment protests and argued that the ordinance's permit requirement was an unconstitutional prior restraint on his speech.  *Id*. at 823.  In response to the lawsuit, the city revised the ordinance by eliminating the application fee and shortening the processing time for permit approval.  *Id*.

at 824.  Although the revisions "lessen[ed] the asserted harm caused by the permit requirement, [they] [did] not eliminate it."  *Id*. at 825.  The Ninth Circuit held that the action was not moot because the gravamen of the plaintiff's complaint continued—that he should not need to obtain a permit to use a bullhorn.  *Id*.

The gravamen of Plaintiffs' Complaint here is, and has always been, that an ordinance restricting how often they may serve the hungry violates their sincerely held religious beliefs. Increasing the number of days that Plaintiffs may engage in their Christian ministry from two to three may negligibly lessen the degree of harm,[5] but it certainly does not eliminate it.

### C.    The Case Is Not Moot: The City's Self-Serving Amendment Made for the Purpose of Litigation Underscores the Likelihood That Wrongful Behavior Will Persist.

Finally, even if Plaintiffs *did* offer "benevolent meals" only three days per week instead of four, and even if Plaintiffs' faith *did* direct them to serve the hungry up to but not more than three days per week, the City's amendment *still* does not moot the case because the City retains the authority to return to the challenged policy at any time.  It is a "well settled" rule that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *Ne. Fla. Chapter of Associated Gen. Contractors of Am.,* 508 U.S. at 661–62 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  To succeed on a mootness challenge following voluntary cessation, "[t]he defendant must demonstrate that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur."  *Gwaltney*, 484 U.S. at 66 (emphasis in original; internal quotation marks and citation omitted).

---

[5] Whether an increase in the number of days actually lessons the burden is questionable because the Amended Ordinance also decreases the number of hours meals can be served from three to two.

While courts "presume [the government] acts in good faith . . . the government must still demonstrate that the change in its behavior is 'entrenched' or 'permanent.'" *Fikre v. F.B.I.*, 904 F.3d 1033, 1037 (9th Cir. 2018).  Even when a presumption of good faith applies, a government defendant's "bald assertions" that it will not reenact a challenged law, alone, are insufficient to meet this heavy burden.  *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014).  Courts require evidence beyond such assertions, especially when a defendant "retains the authority and capacity to repeat an alleged harm."  *Id*. at 497; *see also Tandon v. Newsom*, 593 U.S. 61, 64 (2021) (considering that "officials with a track record of 'moving the goalposts' retain[ed] authority to reinstate" prior restrictions in rejecting state's mootness challenge).

The City has offered no evidence establishing that it is unlikely, let alone "absolutely clear," that it will not return to the original Ordinance.[6]  *See Gwaltney*, 484 U.S. at 66.  Its assertion that the steps for changing a land use ordinance are not "reasonably likely to be taken willy-nilly" (Mot. at 7) is nothing but a "bald assertion" designed to further the City's new mootness strategy.  *Wall*, 741 F.3d at 498; *see also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769 (6th Cir. 2019) (deciding case was not moot where defendant university had not shown it did not intend to reenact challenged policies).  It is also plainly incorrect.  The City pushed the Amended Ordinance from the Planning Commission to the City Council in fewer than *six days* and in violation of statutory notice requirement (*see* BMC 17.84.050; ORS 221.330); steps easily categorized as "willy-nilly."  Equally troubling is the City's long-standing defense of the *original* Ordinance, which increases the likelihood of reenactment.  *See Speech First, Inc.*, 939 F.3d at 770 ("Although not dispositive, the Supreme Court has found whether the government

---

[6] And if the City *had* proffered such evidence, its decision to delay consideration of the Amended Ordinance until long after the close of discovery would have deprived Plaintiffs of their ability to test any such assertion.

'vigorously defends the constitutionality of its . . . program' important to the mootness inquiry."
(quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007))).

In an effort to avoid this adverse precedent, the City relies on *Already, LLC v. Nike, Inc.*,
568 U.S. 85, 91 (2013).  MTD at 8.  The facts of *Already* are readily distinguishable.  There, the
*plaintiff* (Nike) moved to dismiss its own trademark infringement claims after the *defendant*
(Already) counterclaimed that the trademark was invalid.  *Id.* at 88.  Nike argued that a newly-
executed covenant not to sue mooted the case, and Already disagreed, invoking the voluntary
cessation doctrine.  *Id.* at 89.  The Court found for Nike, concluding that the covenant's plain
terms rendered it "unconditional and irrevocable" and "prohibit[ed plaintiff] from [filing suit or]
making any claim *or* any demand" relating to trademarks, unfair competition, or dilution, and
satisfied the voluntary cessation test.  *Id.* at 93 (emphasis in original).  It thus "encompass[ed]
all . . . allegedly unlawful conduct."  *Id.* at 94-95.

Setting aside the procedural distinctions between the two cases, it is clear that the
Amended Ordinance (1) does not encompass all allegedly unlawful conduct, and (2) is not
"unconditional and irrevocable"—quite the opposite, as demonstrated by the City's actions to
push the Amended Ordinance forward.  *Id.* at 93; *see* Section II.D. *supra*.  And unlike the
defendant in *Already*, Plaintiffs have no contract rights to hold the City accountable if it decides
to reverse its position in the future if this litigation is dismissed.  To the contrary, if that happens,
*Plaintiffs* may be liable to *the City* for huge fines.

As the Supreme Court also recognized in *Already*, "a defendant cannot automatically
moot a case simply by ending its unlawful conduct once sued. . . . Otherwise, a defendant could
engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where
he left off, repeating this cycle until he achieves all his unlawful ends."  *Id.* at 91.  That is

precisely what the City can do here; indeed, its goalpost-moving to date leaves little question that

that is likely what the City *will* do if the Court dismisses this action as requested.  *See Tandon*,

593 U.S. at 64.  There is nothing "entrenched" or "permanent" about the City's insincere

eleventh-hour action.  *See Fikre*, 904 F.3d at 1037; *see also* Statement of the U.S. Department of

Justice, Dkt. 73 at 7 n.5 ("Even if enacted, [the] amendment would not moot Plaintiffs' Religious

Land Use and Institutionalized Persons Act claim because there is no guarantee that the City

would not once again change its mind as soon as this litigation is over and impose some other

litigation[.]" (collecting cases)).  The case is live, the controversy is real, and this Court retains

subject matter jurisdiction to adjudicate it.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the City's

Motion to Dismiss.  Should the Court grant the Motion to Dismiss, Plaintiffs request that

dismissal be without prejudice and that the Court grant Plaintiffs leave to amend to remove any

question the City may have as to how its conduct violates RLUIPA and the federal and state

constitutions.

DATED:  December 12, 2023.

STOEL RIVES LLP


*s/ Amy Edwards*
Amy Edwards, OSB No. 012492
amy.edwards@stoel.com
Samantha K. Sondag, OSB No. 154244
samantha.sondag@stoel.com
Rachelle D. Collins, OSB No. 214059
rachelle.collins@stoel.com
Telephone:  (503) 224-3380

Attorneys for Plaintiffs