**Amy Edwards**, OSB No. 012492
amy.edwards@stoel.com
**Samantha K. Sondag**, OSB No. 154244
samantha.sondag@stoel.com
**Rachelle D. Collins**, OSB No. 214059
rachelle.collins@stoel.com
Stoel Rives LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

**Walter Fonseca**, OSB No. 136349
wfonseca@ojrc.info
**Franz Bruggemeier**, OSB No. 163533
fbruggemeier@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503.944.2270

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| ST. TIMOTHY'S EPISCOPAL CHURCH, by and through THE DIOCESE OF OREGON, dba THE EPISCOPAL DIOCESE OF OREGON, an Oregon nonprofit corporation, and REVEREND JAMES BERNARD LINDLEY, vicar of St. Timothy's Episcopal Church,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BROOKINGS, an Oregon municipal government,<br><br>Defendant. | Case No. 1:22-cv-00156-CL<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

I. INTRODUCTION .............................................................................................. 1

II. UNDISPUTED FACTS ..................................................................................... 2

    A.    St. Timothy's Is a Church, and Ministering to the Needy Is an Exercise of Plaintiffs' Religious Beliefs. ................................................................... 2

    B.    St. Timothy's Is Not a Restaurant. ................................................................. 5

    C.    There Is No Dispute That Mr. Baron Emailed a Brookings Resident Text for a Petition That Described St. Timothy's as a "Blight." .................................. 7

III. ARGUMENT ..................................................................................................... 8

    A.    Plaintiffs' Motion for Summary Judgment Must Be Granted Because the Ordinance Violates RLUIPA. ................................................................... 8

        1.    RLUIPA Applies as a Matter of Law. ...................................................... 8

        2.    There Is No Genuine Dispute that the Ordinance Imposes a Substantial Burden on Plaintiffs' Religious Exercise. ........................... 11

            a.    There Is No Genuine Dispute That Plaintiffs' Feeding Ministry Is Religious Exercise. ................................................... 14

        3.    There Is No Genuine Dispute That the Ordinance Was Not the Least Restrictive Means to Further a Compelling Government Interest ........................................................................................................ 16

            a.    The City Does Not Identify a Single Option Besides the Ordinance That It Considered to Achieve the Stated Interests. .................................................................................. 16

            b.    No Compelling Interests Support the Ordinance. ........................ 17

    B.    Plaintiffs' Motion for Summary Judgment Should Be Granted Because the Ordinance Violates the First Amendment. ........................................... 22

        1.    Strict Scrutiny Applies. ........................................................................... 22

            a.    Targeting and Hostility. ............................................................... 23

            b.    Religious Gerrymandering. ......................................................... 24

    C.    Summary Judgment Must Enter Because the Ordinance Is Unconstitutionally Vague. ...................................................................... 28

## TABLE OF CONTENTS
(continued)

**Page**

D.    Plaintiffs' Motion for Summary Judgment Should Be Granted Because the
Ordinance Unlawfully Infringes on Plaintiffs' Rights of Free Speech and
Association.......................................................................................................... 29

E.    The Ordinance Violates Article I, Sections 2, 3, and 8........................................ 31

IV. CONCLUSION............................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Saud v. Days*,
  50 F.4th 705 (9th Cir. 2022) ...................................................................................16

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014)..................................................................................................16

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993)..............................................................................22, 23, 24, 25

*Church on the Rock v. City of Albuquerque*,
  84 F.3d 1273 (10th Cir. 1996) ................................................................................30

*City of Portland v. Tidyman*,
  306 Or. 174, 759 P.2d 242 (1988) ..........................................................................32

*City Walk – Urb. Mission Inc. v. Wakulla Cnty.*,
  471 F. Supp. 3d 1268 (N.D. Fla. 2020).....................................................................9

*Civil Liberties for Urban Believers v. City of Chicago*,
  342 F.3d 752 (7th Cir. 2003) ..................................................................................26

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*,
  218 F. Supp. 2d 1203 (C.D. Cal. 2002) ...............................................................8, 21

*Daytona Rescue Mission, Inc. v. City of Daytona Beach*,
  885 F. Supp. 1554 (M.D. Fla. 1995).......................................................................14

*Dilaura v. Ann Arbor Charter Twp.*,
  30 F. App'x 501 (6th Cir. 2002) .............................................................................10

*DiLaura v. Twp. of Ann Arbor*,
  112 F. App'x 445 (6th Cir. 2004) ...........................................................................13

*Emp. Div., Dep't of Hum. Res. v. Rogue Valley Youth for Christ*,
  307 Or. 490, 770 P.2d 588 (1989) ..........................................................................32

*Episcopal Student Foundation v. City of Ann Arbor*,
  341 F. Supp. 2d 691 (E.D. Mich. 2004) (Response )............................................14

*Family Life Church v. City of Elgin*,
  561 F. Supp. 2d 978 (N.D. Ill. 2008) ................................................................26, 27

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Fifth Ave. Presbyterian Church v. City of New York*,
   No. 01-cv-11493, 2004 WL 2471406 (S.D.N.Y. Oct. 29, 2004).......................................13, 14

*Fulton v. City of Philadelphia*,
   141 S. Ct. 1868 (2021).................................................................................18, 21

*Grace Church of N. Cnty. v. City of San Diego*,
   555 F. Supp. 2d 1126 (S.D. Cal. 2008).....................................................17, 19, 21

*Grace United Methodist Church v. City of Cheyenne*,
   451 F.3d 643 (10 Cir. 2006)..................................................................................15

*Guatay Christian Fellowship v. County of San Diego*,
   670 F.3d 957 (9th Cir. 2011) ..................................................................................10

*Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*,
   456 F.3d 978 (9th Cir. 2006) ...................................................................9, 12, 16, 17

*Hernandez v. Comm'r*,
   490 U.S. 680 (1989)...............................................................................................15

*Holt v. Hobbs*,
   5574 U.S. 352 (2015)..............................................................................................16

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
   515 U.S. 557 (1995)................................................................................................29

*Int'l Church of Foursquare Gospel v. City of San Leandro*,
   673 F.3d 1059 (9th Cir. 2011) ........................................................................ passim

*Italian Colors Rest. v. Becerra*,
   878 F.3d 1165 (9th Cir. 2018) ...............................................................................31

*Johnson v. Baker*,
   23 F.4th 1209 (9th Cir. 2022) ................................................................................15

*Konikov v. Orange County*,
   410 F.3d 1317 (11th Cir. 2005) ...............................................................................9

*Lyng v. UAW*,
   485 U.S. 360 (1988)...............................................................................................30

*Martin v. Houston*,
   196 F. Supp. 3d 1258 (M.D. Ala. 2016) .................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mast v. Fillmore Cnty.*,
    141 S. Ct. 2430 (2021) (Gorsuch, J., concurring)............................................16, 18

*Michah's Way v. City of Santa Ana*,
    No. 8:23-cv-00183-DOC-KES, 2023 WL 4680804 (C.D Cal. June 8, 2023) ............11, 12, 15

*Midrash Sephardi, Inc. v. Town of Surfside*,
    366 F.3d 1214 (11th Cir. 2004) ..................................................................9

*Native Am. Council of Tribes v. Weber*,
    897 F. Supp. 2d 828 (D.S.D. 2012), *aff'd*, 750 F.3d 742 (8th Cir. 2014)................................21

*New Harvest Christian Fellowship v. City of Salinas*,
    29 F.4th 596 (9th Cir. 2022) ......................................................................16

*Papachristou v. City of Jacksonville*,
    405 U.S. 156 (1972)....................................................................................28

*S. Bay United Pentecostal Church v. Newsom*,
    985 F.3d 1128 (9th Cir.), *cert. granted, judgment vacated*, 141 S. Ct. 2563
    (2021).........................................................................................................22, 23

*Shakur v. Schriro*,
    514 F.3d 878 (9th Cir. 2008) ......................................................................15

*State v. Ciancanelli*,
    339 Or. 282, 121 P.3d 613 (2005) ..............................................................32

*Stuart Circle Par. v. Bd. of Zoning Appeals of the City of Richmond, Va.*,
    946 F. Supp. 1225 (E.D. Va. 1996) .............................................................13, 28

*Tandon v. Newsom*,
    593 U.S. 61 (2021).........................................................................22, 23, 25, 26

*United States v. City of Walnut*,
    No. CV-10-6774-GW, 2011 WL 12464619 (C.D. Cal. Jan. 13, 2011) ..................................10

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) ......................................................................16

*Westchester Day Sch. v. Vill. Of Mamaroneck*,
    504 F.3d 338 (2d Cir. 2007).........................................................................17, 21

121644371.4 0076396-00001

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Widmar v. Vincent*,
    454 U.S. 263 (1981) .................................................................................................30

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) .............................................................................31

**Statutes**

42 U.S.C. § 2000cc-5(7)(A) .........................................................................................15

42 U.S.C. § 2000cc(a)(1) ..............................................................................................16

42 U.S.C. § 2000cc(a)(2)(B) .........................................................................................10

42 U.S.C. § 2000cc(a)(2)(C) ......................................................................................8, 10

ORS 624.010 ..................................................................................................................6

ORS 624.010(9)(a) .........................................................................................................5

**Constitutional Provisions**

Or. Const. art. I, §§ 2, 3 ...............................................................................................32

## I.  INTRODUCTION

In its Response to Plaintiffs' Motion for Summary Judgment ("Response"), Defendant City of Brookings ("City") forgoes evidence and instead relies on the same legal theory it advances in its own summary judgment motion.  According to the City, Plaintiffs are not entitled to judgment in their favor on any claim because the challenged regulation, Ordinance 21-O-795 ("Ordinance"), amended the City Land Use Code to *allow* activity that the Code did not permit before: offering meals to the public without charge in a residential zone.  The City asserts that Brookings churches should be grateful because the Ordinance now permits them to offer the "benevolent meals" they had unwittingly served illegally for more than a decade while the use was not stated expressly in the Land Use Code.  They should be grateful, the City contends, even though the Ordinance allows them to engage in their religious feeding ministries only a few days per week.

That is not how our Constitution works.  Religious expression is a right inherent to citizens; it is not granted to them by the government.  To the contrary, the government is prohibited from targeting religious exercise and expression for distinctive treatment *unless* it proves that the restriction is narrowly tailored to advance compelling interests.  But make no mistake: such laws are indeed *restrictions* on rights; they do not, as the City would have it, create them.  That is why "no . . . case" supports the City's position.  *See* City Response to Brief of Amicus Curiae Notre Dame Law School Religious Liberty Clinic (Dkt. 77) at 3.

There is no genuine dispute that the City's restriction violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), as well as the federal and state constitutions.  With respect to RLUIPA, the City attempts to avoid a finding of substantial burden by speculating that Plaintiffs could just move their feeding ministry elsewhere, abandoning the church kitchen that was renovated and maintained specifically to provide meals to the community.  No authority

Page 1  -  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

supports the City's position; rather, all decisions presented to the Court that address an existing church use conclude otherwise.  In response to Plaintiffs' free exercise, speech, and association claims, the City asserts that the Ordinance is generally applicable and neutral, but presents no evidence to counter the legislative records, emails, and testimony showing that officials conceived, drafted, and implemented the Ordinance specifically to restrict Plaintiffs' charitable religious ministry.  And, in answering Plaintiffs' due process/vagueness claim, the City offers definitions just as ambiguous as the terms in the Ordinance itself, underscoring the high likelihood of arbitrary enforcement.

Nor can the City point to a single government interest that the Ordinance advances. There is no evidence that Plaintiffs' lunchtime meals cause or relate in any way to "increased crime," and the City *concedes* that the feeding ministry serves the public welfare.  Nonetheless, the City "quickly moved" to adopt the Ordinance—considering no alternatives—after receiving a petition from neighbors (that did not even concern the feeding ministry).  Response at 12.

The Ordinance is unlawful.  The Court should grant Plaintiffs' Motion for Summary Judgment and enjoin the City from placing frequency limitations on their feeding ministry.

## II.  UNDISPUTED FACTS

A.      **St. Timothy's Is a Church, and Ministering to the Needy Is an Exercise of Plaintiffs' Religious Beliefs.**

The City does not dispute that St. Timothy's Episcopal Church ("St. Timothy's") is a church or that churches are allowed conditional uses in residential zones like the one where St. Timothy's is located.  City's Motion for Summary Judgment, Dkt. 54 ("City MSJ") at 12; Plaintiffs' Motion for Summary Judgment, Dkt. 43 ("Motion") at 2-3.  The City does not dispute that St. Timothy's has a *de facto* conditional use permit pursuant to which it has operated as a

church continuously since the City enacted its Land Use Code in 1989.  Motion at 3; City MSJ

at 12.

The City likewise does not dispute that serving those in need is a long-standing practice

for Plaintiffs, exemplified by historical services such as hosting a food bank and distributing

alms (money and food).  Declaration of James Bernard Lindley in Support of Motion, Dkt. 48

("Lindley MSJ Decl.") ¶¶ 2-3.  The City also volunteers more recent examples in its Response,

such as when St. Timothy's offered the only COVID testing and vaccinations in Brookings

during the pandemic.[1]  Response at 4.

The City does not dispute that in 1984 St. Timothy's renovated its basement to include a

kitchen that could support community meals (Lindley MSJ Decl. ¶ 3) or that in 2009 St.

Timothy's began routinely operating a feeding ministry through which Plaintiffs offered free

meals at their church.  Motion at 3; City MSJ at 13.  The City does not dispute that former City

Councilor and Mayor Ron Hedenskog served meals at St. Timothy's' feeding ministry while he

was in office.  Motion at 20; City MSJ at 13.  The City does not dispute that St. Timothy's offers

the feeding ministry three to four times per week.[2]  Motion at 13; City MSJ at 15; Response at 6.

The City does not dispute that, over the years, St. Timothy's' feeding ministry has shifted from

one to six or seven days per week in response to community need.  Response at 7; City MSJ

at 13 ¶ 4.

---

[1] Although the City does not dispute these examples of ministering to the community, it
nonetheless contends that they are "irrelevant" and not worth its "time."  Response at 4.

[2] As detailed in Plaintiffs' Opposition to the City's Motion to Dismiss, Dkt. 78 ("MTD
Opp."), the Court should reject out of hand the City's brand-new position—developed in an
effort to moot the case at the eleventh hour and in direct contradiction to its prior statements—
that Plaintiffs offer "benevolent meals" two to three days per week, rather than three to four days
per week, because they invite Methodist volunteers to participate in the ministry on Mondays.

Notwithstanding the foregoing, the City *does* label as "not true" Plaintiffs' statement that they could not agree to serve meals two days per week, three hours per day "while also adhering to their sincerely held religious belief to feed the hungry and care for those in need."  Response at 7.  The City's characterization of Plaintiffs' faith belies the evidence presented in Plaintiffs' Motion and unrebutted in Response.  The Motion described in great detail that it is Plaintiffs' sincerely held religious belief that they must "share . . . bread with the poor," provide their neighbors "something to eat," and "g[i]ve food" to the "hungry." Motion at 2-5.  Plaintiffs explained that it is Fr. Lindley's "firmly held belief, and not just mine, but that of my religious tradition" that Jesus "made it clear that his intention was that we would feed, clothe, welcome, heal." *Id.* at 5 (quoting Lindley Dep. 150:11-153:13).  As Bishop Akiyama explained, Plaintiffs believe they have "been given a mandate by Jesus Christ as stated in the scriptures to feed the hungry, clothe the naked, [and] to comfort the afflicted." *Id.* at 4 (quoting Akiyama Dep. 39:24-40:7).  Plainly, Plaintiffs cannot adhere to this unqualified call from Christ while simultaneously agreeing to serve meals on the limited, arbitrary schedule set (and reset) by the City to fit its political and legal goals.  *See generally* MTD Opp.

Indeed, the City presents no evidence whatsoever (because none exists) to support its conclusion that Plaintiffs' faith compels them to serve the hungry not more than two days per week, three hours per day—or indeed, not at all.  *See* Response at 7.[3]  To the contrary, the record is clear that Plaintiffs believe they have a calling to serve their neighbors in need.  To that end,

---

[3] The record does not support the City's citation-free statement that "Fr. Lindley and Bishop Akiyama both readily admitted in deposition that nothing in their religion requires benevolent meal services at all."  To the extent the City intends to rely on its "Statement of Facts, para. 1" from its Motion for Summary Judgment, Plaintiffs incorporate their correction to that mischaracterization of Fr. Bernie and Bishop Akiyama's testimony as if fully set forth herein. *See* Plaintiffs' Opposition to City MSJ, Dkt. 69 ("Plfs' MSJ Opp.") at 12-13.

Page 4   -   REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

the City concedes that Plaintiffs have modified their meal schedule from one day per week to

"six or seven" days per week as the demands of the community change.  *Id.*; City MSJ at 13 ¶ 4;

*see also* Motion at 4-6.  If that were not enough, it is undisputed that Plaintiffs have repeatedly

advised the City, both before and after adoption of the Ordinance, that they consider offering

food without charge to be a sacrificial act and that "the poor and elderly may not 'potentially' be

fed on the City's arbitrary 'frequency and volume' preferences;" rather, their faith compels them

to "feed people when they're hungry."  *See, e.g.*, Plfs' MSJ Opp. at 12; Sondag Declaration in

Support of Plfs' MSJ Opp., Dkt. 72 ("Sondag Opp. Decl."), Exs. 6, 7, 13; Declaration of Heather

Van Meter in Support of City's Motion for Summary Judgment, Dkt. 55 ("Van Meter MSJ

Decl."), Ex. E at 33:13-16, 36:7-11.

**B.      St. Timothy's Is Not a Restaurant.**

There is no support for City's bald assertion that "[t]here is no dispute that St. Timothy's

is a 'restaurant' under ORS 624.010(9)(a)."  Response at 2.  The City relies on a

misrepresentation of Bishop Akiyama's testimony to suggest otherwise.  First, Bishop

Akiyama's testimony is immaterial to this question of law.  Bishop Akiyama is not a lawyer and

she cannot "admit" that St. Timothy's is a restaurant under an Oregon statute.  Moreover, Bishop

Akiyama did *not* admit that St. Timothy's "is a 'restaurant' under ORS 624.010(9)(a)."  In

response to questioning from the City's counsel as to whether she was "familiar with the state

law definition of restaurant as an establishment where food or drink is prepared for consumption

by the public," Bishop Akiyama responded that she was "***not aware***."  Van Meter MSJ Decl. Ex.

B at 46:21-47:3 (emphasis added).  When asked if she was "aware that St. Timothy's is in

violation of the restriction on restaurants in residential zones within the city," Bishop Akiyama

again responded she was "***not aware***."  *Id.* at 46:8-15 (emphasis added).

Page 5   -   REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Second, the City is wrong as a matter of law. How a state public health code defines "restaurant" is entirely irrelevant to the City Land Use Code, which does not define the term. And, even if it were relevant, ORS chapter 624 *expressly omits* "establishments where food is prepared and served by a . . . religious organization" from ORS 624.010 requirements for restaurants.

Plainly, churches are not restaurants. The City recognized as much in 1989 when it provided different zoning requirements for churches and restaurants. *See, e.g.*, BMC 17.20.040 (allowing churches as conditional use in R-1 zones, but not restaurants). A restaurant is "a business establishment where meals or refreshments may be purchased." *Restaurant*, Merriam-Webster, https://www.merriam-webster.com/dictionary/restaurant (last visited Dec. 14, 2023). There is no dispute that St. Timothy's is not a business establishment and that it does not offer the meals and refreshments for purchase. There is no reasonable dispute that in 2020 and 2021 the City decided to conflate "restaurant" and "church" in order to "challenge . . . St. Tim's de facto Conditional Use Permit" so that it could "require an application for a new conditional use permit so that 'conditions' can actually be placed on them." Baron Dep. Exs. 36, 37; *see also* Howard Dep. Ex. 7. The City does so again now in an effort to spin the Ordinance's *restrictions* on churches' feeding ministries as a gratuitous *permission* of them. This is a manipulation of plain language of the term restaurant, the City Land Use Code, and, as discussed herein, constitutional interpretation.

Notably, the City does not dispute the sequence of events leading up to the Ordinance's adoption, which began in specific response to St. Timothy's' charitable ministries long before submission of the neighborhood petition regarding Rule 2020-1. *Compare* Motion at 8-13 *with* Response at 5-6. The City's repeated description of the story told by its own documents as a

"false conspiracy theory" does not make the facts go away or provide evidence to avoid

summary judgment.  *See* Response at 6, 14, 18.

C.      **There Is No Dispute That Mr. Baron Emailed a Brookings Resident Text for a Petition That Described St. Timothy's as a "Blight."**

Plaintiffs take special exception to the City's assertion that they "lack[ed] candor" and

"deceptively omit[ted]" any testimony relevant to Anthony Baron's November 6, 2020 email to a

Brookings resident (Baron Dep. Ex. 43).  *See* Response at 5.  Mr. Baron did not dispute sending

this email to a Brookings resident; rather he denied *drafting* the proposed text included in the

email.  Plaintiffs encourage the Court to carefully review the testimony that the City cites to

confirm that nothing therein changes the fact that, as Plaintiffs wrote in their Motion: "In

November 2020, Mr. Baron emailed to a Brookings resident text that she 'should address' in a

petition about St. Timothy's:

> I, undersigned, a citizen[] of the City of Brookings, challenge the conditional use
> permit for St. Timothy's Episcopal Church in a residential zone. The services
> St. Timothy's is providing to the homeless and transients goes well beyond what
> is allowed under a conditional use permit for a church in an R-1-6 residential
> zone.  Without regulation over the past several years St. Timothy's has become a
> blight in our neighborhood and in our community. I am requesting the City of
> Brookings review the validity of St. Timothy's conditional use permit and require
> them to comply with any and all land use regulations as set forth in Chapter 17
> Land Development Code of the Brookings Municipal Code."

Motion at 9-10 (quoting Baron Dep. Ex. 43).[4]

The Court is welcome to assess the credibility of Mr. Baron's testimony that he did not

draft the text in either email, as the City invites in its Response.  *See* fn. 4, *infra*.  That

---

[4] To ensure that the Court has all relevant information, Plaintiffs attach a complete copy
of Mr. Baron's testimony discussing Deposition Exhibits 43 and 44 (effectively a combination of
the transcripts attached to the Parties' declarations), reattach a copy of Deposition Exhibit 43 for
the Court's convenience, and also attach Deposition Exhibit 44 itself, which the City discusses
but does not include in its Response.  *See* Sondag Reply Dec. Ex. A.  Deposition Exhibit 44 is an
email from Mr. Baron's city email address to his personal email address, also dated November 6,
2020, that includes the same petition text as Exhibit 43.

assessment does not change the undisputed fact that he *sent* the email containing the quoted text, as Plaintiffs wrote.

Plaintiffs encourage the Court to closely review all record citations in Plaintiffs' Motion and Opposition briefs to confirm that every factual assertion is supported. Plaintiffs encourage the Court to do the same with the City's briefing.

### III.  ARGUMENT

**A.    Plaintiffs' Motion for Summary Judgment Must Be Granted Because the Ordinance Violates RLUIPA.**

**1.    RLUIPA Applies as a Matter of Law.**

The City repeats the argument from its Motion for Summary Judgment that the Court need not reach the merits of Plaintiffs' RLUIPA claim, because no individualized assessment occurred. Response at 7-8. That argument fails for the reasons explained in Plaintiffs' Opposition to the City's Motion for Summary Judgment (*see* Plfs' MSJ Opp. at 14-18), summarized below, and further articulated in the U.S. Department of Justice's Statement of Interest, Dkt. 73 ("DOJ SOI") at 7-12.

Under 42 U.S.C. § 2000cc(a)(2)(C), RLUIPA applies to land use regulations where a government "has in place formal or informal procedures or practices *that permit* the government to make[] individualized assessments of the proposed uses for the property involved." (Emphasis added.) Actual denial of a conditional use permit application is not a condition precedent to RLUIPA jurisdiction, as the City suggests. *See generally Cottonwood Christian Ctr. v. Cypress Redevelopment Agency,* 218 F. Supp. 2d 1203, 1221 (C.D. Cal. 2002) (RLUIPA "codifies numerous precedents holding that systems of individualized assessments, as opposed to generally applicable laws, are subject to strict scrutiny"). When a land use code requires application for a permit that "results in a case-by-case evaluation of the proposed activity of

religious organizations," that is an "'individual assessment' regime" under RLUIPA.  *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir. 2004); *see also Konikov v. Orange County*, 410 F.3d 1317 (11th Cir. 2005) (when zoning code provides process "for individualized assessments," RLUIPA applies).  Because the Ordinance provides for case-by-case evaluations of religious activity, RLUIPA applies.

Moreover, the record is clear that the City *has* made several "individualized assessments" of St. Timothy's.  An individualized assessment occurred when "city officials determined that St. Timothy's and other entities providing benevolent meal services in residential zones were already violating city land use ordinances."  City MSJ at 16; *see also* Howard Dep. Ex. 7; *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978, 986 (9th Cir. 2006) (individualized assessment occurs when government "take[s] into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use").

Another individualized assessment occurred when the City adopted the Ordinance in response to activities at St. Timothy's, as described in both parties' Motions.  *See* City MSJ at 9 (describing Ordinance as response to service "at St. Timothy's that drew needy and homeless persons to this residential area"); Motion at 8-13 (describing June 7, 2021 agenda packet focusing on alleged problems arising from St. Timothy's' "soup kitchen" and City emails regarding St. Timothy's' COVID services and legislative options to limit them); *Martin v. Houston,* 196 F. Supp. 3d 1258, 1266 (M.D. Ala. 2016) ("individualized assessments prerequisite" satisfied where zoning law was enacted for the purpose of restricting plaintiff's use of the property).

Another individualized assessment occurred when the City sent St. Timothy's a Notice of Violation on April 14, 2023.  *See* Motion at 13; Howard Dep. Ex. 18; *City Walk – Urb. Mission*

*Inc. v. Wakulla Cnty.*, 471 F. Supp. 3d 1268, 1281 (N.D. Fla. 2020) (individualized assessment

prong satisfied where county issued "Notice of Violation and Notice of Repeat Violation"

because in both, "Defendant assessed Plaintiff's proposed use of the Property").

       And yet *another* individualized assessment occurred just last month—the same week the

City filed its Response—when the City Council purported to amend the Ordinance to respond to

"[o]ne unpermitted benevolent meal provider" and their "attorney's summary judgment" filing.

Sondag Opp. Decl. ¶ 5; Declaration of Heather Van Meter in Support of Motion to Dismiss,

Dkt. 76 ("Van Meter MTD Decl.") Ex. W.  Each of these individually—and certainly all of them

collectively—is more than enough to satisfy RLUIPA.

       The City cites no authority for its suggestion that RLUIPA requires a plaintiff to apply

for a permit to challenge the permit regime.  Response at 8.  Neither the statute nor courts

interpreting it requires such prerequisites do not apply.  *See, e.g., Guatay Christian Fellowship v.*

*County of San Diego*, 670 F.3d 957, 979 (9th Cir. 2011); *United States v. City of Walnut*, No.

CV-10-6774-GW, 2011 WL 12464619, at *3 (C.D. Cal. Jan. 13, 2011); *Dilaura v. Ann Arbor*

*Charter Twp.*, 30 F. App'x 501, 508 (6th Cir. 2002).  Even if they did, an application here

plainly would be futile,  As explained at length in Plaintiffs' Motion, Summary Judgment

Opposition, and Motion to Dismiss Opposition, the Ordinance requires all applicants to limit

their feeding ministries to two (or apparently now three) days per week—a restriction that

Plaintiffs' religious beliefs do not abide.  42 U.S.C. § 2000cc(a)(2)(C) applies.[5]  RLUIPA

applies.

---

[5] Even if this subsection were inapplicable, RLUIPA jurisdiction should be separately
upheld under 42 U.S.C. § 2000cc(a)(2)(B) because the involvement of Methodist volunteers on
Mondays impacts interstate commerce.  *See* Plfs' MSJ Opp. at 16-17; DOJ SOI at 8 n.7.

Page 10-   REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

2.     **There Is No Genuine Dispute that the Ordinance Imposes a Substantial Burden on Plaintiffs' Religious Exercise.**

Nothing in the Response alters the conclusion that the Ordinance imposes a substantial burden on Plaintiffs' religious exercise.[6]

The City's first contention that there is no substantial burden is its familiar refrain that the Ordinance "allows Plaintiffs to do something they are not otherwise allowed to do under the Land Development Code – serve benevolent meals." Response at 9. For reasons previously articulated, this is simply incorrect. There is no genuine dispute that St. Timothy's is a church, not a restaurant, and that the feeding ministry is a church activity.[7] There is no dispute that St. Timothy's has operated as a church since at least 1953, engaged in charitable religious ministries for decades and in the feeding ministry in particular since 2009. There is no dispute that St. Timothy's served meals three to four days per week from 2015 to 2020 and then approximately six days per week during the COVID-19 pandemic. The City's assertion that the 2021 Ordinance now "allows" Plaintiffs to exercise their religion at St. Timothy's two days per week, when St. Timothy's has been doing so every day of the week for more than 50 years, is not well taken as a matter of fact or law. By eliminating Plaintiffs' ability to minister to the hungry and in need as their faith demands—including on their current schedule of three to four meals per week—the Ordinance imposes a burden on Plaintiffs.

---

[6] To be clear, the City's efforts to restrict free meals are before the Court; Plaintiffs have never requested a finding that RLUIPA commands "that churches must be allowed to use church property in any manner they please," as the City asserts. *See* Response at 9.

[7] As explained in Plaintiffs' Motion for Summary Judgment Opposition, courts have rejected similar efforts by other cities to recast nonprofit activities of religious entities into "commercial activities" as "dubious at best." *Michah's Way v. City of Santa Ana*, No. 8:23-cv-00183-DOC-KES, 2023 WL 4680804, at *4 (C.D Cal. June 8, 2023).

That burden is "substantial" under RLUIPA.  As explained in Plaintiffs' Motion, "[a] substantial burden exists where the governmental authority puts '"substantial pressure on an adherent to modify his behavior and to violate his beliefs."'"  *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (quoting *Guru Nanak*, 456 F.3d at 988).  The threat of enforcement of a $720 daily fine goes well beyond what is required by this standard.  *See, e.g.*, Howard Dep. Ex. 17.  That is particularly true for a small nonprofit church, which  specifically renovated its kitchen to ensure compliance with OHA regulations for the purpose of serving community meals.  *See* Lindley Decl. ¶¶ 3, 11-12; *see also* Van Meter MSJ Decl. Ex D (financial records showing St. Timothy's with a 2022 higher than average income (donations and carry over) of $82,266, and lower than average expenses of $66,310 due principally to an unexpected $6,622 in donations and $5,580 reduction in the $14,477 and $24,126 salaries of the Secretary and Vicar, respectively).  Indeed, anytime that "continued distribution of food will be met with 'issuance of administrative fines'" that "plausibly put[s] pressure on [the plaintiff] to modify its behavior and violate its beliefs." *Michah's Way v. City of Santa Ana*, No. 8:23-cv-00183-DOC-KES, 2023 WL 4680804, at *5 (C.D Cal. June 8, 2023).

The City does not offer *any* evidence to create a genuine dispute of material fact as to any of the foregoing.  Response at 9-10.  Instead, the City speculates that "Plaintiffs could use other churches to serve benevolent meals" or "could use a location in a different zone of the city," (Response at 9), even though the City Mayor himself was unable to locate such a different location.  *See* Lindley Dep. 112:23-113:18; *see also* Sondag Declaration in Support of Plfs' MSJ, Dkt. 52 ("Sondag MSJ Decl.") Ex. 18, Aug. 30, 2021 Mtg. Minutes at 59:17-60:1; *see also* Hedenskog Dep. 79:16-82:1.  Citing nothing but an unauthenticated page from Google Maps purporting to highlight Brookings churches, the City opines that Plaintiffs presumably could just

Page 12-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

relocate and feed the hungry "from any number of very close locations and in any number of other alternative ways."  Response at 10.  The City's suggestion implies that a substantial burden exists only if it is insuperable in every respect—a test the Ninth Circuit has squarely rejected. *Foursquare Gospel*, 673 F.3d at 1068 ("'a burden need not be found insuperable to be held substantial'" (citation omitted)).[8]

Other courts have found violations of RLUIPA where religious exercise was similarly restricted but not entirely banned.  The Eighth Circuit held that requiring a religious ministry to charge guests for meals as a bed and breakfast was a substantial burden under RLUIPA. *DiLaura v. Twp. of Ann Arbor*, 112 F. App'x 445, 446 (6th Cir. 2004).  The District of Minnesota found that a 20-guest-per-day limitation on a newly opened church homeless shelter and a requirement that the church post a sign restricting after-hours visitation were both substantial burdens under RLUIPA.  *First Lutheran Church,* 326 F. Supp. 3d 745, 762-63 (D. Minn. 2018).  The Southern District of New York held that prohibiting a church from hosting homeless individuals from 9:00 p.m. to 5:30 a.m. was a substantial burden on religious exercise under the First Amendment.  *Fifth Ave. Presbyterian Church v. City of New York*, No. 01-cv-11493, 2004 WL 2471406, at *4 (S.D.N.Y. Oct. 29, 2004).  The Eastern District of Virginia held that a city's limitation on the number of persons a church's food ministry could serve was an unlawful burden under the First Amendment, rejecting the City's argument that availability of other churches to accept overflow rendered the burdensome insubstantial.  *Stuart Circle Par. v.*

---

[8] The City states that Plaintiffs' argument relies on a "false, self-imposed binary choice of two days per week or not at all" based on these hypothetical alternative locations. To the extent the City intends to invoke the "self-imposed burden" authority cited in its Motion for Summary Judgment, Plaintiffs direct the Court to pages 23-24 of Plaintiffs Opposition to the City's Motion for Summary Judgment, and to pages 15-19 of the U.S. Department of Justice's Statement of Interest, both of which explain why the standard is inapplicable here.

Page 13-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*Bd. of Zoning Appeals of the City of Richmond, Va.*, 946 F. Supp. 1225, 1238-39 (E.D. Va. 1996).

The City's cited authority does not move the needle.  *Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691 (E.D. Mich. 2004) (Response at 10), concerned a religious center's objection to a zoning commission's decision to deny its application to *demolish* its existing building and *construct a new one* in its place.  *Daytona Rescue Mission, Inc. v. City of Daytona Beach*, 885 F. Supp. 1554 (M.D. Fla. 1995), concerned claims under the Religious Freedom Restoration Act and the First Amendment arising from the denial of a permit to a church seeking to establish a *new* homeless shelter in a zone where homeless shelters were not allowed.  *Id.* at 1556.  Notably, the city in *Daytona Rescue* did *not* attempt, as the City here, to stop the church from performing its *existing* ministries, which included providing food bags, counseling, clothing, and "***meals***."  *Id.* at 1555 (emphasis added).  Unlike the plaintiffs in these cases, St. Timothy's wants nothing more than to continue its *existing* ministries on its *existing* property.

There is no genuine dispute of material fact that forcing Plaintiffs to cease serving meals from their place of worship on days they are already serving and prohibiting Plaintiffs from serving meals on additional days of the week as their faith compels them is a substantial burden under RLUIPA.

       a.      **There Is No Genuine Dispute That Plaintiffs' Feeding Ministry Is Religious Exercise.**

Finally, the City repeats its unsupported allegation that Plaintiffs have "admitted" that they are not "required" to "serve benevolent meals."  Response at 10.  In fact, as Plaintiffs explained with record citations above and in their Motion, Opposition to the City's Motion, Opposition to the City's Motion to Dismiss, feeding the hungry when they are hungry is their

sincerely held religious belief.  Indeed, Bishop Akiyama described this as a "mandate."   Van

Meter MSJ Decl. Ex. B (Akiyama Tr. 39:24-40:7).

 Regardless, the City misstates the test for religious exercise under RLUIPA.  Plaintiffs

need not show that something in their religion "require[s]" or "mandate[s]" a particular act, as

the City writes.  *See* Response at 10.  In fact, the statute expressly provides otherwise—religious

exercise is "*any* exercise of religion, *whether or not compelled by*, *or central to*, a system of

religious belief."  42 U.S.C. § 2000cc-5(7)(A) (emphases added).  The Ninth Circuit is clear:

"'[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a

faith, or the validity of particular litigants' interpretations of those creeds.'"  *Shakur v. Schriro*,

514 F.3d 878, 884 (9th Cir. 2008) (brackets in original) (quoting *Hernandez v. Comm'r*, 490

U.S. 680, 699 (1989)); *see also Foursquare Gospel*, 673 F.3d at 1069 (it is not for court to

"inquire into the truth or falsity of stated religious beliefs").

 Indeed, "[b]y the plain language of RLUIPA, [courts] are forbidden from evaluating the

centrality of a religious practice or belief."  *Johnson v. Baker,* 23 F.4th 1209, 1214-15 (9th Cir.

2022); *see also Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 660-61 (10

Cir. 2006) (district court erred when it instructed jury that RLUIPA's substantial burden

provision protects only those activities that are "fundamental" to plaintiff's religion).  As the

Central District of California observed, when "food distribution" expresses "religious beliefs by

rendering 'charitable services' to those in need," those activities fall within RLUIPA's scope.

*Micah's Way*, 2023 WL 4680804, at *4.  Whether such distribution is "merely incidental" to

religious belief is an inquiry "prohibited by case law."  *Id.* (collecting authority).

    **3.**      **There Is No Genuine Dispute That the Ordinance Was Not the Least Restrictive Means to Further a Compelling Government Interest.**

Because Plaintiffs have shown that the Ordinance imposes a substantial burden on their religious exercise, the City bears the burden to demonstrate that the Ordinance was the least restrictive means of furthering a compelling government interest. 42 U.S.C. § 2000cc(a)(1); *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 601 (9th Cir. 2022). This is a strict scrutiny analysis. *See Guru Nanak*, 456 F.3d at 993; *accord Mast v. Fillmore Cnty.*, 141 S. Ct. 2430, 2432 (2021) (Gorsuch, J., concurring) (RLUIPA "requires the application of 'strict scrutiny'"). The City does not meet the heavy burden required for the Ordinance to survive strict scrutiny.

      **a.**      **The City Does Not Identify a Single Option Besides the Ordinance That It Considered to Achieve the Stated Interests.**

As explained in the next section, the City's Response does not articulate a compelling government interest as a matter of law. However, the Court need not even reach that question because the City has presented no evidence that the Ordinance was the least restrictive means to achieve *any* interest. For that reason alone, Plaintiffs' Motion should be granted.

A government "cannot meet its burden to prove least restrictive means unless it *demonstrates that it has actually considered and rejected* the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005) (emphasis added); *see also Al Saud v. Days*, 50 F.4th 705, 713 (9th Cir. 2022) (same); Plfs' MSJ at 28-30. This burden is "'exceptionally demanding'" and "requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt v. Hobbs*, 5574 U.S. 352, 353 (2015) (brackets in original) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)).

Page 16-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The City's Response points to absolutely no evidence that the City considered and rejected any less restrictive measures before adopting the Ordinance. *See* Response at 11-13. To the contrary, the Response concedes that the City considered no option *but* the Ordinance to achieve its alleged interests:

> Once the City received the residents' petition and complaints and reviewed the situation, it determined that the existing Brookings Land Development Code did not allow benevolent meal services in residential zones at all – meaning all benevolent meal service providers were in violation of the Code. Mayor Hedenskog and others quickly moved to rectify this situation – unanimously adopting Ordinance #21-O-795 to *allow* benevolent meal services to continue.

Response at 12 (citing Defendant's Motion, Statement of Facts, ¶¶ 12-16).

The City's concession is dispositive. *See Guru Nanak*, 456 F.3d at 992 (when government presents "no . . .  argument in its briefs" regarding required showing under RLUIPA, it "effectively concedes" the issue).  The Ordinance violates RLUIPA.

### b.    No Compelling Interests Support the Ordinance.

Even if the City had shown that it considered and rejected other measures, the City still fails to point to any compelling interest furthered by the Ordinance.  Only """"interests of the highest order""" are considered compelling governmental interests. *Foursquare Gospel*, 673 F.3d at 1071 (citation omitted).  An "important" interest is insufficient, and the government must "show 'a compelling interest in imposing the burden on religious exercise in the ***particular case at hand***, not a compelling interest in general.'" *Grace Church of N. Cnty. v. City of San Diego*, 555 F. Supp. 2d 1126, 1140 (S.D. Cal. 2008) (emphasis added) (quoting *Westchester Day Sch. v. Vill. Of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007)).  The City's purported "compelling interests" do not meet this high standard.

        **(i)**        **"Public Welfare, Maintaining Peace and Order, and Reducing Crime."**

In their Motion, Plaintiffs explained why the City's reliance on "public welfare, maintaining peace and order, and reducing crime," (Response at 11), is insufficient to establish a compelling government interest as a matter of law.  Motion at 21-26; Sondag MSJ Decl. Ex. 19 at 7 (Interrogatory Response #7), 8 (Interrogatory Response #9), and 9 (Interrogatory Response #10).  The Supreme Court has held that it is error to treat a "*general* interest" as "'compelling' without reference to the *specific* application of [the challenged] rules to [the] community."  *Mast*, 141 S. Ct. at 2432.  Indeed, the Supreme Court has held that even interests more particularized than those flagged by the City—including "maximizing the number of foster parents" and "protecting [a] City from liability"—were asserted at an impermissibly "high level of generality."  *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021).  The City's recurring reliance on the broadly formulated interests set forth in response to Plaintiffs' Interrogatories— including in its own Motion—is a far cry from the showing required to satisfy strict scrutiny. City MSJ at 24; Response at 11; Sondag MSJ Decl. Ex. 19 at 7, 8, 9.  As such, the inquiry as to whether the City has demonstrated a compelling interest should end here.

However, even the slightly more detailed formulation that the City belatedly provides in its Response does not withstand strict scrutiny.  The City erroneously argues that the following "facts" make its interests sufficiently particularized:

- "[T]hings got 'out of hand' at St. Tim's" when Plaintiffs hosted temporary overnight guests pursuant to the City's Rule 2020-1 program;

- "[P]olice dispatch calls to St. Tim's went from 8 to 154 from 2010 to 2020 (years coinciding with St. Tim's benevolent meal services increases)"; and

- "[T]here is no dispute that [the Ordinance] has helped to successfully reduce the number of public health and safety and health and welfare issues at permitted benevolent meal service sites."

Response at 11-12.

*First*, the challenges created by the City's Rule 2020-1 program are entirely unrelated to the activity that the Ordinance regulates. As described in Plaintiffs' Motion and unrebutted in the City's Motion, the Rule 2020-1 program allowed "overnight camping space," and it was this nighttime activity—and not St. Timothy's meal service—that prompted the petition in April 2021. Hedenskog Dep. Ex. 8; Sondag MSJ Decl. Ex. 11; Howard Dep. Ex. 4. There is no dispute that St. Timothy's serves meals during the day only.

*Second,* the "police dispatch calls" reflected in the June 7, 2021 Workshop Report are unrelated to Plaintiffs' meal service. As explained in Plaintiffs' Motion and unrebutted in the City's Response, those calls were *not* filtered to the specific time of day that churches operate their feeding ministries: for St. Timothy's, between 12:00 p.m. and 1:00 p.m. on weekdays and Saturday, and 3:00 p.m. to 4:00 p.m. on Sundays. Dotson Dep. 66:1-6, 66:20-67:3, 69:4-5; Lindley Decl. ¶¶ 7-8.[9] The calls also were not filtered to remove noncriminal calls for service (*e.g.*, calls for medical attention). Dotson Dep. 67:15-21, 68:15-69:3, 69:14-16, 69:21-25. Accordingly, they do not support "imposing the burden on religious exercise in the particular case at hand." *Grace Church*, 555 F. Supp. 2d at 1140.

*Third,* the City has not offered any admissible evidence—let alone undisputed evidence—that the Ordinance "has helped to successfully reduce the number of public health and

---

[9] When the broader 2020 police data is filtered by time, the number of calls that occurred during the hours of St. Timothy's' meal service is very, very small. Plfs' MSJ Opp. at 8.

safety and health and welfare issues at permitted benevolent meal service sites." Response at 12. The single citation is to the City's Motion, "Statement of Facts para. 17." *Id*. That paragraph cites to testimony from Lieutenant Dotson in which he notes observing "fewer problems" with "homeless or transient people" at the church across the street from his home, which has a benevolent meal service CUP, than at St. Timothy's. Van Meter MSJ Decl. Ex. I (Dotson Tr. 84:19-85:9); *see* Plfs' MSJ Opp. at 13. Even if Lieutenant Dotson's unsupported, subjective observations were admissible, they are nonetheless insufficient to meet the demanding burden.[10] Further, with respect to public health, it bears reiterating that St. Timothy's obtained a "commercial kitchen" license from OHA and passed inspection *before* the Ordinance was ever adopted. Lindley MSJ Decl. Ex. 2. The City offers no evidence that limiting the amount of time that churches may serve free meals serves public health.

### (ii)     "Allow[ing] Benevolent Meal Services."

The City's asserted interest in changing the Land Use Code to "allow" City churches to continue the feeding ministries they had engaged in for years is not a compelling interest. *Compare* Motion at 26-27 *with* Response at 12. For the City's theory to hold in the first instance, the reader must accept that churches' feeding ministries are "restaurants" rather than church uses. As explained above and in Plaintiffs' Motion and Motion for Summary Judgment Opposition, this interpretation is unsupported by law or fact.[11] The feeding program is a quintessential church ministry, and invalidation of the Ordinance will allow Plaintiffs to continue

---

[10] Lieutenant Dotson's testimony also does not reflect an apples to apples comparison as his testimony offers no evidence as to the activities of homeless and transient persons around the church across from his home before it obtained a CUP.

[11] It is particularly stymying that the City would conclude that *free meals* transform a church into an unpermitted restaurant, but *meals for charge* offered by a bed and breakfast do not. BMC 17.20.040.N.

Page 20-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

this religious exercise as they did prior to 2021—unless, of course, the City again takes unlawful action to restrict it.  This is the proper cause and effect analysis between the Ordinance and Plaintiffs' feeding ministry.  The Court should reject the City's incredible claim that striking the Ordinance will "likely end[] these benevolent meal services."  Response at 12-13.

Even if the City's theory *did* hold together, the law is clear: compliance with a zoning code, without more, is not an "'interest[] of the highest order.'"  *Westchester Day Sch.*, 504 F.3d at 353 (citation omitted).  Moreover, courts must view a zoning interest with skepticism when asserted by a government that, like the City here, was "complacent" about it for many years only to "suddenly burst into action," *Cottonwood*, 218 F. Supp. 2d at 1225; *see also Grace Church*, 555 F. Supp. 2d at 1140-41 ("One way to evaluate a claim of compelling interest is to consider whether in the past the governmental actor has consistently and vigorously protected that interest.").  Such belated action generally reflects that the purported compelling interest is not "genuinely-held," *Cottonwood*, 218 F. Supp. 2d at 1228, as RLUIPA requires, but rather an impermissible "post-hoc rationalization[]," *Native Am. Council of Tribes v. Weber*, 897 F. Supp. 2d 828, 849 (D.S.D. 2012), *aff'd*, 750 F.3d 742 (8th Cir. 2014).  As described in Plaintiffs' Motion and unaddressed in the Response, that is precisely what the City's stated interests amount to here.  Motion at 27-28.

Finally, the City's stated interest in allowing benevolent meal services to continue is an implicit admission that these services are valuable—an argument made explicit in the City's Motion.  *See* Response at 12; City MSJ at 9.  Plaintiffs agree.  For that reason alone, the Ordinance cannot*, as a matter of law or logic, *further* the interest because it *decreases* rather than increases such services.  *See Fulton*, 141 S. Ct. at 1881-82 (city's stated interest in maximizing

Page 21-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

number of foster parents did not withstand strict scrutiny when city broke contract that would

have "increase[d], not reduce[d], the number of available foster parents").

**B.      Plaintiffs' Motion for Summary Judgment Should Be Granted Because the Ordinance Violates the First Amendment.**

**1.      Strict Scrutiny Applies.**

The parties agree that strict scrutiny applies if the Ordinance is not neutral or generally

applicable.  Response at 13.  According to the City, the Ordinance *is* neutral and generally

applicable, because it does not "single out houses of worship for especially harsh treatment."  *Id*.

The City appears to draw this language from *S. Bay United Pentecostal Church v. Newsom*, 985

F.3d 1128, 1134 (9th Cir.), *cert. granted, judgment vacated*, 141 S. Ct. 2563 (2021).  Response

at 13 (citing City MSJ at 26).[12]  The City misinterprets this to suggest that regulations are neutral

and generally applicable so long as they do not use the word "church."  *See id.*  That is not the

law.

The "Free Exercise Clause protects against governmental hostility which is masked, as

well as overt" such that "*[f]acial neutrality is not determinative*."  *Church of Lukumi Babalu*

*Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) (emphasis added).  "Official action that

targets religious conduct for distinctive treatment" reveals improper object or purpose and

triggers strict scrutiny.  *Id.*  So too does action that "in a selective manner impose[s] burdens

only on conduct motivated by religious belief."  *Id.* at 543.  Thus, in *Lukumi Babalu Aye,* the

Supreme Court applied strict scrutiny to a regulation that was arguably facially neutral because

the record "compel[led] the conclusion that suppression of the central element of the Santeria

---

[12] In both its Motion and Response, the City fails to advise that the Supreme Court *vacated South Bay* with its 2021 decision in *Tandon*.  Both the Ninth Circuit and the Supreme Court applied strict scrutiny in evaluating challenges to California's COVID-19 Response, but the Supreme Court parted ways with the Ninth Circuit when it held that the state's action did not survive such scrutiny, expressly vacating *South Bay* and several related decisions.

worship service was the object of the ordinances" and because the effect of the regulations was

to burden only conduct motivated by religious belief.  *Id*. at 534.

Similarly, both *South Bay* and the Supreme Court decision that vacated it, *Tandon v.*

*Newsom*, 593 U.S. 61 (2021), applied strict scrutiny to California's COVID-19 Response

"Blueprint" over the state's argument that rational basis review should apply because the

framework "employ[ed] neutral, generally applicable risk criteria" and did "not single out

religious practices for harsh treatment."  *S. Bay*, 985 F.3d at 1140 (describing state's argument);

*Tandon*, 593 U.S. at 62.  Although the Blueprint used neutral criteria to determine capacity

restrictions in a wide range of establishments, the Supreme Court explained that strict scrutiny

was appropriate because the result was differential treatment between places of worship and

some secular essential businesses.  *Tandon*, 593 U.S. at 62.  "[G]overnment regulations . . . [that]

treat *any* comparable secular activity more favorably than religious exercise" are not neutral and

generally applicable; "[i]t is no answer that a State treats some comparable secular businesses or

other activities as poorly as or even less favorably than the religious exercise at issue."  *Id.*  The

same rationale applies here and supports application of strict scrutiny.

### a.    Targeting and Hostility.

For the many reasons detailed in Plaintiffs' Motion and unaddressed by the City, the

record compels application of strict scrutiny.  *Compare* Motion at 32-34 *and* Response at 14-15.

Plaintiffs presented evidence of **religious targeting**, including legislative history and City

records expressly discussing ways to regulate "benevolent meal services in churches" generally

and at "St. Timothy's" specifically.  Howard Dep. Exs. 3, 6, 7, 8, 12.  Plaintiffs also presented

evidence of **religious hostility**, including statements by the former Mayor that serving "meal

service six to seven days a week" is not the role of a "traditional church," (Sondag MSJ Decl.

Ex. 22 at 91:5-11), and a councilor expressing "skeptic[ism]" of St. Timothy's' "focus on

Page 23-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

feeding the hungry" and belief in providing assistance to "nonbelievers," (Schrieber Dep. Ex. 6 at 135:3-12, 136:2-139:17). Supreme Court precedent is clear that such evidence mandates a finding that the Ordinance is not neutral. *Lukumi Babalu Aye*, 508 U.S. at 534, 536.

The City offers no evidence to create a dispute as to the City's targeting and hostility towards churches and St. Timothy's, in particular. Response at 14. To the contrary, the Response *confirms* that the Ordinance was designed to target churches. *Id.* at 13-14. The City speculates that St. Timothy's could just serve its benevolent meals "at other *churches,* including those a few hundred feet away, or in other parts of the City." Response at 3 (emphasis added), 20 (Google Map printout highlighting churches). It offers the Court its unsupported conclusion that the United Methodist Church "could simply use a different *church*" to serve its Monday meals. *Id.* at 3 n.2 (emphasis added). It opines that Plaintiffs' religion should not "require[] such meals be served on the site of St. Timothy's church as opposed to *other churches* . . . or multiple other locations in the City." *Id.* at 7 (emphasis added). The City cannot even maintain the hollow façade that the Ordinance applies to entities other than churches over the course of this summary judgment briefing.

### b.    Religious Gerrymandering.

Plaintiffs' Motion also provided evidence of **religious gerrymandering**, a term that the Supreme Court applies when the "net result" of legislation is that "few if any" actions are prohibited other than religious conduct. Motion at 32-33; *Lukumi Babalu Aye*, 508 U.S. at 536-37. Such gerrymanders occur even when the subject of the regulation, on its face, implicates "multiple concerns unrelated to religious animosity." *Lukumi Babalu Aye*, 508 U.S. at 535. Plaintiffs identified other conditional uses in residential zones that contemplate routine meal service, both with and without charge, by organizations such as public halls, lodges, clubs, and—

most notably—bed and breakfasts.  *See* Motion at 32-33 (citing BMC 17.20.040.N.J.).  Unlike "benevolent meal services," these uses are not restricted by *any* day-per-week limitations.

In response, the City asserts that it is simply the case that "different conditional use requirements" apply to a "long list of entities" in residential zones, including hospitals, country clubs, and golf clubs.  Response at 14-15.  That is, of course, precisely the point—the "differen[ce]" is that, under the Ordinance, churches are limited to serving a few hours a week while secular institutions are not.[13]  This is the definition of a "religious gerrymander" under *Lukumi Babalu Aye*, 508 U.S. at 535-37, and a textbook demonstration of a government "treat[ing] any comparable secular activity more favorably than religious exercise," *Tandon*, 593 U.S. at 62 (emphasis omitted).

### 2.    The Ordinance Does Not Survive Strict Scrutiny.

The City effectively concedes that the Ordinance does not withstand strict scrutiny.  The Response contains no argument that the Ordinance is the least restrictive means of advancing a compelling government interest.  Response at 13-15.  To the extent that the City intended to offer its RLUIPA argument again, that fails for the reasons stated above.  As the Supreme Court observed, "strict scrutiny requires the State to further 'interests of the highest order' by means 'narrowly tailored in pursuit of those interests.'  That standard 'is not watered down'; it 'really means what it says.'"  *Tandon*, 593 U.S. at 64-65 (quoting *Lukumi Babalu Aye*, 508 U.S. at 546).

---

[13] The City responds to the specific example of its differential treatment of the secular Chetco Activity Center by explaining that the Center predated the Land Use Code.  MSJ Opp. at 15.  Applying the same logic that the City applies to St. Timothy's, which also predated the Land Use Code, the Center would be subject to the Ordinance unless it was grandfathered in as a restaurant.  But the City admits that the Center was approved as a senior center, not as a restaurant.  Response at 15; Van Meter Decl. Ex. V.  Nonetheless, the City permits the Chetco Activity Center, but not St. Timothy's, to serve meals without charge and without a day limitation.  MSJ Opp. at 15.  The City's convoluted defense of the Ordinance confuses even the City itself.

It is error to conclude that a regulation withstands strict scrutiny if the government does not affirmatively explain why. *Id.* at 63.

Finally, even if rational basis review applied, the Ordinance **still** does not pass constitutional muster. As a threshold matter, this case is nothing like *Family Life Church v. City of Elgin*, 561 F. Supp. 2d 978 (N.D. Ill. 2008), which is relied on by the City. Response at 14. That case applied rational basis review based on Seventh Circuit authority, *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003), which the Ninth Circuit has expressly rejected. *Foursquare Gospel*, 673 F.3d at 1068-69; *see also* Plfs' MSJ Opp. at 22 (discussing Ninth Circuit's rejection of *Civil Liberties*). Even if rational basis review were appropriate, *Family Life* is factually distinguishable. There, a church began running an overnight homeless shelter in its basement without first obtaining a permit. 561 F. Supp. 2d at 983. Unlike the Ordinance, which was drafted in response to Plaintiffs' ongoing religious ministry, the zoning code in *Family Life* had conditionally allowed homeless shelters to operate with a permit for years *before* the shelter opened. Indeed, after the city discovered the shelter and explained the requirement, the city *approved* the plaintiff's application pending correction of "105 building, fire and life-safety code violations, including 27 imminent life-safety violations." *Id.* at 983-84.

Here, the City has not pointed to a single government interest to which the Ordinance is rationally related. The City has not explained, and cannot explain, how limiting meals without charge relates to crime reduction. The City has not explained, and cannot explain, how limiting meals without charge is related to improving the "public welfare." Instead, the undisputed evidence shows that serving *improves* the public welfare. Motion at 24; *see, e.g.*, Declaration of Sarah Kaplansky, Dkt. 47 ("Kaplansky Decl.") ¶¶ 3-6 (St. Timothy's Community Kitchen cared

Page 26-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

for a "young, single, and pregnant mother" and ensured her "child was born healthy in large part

to having the mental and physical support" from the kitchen); Declaration of Kirk Bowyer,

Dkt. 45 ("Bower Decl.") ¶¶ 4, 7, 8 (St. Timothy's' feeding ministry provided declarant nutritious

food until he was hired in July 2023 and built his "self esteem"; the ministry helps people "get[]

off the street" because "[w]hen you don't have to worry about where you're going to eat, you can

think forward to the future, plan ahead, and work towards that"); Declaration of Isabel Mora,

Dkt. 49, ¶¶ 3-5 (describing how St. Timothy's' feeding ministry fed her family and helped them

"move from just surviving every day" to attaining "a stable home and employment");

Declaration of Alan Colbert, Dkt. 46, ¶¶ 4, 7 (explaining that, without meals from St. Timothy's'

soup kitchen he would have no other choice but to "eat literal garbage and hope to not get sick").

There are no imminent life-safety violations to which the City can point here, as was the case in

*Family Life*, much less any agreement to allow Plaintiffs to continue their ministry without

limitation after correction. *See Family Life,* 561 F. Supp. 2d at 983-84.

  Finally, the City has not explained, nor can it, how imposing the Ordinance, which limits

the number of days that Plaintiffs may serve "benevolent meals," relates to its purported interest

in "allow[ing]" service of those very same meals. Response at 13, 15. The City's drumbeat that

the Ordinance allows new activity deserves special attention in the constitutional context. It

proceeds from the deeply flawed assumption that U.S. citizens do not have the right to gather and

eat together in observance of their faith unless the government first *grants* them that right. This,

of course, flips the Constitution on its head. Citizens have the right to pray, speak, and assemble

unless the government *restricts* them in some way. Such restrictions are subject to different

standards of review, but the argument that a law must stand because it *allows* individuals to

practice their religion satisfies none of them. The Ordinance fails rational basis review.

Page 27-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

C.    **Summary Judgment Must Enter Because the Ordinance Is Unconstitutionally Vague.**

In response to Plaintiffs' argument that "periodic food service operation," "provides food," and "public" are unconstitutionally vague terms, the City responds with even vaguer definitions: "occurring at regular intervals" and "people in general."  Response at 16.  As discussed in Plaintiffs' Motion, City officials themselves do not appear to understand these terms.  Motion at 36-37.  According to the former Mayor, a meal service associated with "standard faith service," Christmas, Easter, and/or Thanksgiving needs no permit even though they "occur[] at regular intervals."  Hedenskog Dep. 60:3-62:2.  The City manager does not think post-Mass donut service qualifies for regulation, because the attendees are not the "public"— even though churches open their services to "people in general."  Howard Dep. 90:10-24.

Ignoring the testimony of its own councilors and personnel, the City focuses on Plaintiffs' examples of distribution of Halloween candy (not a "food service operation") and a neighborhood barbeque (not open to the public, but rather "neighbors in a neighborhood").  Response at 16.  In so doing, the City underscores just how ripe the Ordinance is for arbitrary enforcement.  If "neighbors" are not the "public/people in general," then why did the City serve a Notice to Abate on Plaintiffs for a feeding ministry that serves individuals that live near St. Timothy's and whom Plaintiffs consider their neighbors?  *See* Howard Dep. Ex. 17.

The City's citation to Fr. Lindley's testimony does not alleviate these concerns.  Response at 15-16.  First, vagueness is an objective test.  *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).  The City identifies no cases in which a plaintiff's *subjective* interpretation defeats a vagueness challenge.  More to the point, Fr. Lindley's interpretation of "benevolent meal service" does not support the City's assertion that the Ordinance satisfies constitutional prerequisites.  Fr. Lindley testified to a general knowledge of how *the City* has

Page 28-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

defined "benevolent meal service"—not its components ("food service operation," "provides

food," "periodic," and "to the public").  Plfs' MSJ Opp. at 31; Lindley Supp. Dep. 124:3-125:11,

152:14-25.  Moreover, he testified that he understood "benevolent meal service" to refer to

"*church* meal services," which he referred to as "soup kitchens." Lindley Supp. Dep. 124:3-

125:11, 152:14-25 (emphasis added).  Fr. Lindley's interpretation tying benevolent meals to

religious worship sharply contrasts with the City's stated position that the Ordinance applies

equally to secular and religious institutions.  Plainly, the parties do not understand the Ordinance

to restrict the same activity.  That is unsurprising as the Ordinance is hopelessly vague and

ambiguous, and it violates due process.

**D.**     **Plaintiffs' Motion for Summary Judgment Should Be Granted Because the
Ordinance Unlawfully Infringes on Plaintiffs' Rights of Free Speech and
Association.**

The City's response to Plaintiffs' free speech and association claim invokes the same

flawed arguments that the City advances in its own Motion: that the Ordinance is a content-

neutral regulation that does not restrict expressive conduct.  The City's attempt to rewrite the

history, intent, and plain language of the Ordinance is meritless.

First, the City's continued insistence that the Ordinance is constitutional because it allows

rather than restricts conduct (Response at 17) is as incorrect here as it is in the free exercise

context.  The City's suggestion that Brookings residents are not allowed to gather and express

themselves at a meal in a residential zone *unless* the City allows it should be rejected out of

hand.

Second, the City again incorrectly suggests that laws are content-neutral so long as they

do not specifically discuss oral or written communication.  *Id.*  "[T]he Constitution looks beyond

written or spoken words as mediums of expression," *Hurley v. Irish-Am. Gay, Lesbian &*

*Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995), and includes worship and discussion within

Page 29-   REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

the umbrella of speech and association protected by the First Amendment. *See Church on the Rock v. City of Albuquerque*, 84 F.3d 1273, 1277-78 (10th Cir. 1996); *Widmar v. Vincent*, 454 U.S. 263, 269 (1981); Plfs' MSJ Opp. at 28.

Here, Plaintiffs' feeding ministry is an expressive mechanism through which St. Timothy's' congregants discuss and communicate about faith, exchange views, build community, and express the importance of feeding the hungry and respecting human dignity that is central to their faith. *See*, *e.g.*, Motion at 39; Lindley MSJ Decl. ¶ 8; Bowyer Decl. ¶ 4 (describing feeding ministry provides fellowship and place to "meet, warm up, eat, and to help one another"); Kaplansky Decl. ¶ 6 (describing feeding ministry as a place to talk to other people and receive mental and physical support); Plfs' MSJ Opp. at 5-6. The Ordinance imposes an arbitrary time, place, and manner restriction on how Plaintiffs may engage in this expressive conduct. And, contrary to the City's conclusory statements, Plaintiffs presented ample evidence that the City passed the Ordinance specifically to restrict this expressive conduct. Motion at 31-34; Howard Dep. Ex. 12 (discussing "method for allowing benevolent meal services in churches"), Ex. 3 at 3 (describing "soup kitchen at St. Timothy's"), Exs. 6 at 14, 7 (letter sent only to Brookings churches), Ex. 8 at 2 (noting that "[t]he BMC doesn't allow restaurants . . . as they are currently operating in the *churches'* community kitchens" (emphasis added)); Plfs' MSJ Opp. at 26-27. In short, this is not a case where the challenged restriction was only tenuously connected to associational rights. *Contra Lyng v. UAW,* 485 U.S. 360 (1988) (food stamps regulation was not direct limit on plaintiffs' right to protest); Response at 17 (citing same). The Ordinance directly limits the number of days in which Plaintiffs may freely engage in protected conduct.

The City's Response discusses only evidence that Plaintiffs submitted. The City asserts that the declarations of two parishioners demonstrate that Plaintiffs' "regular associational activities" continue notwithstanding the Ordinance. Response at 18. This is, of course, a red herring. It is undisputed that these activities continue only per the agreement of the parties until a summary judgment decision in this case. Sondag MSJ Decl. ¶ 18. After that period, the City has threatened to impose fines of $720 per day if St. Timothy's continues to serve "benevolent meals" without a permit and more than two days per week absent Court intervention. Howard Dep. Ex. 17. Threats of enforcement are more than sufficient to challenge a law "in the context of First Amendment speech." *Wolfson v. Brammer*, 616 F.3d 1045, 1059 (9th Cir. 2010); *Italian Colors Rest. v. Becerra*, 878 F.3d 1165 (9th Cir. 2018).

The Ordinance is subject to strict scrutiny and, for the reasons detailed above and in Plaintiffs' Motion and Opposition Brief, the Ordinance falls well short of that exacting standard.[14] *See* Plfs' MSJ at 21-30; Plfs' MSJ Opp. at 24-26.[15]

## E.    The Ordinance Violates Article I, Sections 2, 3, and 8.

In response to Plaintiffs' state constitutional claims, the City again fails to articulate how the Ordinance is generally applicable and neutral. That is because it is not generally applicable or neutral. As discussed above, the Ordinance targets churches for differential treatment relative

---

[14] As discussed in Plaintiffs' Motion and its Opposition Brief, even if the Ordinance were content-neutral, it would still fail intermediate scrutiny because it is not narrowly tailored to advance any significant government interests proffered by the City and, contrary to the City's assertion, does not leave open ample alternative channels for expression. Plfs.' MSJ at 39-40; Plfs.' MSJ Opp. at 29-30.

[15] The City incorrectly asserts that Plaintiffs "appear to have abandoned" their claim that the Ordinance is overbroad. Defs.' Opp'n Br. at 20. Plaintiffs address this claim both in their affirmative Motion and in their Opposition Brief. Plfs.' MSJ at 39 n.13; Plfs.' Opp'n Br. at 30-32. For the reasons discussed therein, Plaintiffs also are entitled to summary judgment on the basis that the Ordinance is unconstitutionally overbroad.

Page 31-   REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

to secular entities.  See Section III.B.1.a, *supra*; Plfs' MSJ Opp. at 32.  As a result, the City must

"'justify [this] limitation on religion by showing that it is *essential to accomplish an overriding*

*governmental interest.*'" *Emp. Div., Dep't of Hum. Res. v. Rogue Valley Youth for Christ*, 307

Or. 490, 498, 770 P.2d 588 (1989) (citation omitted; emphasis added).  The City has not done so,

and cannot do so.  See Section III.A.3*., supra;* Motion at 41; Plfs' MSJ Opp. at 33.  The

Ordinance thereby violates Article I, section 2 because it "control[s] the free exercise" of

Plaintiffs' religion in contravention of Plaintiffs' express right to "worship . . . according to the

dictates of their own consciences."  Or. Const. art. I, §§ 2, 3.

The Ordinance also violates Article I, section 8 for the reasons stated in Plaintiffs'

Motion and Opposition to the City's Motion for Summary Judgment.  Motion at 42-42; Plfs'

MSJ Opp. at 34-35.  It restrains expressive conduct without identifying a harm it seeks to deter,

and the City has not shown, and cannot show, a "threatening effect at the place and time"

regulated.  *State v. Ciancanelli*, 339 Or. 282, 319-20, 121 P.3d 613 (2005); *City of Portland v.*

*Tidyman*, 306 Or. 174, 185, 188, 759 P.2d 242 (1988).

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

Page 32-  REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## IV.  CONCLUSION

For the foregoing reasons and those stated in Plaintiffs' Motion, Plaintiffs respectfully

request that the Court grant summary judgment in their favor, declare the Ordinance unlawful,

and enjoin the City from imposing frequency limitations on Plaintiffs' feeding ministry.

DATED: December 15, 2023          STOEL RIVES LLP


                                  /s/ Amy Edwards
                                  Amy Edwards, OSB No. 012492
                                  amy.edwards@stoel.com
                                  Samantha K. Sondag, OSB No. 154244
                                  samantha.sondag@stoel.com
                                  Rachelle D. Collins, OSB No. 214059
                                  rachelle.collins@stoel.com
                                  760 SW Ninth Avenue, Suite 3000
                                  Portland, OR 97205
                                  Telephone:  503.224.3380

                                  Attorneys for Plaintiffs

121644371.4 0076396-00001