IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ST. TIMOTHY'S EPISCOPAL CHURCH,
by and through THE DIOCESE OF OREGON,
DBA THE EPISCOPAL DIOCESE OF
OREGON, an Oregon nonprofit corporation,
and REVEREND JAMES BERNARD
LINDLEY, vicar of St. Timothy's Episcopal
Church,

                      Plaintiffs,

        v.

CITY OF BROOKINGS, *an Oregon
municipal government,*

                Defendant.

Case No. 1:22-cv-00156-CL

**OPINION AND ORDER**

_____

CLARKE, Magistrate Judge.

    Plaintiffs bring this cause of action against the City of Brookings, Oregon, under the

Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and the First

Amendment of the United States Constitution. Full consent to magistrate jurisdiction was

entered on August 15, 2022 (#15). The case comes before the Court on motions for summary

judgment filed by both parties, as well as a motion to dismiss filed by the Defendant. For the

reasons below, Plaintiffs' motion for summary judgment (#57) is GRANTED, and Defendant's

motions for summary judgment (#54) and dismissal (#75) are DENIED. Final Judgment will be

entered on behalf of the Plaintiffs.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## REGULATORY BACKGROUND

"Congress enacted RLUIPA and its sister statute, the Religious Freedom Restoration Act of 1993 ("RFRA") . . . 'in order to provide very broad protection for religious liberty.'" *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)). Under RLUIPA, "[n]o government shall impose or implement a land use regulation

in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1).

Prior to 1990, the Supreme Court employed a balancing test in free exercise cases, "consider[ing] whether a challenged government action that substantially burdened the exercise of religion was necessary to further a compelling state interest." *Holt*, 574 U.S. at 357. But, in *Employment Division v. Smith*, 494 U.S. 872 (1990), the Court held that the Free Exercise Clause does not excuse a person of her obligation to comply with a neutral, generally applicable law that incidentally burdens her religious exercise. Congress responded to *Smith* by enacting RFRA, "in order to provide greater protection for religious exercise than is available under the First Amendment." *Holt*, 574 U.S. at 357. RFRA prohibits the government from "substantially burden[ing] a person's exercise of religion[,] even if the burden results from a rule of general applicability," unless the government demonstrates that doing so "is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb-1. The Supreme Court, however, held RFRA unconstitutional as applied to actions of the state and local governments because the statute exceeded Congress's enforcement power under Section 5 of the Fourteenth Amendment. *See City of Boerne v. Flores*, 521 U.S. 507 (1997).

Intent on providing this protection at all levels, Congress then enacted RLUIPA. As co-sponsors Senators Orrin Hatch and Ted Kennedy observed, RLUIPA "is a targeted bill that addresses the two frequently occurring burdens on religious liberty" and "is based on three years of hearings . . . that addressed in great detail . . . the need for legislation." 146 Cong. Rec. 16,698, 16,698 (2000) (joint statement of Sens. Hatch and Kennedy); *see also* U.S. Dep't of

Justice Civil Rights Div., *Report on the Twentieth Anniversary of the Religious Land Use and Institutionalized Persons Act* 3–4 (2020), https://www.justice.gov/crt/case-document/file/1319186/download. Indeed, as Professor Doug Laycock testified to the Senate Committee on the Judiciary, "if there is any area of regulation where you can make a clear record of widespread discrimination, it would be zoning and land use regulation." *Congress' Constitutional Role in Protecting Religious Liberty: Hearing Before the S. Comm. on the Judiciary,* 105th Cong. 43 (1997) (statement of Douglas Laycock, Professor, University of Texas). This "substantial record" of "cumulative and mutually reinforcing" evidence "demonstrates that land use regulation is a substantial burden on religious liberty." Douglas Laycock, *State RFRAs and Land Use Regulation,* 32 U.C. Davis L. Rev. 755, 770 (1999).

The discriminatory regulations that prompted RLUIPA were sometimes found to be "by design," sometimes by "neutral application," and "sometimes by both." H.R. Rep. No. 106-219, at 18 (1999). In other words, RLUIPA addresses both "intentional discrimination caused by abuse in the regulation of land uses" and "covert' discrimination that was masquerading in the form of neutral zoning laws." Patricia E. Salkin & Amy Lavine, *The Genesis of RLUIPA and Federalism: Evaluating the Creation of a Federal Statutory Right and its Impact on Local Government,* 40 Urb. Law. 195, 256 (2008). Congress recognized "a nationwide problem": churches "are frequently discriminated against on the face of zoning codes and also in the highly individualized and discretionary processes of land use regulation." 146 Cong. Rec. 16,698, 16,698–99 (2000) (joint statement of Sens. Hatch and Kennedy).

As the Supreme Court has recognized, the protection offered to religious liberty through RLUIPA is quite broad. For example, "Congress defined 'religious exercise' capaciously to include 'any exercise of religion'"—even if not an exercise that is "compelled by, or central to, a

system of religious belief." *Holt*, 574 U.S. at 358 (quoting 42 U.S.C. § 2000cc-5(7)(A)). "Congress mandated that this concept 'shall be construed in favor of a broad protection of religious exercise." *Id.* (quoting 42 U.S.C. § 2000cc-3(g)).  RLUIPA may even "require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." *Id.* (quoting 42 U.S.C. § 2000cc-3(c)).

## FACTUAL BACKGROUND

### a.  *History of St. Timothy's Meal Service.*

Since 1953, St. Timothy's Episcopal Church ("St. Timothy's") has operated at 401 Fir Street in Brookings. *See* Pls.' Mot. Summ. J. ("Pls. Mot.") 3, (#43).  The City of Brookings ("the City" or "the Defendant") adopted its current zoning code in 1989. Def.'s Mot. Summ. J. ("Def. Mot.") 12, ¶ 3 (#54); *see also* Brookings, Or. Mun. Code ("Brookings Code") § 17.01.030. Under the code, St. Timothy's was zoned as an R-1 single-family residential district. Pls. Mot. 3; Def. Mot. 12, ¶ 3. Churches are one of 21 non-single-family residential uses—including hospitals, nursing homes, day care facilities, country clubs and golf courses, public halls, and bed-and-breakfasts—that may operate in R-1 districts subject to a conditional use permit. Brookings Code § 17.20.040(B). Because St. Timothy's pre-dated the Brookings Code, it operated under a "de facto conditional use permit." Def. Mot. 12, ¶ 3.

St. Timothy's, along with other churches in Brookings, began offering free lunchtime meals to persons in need in 2009. Def. Mot. 13, ¶ 4; Pl. Mot. 3.  The City was fully aware of this activity.  From 2009 to 2018, Ron Hedenskog managed St. Timothy's meal service. Decl. of Samantha Sondag ("Sondag Decl.") Ex. 3, Dep. of Ronald William Hedenskog ("Hedenskog Dep.") 12:1–3, (#51-3). For approximately six of those years, from 2012 to 2018, Mr. Hedenskog also served as the City's Mayor. Hedenskog Dep. 13:4–10, 16:8–9, Def. Mot. 16, ¶

11. Anthony Baron, the City's Public Works and Development Services Director, testified that he has known about St. Timothy's meal service since 2012, when he first began working for the City. Sondag Decl. Ex. 4, Dep. of Anthony Baron ("Baron Dep.") 15:25–16:14 (#51-4).

According to Plaintiffs, providing free meals to persons in need is "fundamental" to their Episcopalian faith. Decl. of the Rev. James Bernard Lindley ("Lindley Decl.") ¶ 2, (#48); Decl. of the Rev. Diana Akiyama ("Akiyama Decl.") Ex. 3, at 1–3 (#44). Reverand Lindley, St. Timothy's vicar, stated that "[i]t is my deeply held religious belief that feeding the hungry, respecting the dignity of every human being, and building community are necessary acts during our time on Earth." Lindley Decl. ¶ 2. He described St. Timothy's free meals program as "acts of worship critical to my Christian faith." *Id.* ¶ 4. City officials testified that, while they disagree with the Rev. Lindley's views on this question, they have no basis to question the sincerity of his beliefs. Hedenskog Dep. 45:15-46:11; Baron Dep. 15:8-11; Sondag Decl. Ex. 1, Dep. of Janelle Howard ("Howard Dep.") 65:14-16, (#51-1).

Mayor Hedenskog testified that the number of individuals who use St. Timothy's meal services increased significantly since 2009. Hedenskog Dep. 15:7-14. Concurrent with a rise in homelessness in Brookings, the number of people St. Timothy's served per day tripled, and St. Timothy's increased its meal service from one day to at least three days per week. Hedenskog Dep. 13:4-10, 15:7-14. From 2015 to March 2020, St. Timothy's was serving free meals on Saturdays, Sundays, Tuesdays, and every other Monday. Lindley Decl. ¶ 6; Def. Mot. 15, ¶ 8. When the Covid-19 Pandemic hit, other churches in the Brookings area stopped serving meals. Thus, from April 2020 through early 2022, due to the unavailability of other free meal services in Brookings, St. Timothy's increased their ministry and served meals five to six times per week.

Lindley Decl. ¶ 8. For approximately twelve years, St. Timothy's meal service operated without interference from the City.

### b. Car camping permit, neighbor complaints, and City response.

In early 2021, as part of a City-sponsored program to help people who were homeless, the City issued St. Timothy's a permit to host individuals living in cars on its property ("Rule 2020-1 permit"). No other churches in Brookings applied for a Rule 2020-1 permit. In response to the issuance of this permit and the resulting group that gathered to stay overnight in the parking lot, a neighbor urged the City to "reconsider allowing vagrants to continue to live at St. Timothy's church," citing concerns about "public safety and the personal expenses of homeowners living next to the church." Howard Dep. Ex. 15, at 93-113 (#51-1). Another resident complained that St. Timothy's "hand[ed] out food all day and let transients hang out there and stroll over to the park to hang out." *Id.* Ex. 3, at 10.

In April 2021, the neighbors presented the City with a "Petition to Remove Homeless from St. Timothy Church," which similarly asked the City to reconsider "allowing vagrants" to continue to "live and congregate at St. Timothy's Church." *See id.* at 7-9. At a City Council meeting, the petition's author complained about "people just showing up in the middle of the night" engaging in "very suspicious behavior[.]" He further claimed that he had recorded "multiple crimes committed on [his] [video] cameras," but that authorities had declined to prosecute.

Around the same time that neighbors began complaining about trespassing and criminal activity at St. Timothy's, the church began participating in the Brookings Police Department's "Property Watch" program. Under this program, St. Timothy's signed an agreement authorizing police officers to enter St. Timothy's without prior notice or authorization to curb nuisance

issues and trespassing. Lindley Decl. ¶ 10; *see also* Baron Dep. 38:9-16.  On June 7, 2021, St. Timothy's Rule 2020-1 permit expired, and St. Timothy's ceased hosting people residing in vehicles on church property. Howard Dep. Ex. 3, at 1-6.

In response to the complaints about people congregating at St. Timothy's, and despite the church's cessation of the car camping program and cooperation with law enforcement, the City reported St. Timothy's to various public health agencies, purportedly to ensure that St. Timothy's meal service "complies with the state's food sanitation requirements." Sondag Decl. Ex. 14, Email from Dan Lawler to Erica Vaness (June 23, 2021 11:52 AM PDT). There is no evidence in the record that the City had previously raised health concerns over St. Timothy's meal service. Nevertheless, at a City Council workshop on June 7, 2021, the City stated that St. Timothy's may be operating an unpermitted "commercial kitchen." Howard Dep. Ex. 3.

St. Timothy's responded to these allegations by applying for and receiving a license to serve meals from the Oregon Health Authority ("OHA"). Lindley Decl. ¶ 11 & Ex. 2. About a month later, on July 29, 2021, the City—citing the OHA license it had prompted St. Timothy's to obtain— notified St. Timothy's that it was illegally operating a "commercial kitchen" and a "restaurant" in a single-family residential district. Howard Dep. Ex. 7; Def. Mot. 16, ¶ 12. Restaurants are not an allowed non-single-family residential use like churches, hospitals, golf courses, and bed-and-breakfasts. Brookings Code § 17.20.040(B).  There is no evidence in the record that the City had previously questioned whether St. Timothy's meal service was permitted under the zoning code.

### c. *The Ordinance.*

Three months later, on October 25, 2021, the City enacted an ordinance amending the zoning code to create a new conditional permitted use for residential districts, namely,

"[b]enevolent meal services," and restricting how often such meal services could occur. *See* Brookings Code § 17.20.040(V) ("the Ordinance"). The Ordinance defines "[b]enevolent meal services" as "a periodic food service operation that provides food to the public without charge." *Id.* § 17.08.020. The Ordinance requires organizations providing benevolent meal services to obtain conditional use permits subject to several conditions, including that such meals may be served no more than two days per week. *Id.* § 17.124.050(A). This limitation applies regardless of whether providing "benevolent meal services" was the property's "primary use" or "in combination with another use permitted outright or conditionally[.]" *Id.* § 17.20.040(V).

On November 30, 2021, the Diocese sent a letter advising the City that the Ordinance violated the Oregon and federal constitutions, as well as RLUIPA, and notified the City of its intent to sue should the City not repeal or amend the Ordinance. Akiyama Decl., ¶ 4, Ex. 3. The City did not respond to that letter. *Id.*

### d. The Lawsuit.

On January 28, 2022, Plaintiffs filed this lawsuit seeking a declaration that the Ordinance is unlawful and an injunction against its enforcement. For more than a year, the parties progressed through discovery in this case. St. Timothy's continued serving meals three to four days a week and the City refrained from issuing a notice of violation to St. Timothy's under the Ordinance. That changed on April 14, 2023, when the City delivered a "Notice of Abatement" to St. Timothy's. The Notice stated in pertinent part:

> St. Timothy's is operating a Benevolent Meal Service without a conditional use permit in addition to a variety of other social services, including an outreach clinic, a day program, and an advocacy program in violation of 17.01.040 Compliance with code provisions in the Brookings Municipal Code (BMC).
> . . . .
> You are hereby directed to abate this violation by applying for a Conditional Use Permit within ten (10) days from the date of receipt

> of this notice. Failure to abate the violation may warrant issuance of
> a citation and imposition of a civil penalty of up to $720.00. Each
> day's violation constitutes a separate offense. In addition, the City
> may abate the violation and the cost of the abatement will be charged
> to you.

Howard Dep. 106:6-107:22, Dep. Ex. 18.

Before filing a motion for a temporary restraining order, St. Timothy's requested that the City refrain from enforcing and assessing fines pursuant to the Notice of Abatement during the pendency of this case. The City agreed to do so until a "summary judgment decision" with respect to the "benevolent meal services," but not with respect to St. Timothy's "other social services." Sondag Decl. ¶ 18. Thus, to avoid daily $720 fines for, among other things, opening its doors to the public on Mondays, Wednesdays, and Fridays, St. Timothy's filed with the City objections to and an appeal of the notice as it pertained to St. Timothy's' other "social services." *See, e.g., id.* Ex. 17 at 12-55 (June 27, 2023, Agenda Packet). Since then, St. Timothy's has been defending its charitable ministries as "church uses" in a parallel proceeding. *Id.* So far, the City Planning Commission has denied St. Timothy's objections, the City Council has affirmed the decision by the Planning Commission, and St. Timothy's is appealing the case to the Land Use Board of Appeals (LUBA) of Oregon.

## DISCUSSION

The parties have filed cross motions for summary judgment on all claims. For the reasons below, Plaintiffs are entitled to summary judgment on the RLUIPA claim. It is not necessary to reach the merits of the other three claims. *See, e.g., Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) (courts do not decide constitutional questions if statutory basis for resolution exists); *Standard Oil Co. of Cal. v. Arizona*, 738 F.2d 1021, 1023 (9th Cir. 1984)

(same). Therefore, Plaintiff's motion for summary judgment is granted, and the City's motions are denied. Final judgment shall be entered for the Plaintiffs.

As a preliminary matter, there can be no genuine question that St. Timothy's feeding ministry is a sincerely held religious belief. The legal analysis of this issue is discussed below, but as a general, practical matter, feeding the hungry and caring for the most vulnerable members of a community is at the very heart and foundation of the Christian tradition. The textual, Biblical support for this practice is well established:

> For there will never cease to be poor in the land. Therefore, I command you, "You shall open wide your hand to your brother, to the needy and to the poor, in your land."

Deuteronomy 15:11.

> Then the righteous will answer him, saying, "Lord, when did we see you hungry and feed you, or thirsty and give you drink? And when did we see you a stranger and welcome you, or naked and clothe you? And when did we see you sick or in prison and visit you?" And the King will answer them, "Truly, I say to you, as you did it to one of the least of these my brothers, you did it to me."

Matthew 25:37-40.

> John answered, "Anyone who has two shirts should share with the one who has none, and anyone who has food should do the same."

Luke 3:11.

Regarding the Episcopalian tradition in particular, St. Timothy's feeding ministry is in keeping with the "core beliefs that guide the Episcopal church: feed the hungry, respect the dignity of every human being, and build community." Lindley Dep. ¶ 2. In her deposition, Right Reverend Diana D. Akiyama states that members of the Episcopal Church "have been given a mandate by Jesus Christ as stated in the scriptures to feed the hungry, clothe the naked, to

comfort the afflicted"; indeed, this is "at the heart of . . . our Christian call." Akiyama Dep.

39:24-40:7. Plaintiffs point to the Book of James as demonstrative of this principle:

> What good is it . . . if you say you have faith but do not have works?
> Can faith save you? If a brother or sister is naked and lacks daily
> food, and one of you says to them, "Go in peace; keep warm and eat
> your fill," and yet you do not supply their bodily needs, what is the
> good of that? So faith by itself, if it has no works, is dead.

James 2:14-17.

There can be no genuine dispute that feeding the hungry faithfully upholds one of the

most admirable tenants of the Christian religion.

### A. Plaintiffs' motion for summary judgment is granted because the City's Ordinance violates RLUIPA.

RLUIPA prohibits the government from implementing a land use regulation that imposes

a substantial burden on religious exercise unless the government can show that the regulation is

the least restrictive means of achieving a compelling governmental interest. 42 U.S.C. §

2000cc(a)(1). RLUIPA provides for strict scrutiny of even generally applicable, facially neutral

zoning laws "pursuant to which governments may make 'individualized assessments' of the

property at issue." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059,

1066 (9th Cir. 2011) (citations omitted).

A plaintiff has the initial task of proving that a challenged regulation substantially

burdens their religious exercise. Then the burden shifts to the government to prove, under a strict

scrutiny analysis, that its action was the least restrictive means of furthering a compelling

interest. *Id.* at 1066-67; 42 U.S.C. § 2000cc-2(b). The government cannot satisfy its burden by

"rely[ing] on 'broadly formulated' governmental interests"; rather, strict scrutiny requires

"specific application" of the asserted interest and regulation to the community at hand. *Mast v.*

*Fillmore Cnty., Minn.*, 141 S. Ct. 2430, 2432 (2021) (Gorsuch, J. concurring) (citing *Fulton v.*

*City of Phila.*, 141 S. Ct. 1868, 1881 (2021); *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)).

Here, the Ordinance violates RLUIPA because there is no genuine dispute that (1) the Ordinance is a land use regulation that substantially burdens Plaintiffs feeding ministry, which is an exercise of Plaintiffs' religion; (2) the City has not articulated a "compelling government interest" served by burdening that exercise; and, even if the City had identified a compelling interest, (3) the Ordinance is not the least restrictive means to achieve it.

1.  **Under RLUIPA, the Ordinance is a land use regulation that substantially burdens Plaintiffs' feeding ministry, which is a religious exercise.**

    a.  **The Ordinance is a land use regulation, to which RLUIPA applies.**

Under RLUIPA, a "land use regulation" is "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. § 2000cc-5(5). "RLUIPA applies when the government may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use." *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978, 986 (9th Cir. 2006) (citing 42 U.S.C. § 2000cc(2)(C)). In other words, when a land use code requires an application for a permit that "results in a case-by-case evaluation of the proposed activity of religious organizations," that is an "individual assessment regime" under RLUIPA. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir. 2004); *see also Konikov v. Orange County*, 410 F.3d 1317 (11th Cir. 2005) (when zoning code provides process "for individualized assessments," RLUIPA applies).

As a matter of law, the Ordinance is a "land use regulation" subject to RLUIPA. It is a zoning law that on its face and in its application limits Plaintiffs' use of the land at 401 Fir Street, including the church affixed to that property. Like the Brookings Land Development Code more generally, the Ordinance permits the City to take into account particular details of an applicant's use of land, including the days and times of the week that a church provides "benevolent meal services." BMC 17.124.050. In other words, when a church or an organization applies for a conditional use permit under the Ordinance, the City proceeds with an individualized assessment, which includes evaluating whether the church is in compliance with the limitations of the Ordinance. Thus, RLUIPA applies to the Ordinance.

The City argues that Plaintiffs cannot bring this claim because they have not submitted an application for a conditional use permit under the Ordinance, and therefore the City has not conducted an individualized assessment in this specific case. The Court disagrees. Nothing in RLUIPA requires that the individualized assessment actually take place in order for RLUIPA to apply. It is sufficient that the Ordinance "permits" the City to conduct an individualized assessment in the process of evaluating any permit application. 42 U.S.C. § 2000cc(2)(C)).

Moreover, the City has conducted an individualized assessment in this case. On April 14, 2023, the City sent St. Timothy's a "Notice of Abatement," which stated in pertinent part:

> St. Timothy's is operating a Benevolent Meal Service without a conditional use permit in addition to a variety of other social services, including an outreach clinic, a day program, and an advocacy program in violation of 17.01.040 Compliance with code provisions in the Brookings Municipal Code (BMC).

Howard Dep. 106:6, Ex. 18. This Notice was clearly the result of the City taking into account St. Timothy's particular activities and use of the land to determine compliance with the code. Thus,

RLUIPA does not require that an individualized assessment actually take place, but even if it did, that condition would be met in this case.

### b.  St. Timothy's feeding ministry is a religious exercise.

RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "Religious exercise" is defined broadly because "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)). "The use . . . of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses . . . the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B).

There is no genuine dispute that Plaintiffs' feeding ministry is a "religious exercise" under RLUIPA. Courts across the country have recognized that ministering to the poor is an exercise of a sincerely held "religious duty to feed the hungry and clothe the naked." *Harbor Missionary Church Corp. v. City of San Buenaventura*, 642 F. App'x 726, 729 (9th Cir. 2016) (discussing church's "homeless ministry"); *W. Presbyterian Church v. Bd. of Zoning Adjustment of D.C.*, 862 F. Supp. 538, 544, 546 (D.D.C. 1994) (ministering to poor is "in every respect" "religious activity and a form of worship" and "the concept of acts of charity as an essential part of religious worship is a central tenet of all major religions"); *Chosen 300 Ministries, Inc. v. City of Phila.*, 2012 WL 3235317, at *17 (E.D. Pa. Aug. 9, 2012) ("Acts of charity are central to Christian worship."); *see also Micah's Way v. City of Santa Ana*, 2023 WL 4680804, at *5 (C.D. Cal. June 8, 2023) (faith-based organization plausibly alleged that "food distribution activities

are religious exercise" because such "charitable activity [was] pursuant to the teachings and words of Jesus Christ").

Here, it is undisputed that St. Timothy's has been providing meals to the hungry for over a decade. The City Manager, Mayor, Council President, and Public Works Director all testified they had no reason to question the validity of Plaintiffs' religious beliefs. Howard Dep. 64:17-65:16; Hedenskog Dep. 45:15-46:11; Deposition of Ed Schreiber 8 ("Schreiber Dep.") 53:16-25; Baron Dep. 15:8-11. Even without this undisputed evidence, it is not for the Court to "inquire into the truth or falsity of stated religious beliefs." *Int'l Church*, 673 F.3d at 1069.

### c. The Ordinance substantially burdens Plaintiffs' religious exercise by limiting the number of days that they can provide benevolent meal services.

A substantial burden is one that is "oppressive to a significantly great extent." *Guru Nanak*, 456 F.3d at 988 n.12 (citation omitted). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Int'l Church*, 673 F.3d at 1067 (internal quotation marks and citation omitted). Restrictions that "substantially limit" an intended religious use of a property create a substantial burden under RLUIPA. *DiLaura v. Twp. Of Ann Arbor*, 112 F. App'x 445, 446 (6th Cir. 2004).

Last year, the Central District of California held that where a city has represented "that continued distribution of food will be met with 'issuance of administrative fines,'" it has "plausibly put pressure on [the plaintiff] to modify its behavior and violate its beliefs by abandoning its charitable practices." *Micah's Way*, 2023 WL 4680804, at *5 (citation omitted) (denying motion to dismiss).

Here, it is undisputed that St. Timothy's either provides or hosts a benevolent meal service three to four times per week and that, in the past, St. Timothy's has provided a

benevolent meal service up to six times per week. The clergy and the members of St. Timothy's have provided food to the hungry for over a decade, and they believe it is a central tenant of their faith to do so. The Ordinance requires that any applicant for a conditional use permit must agree to limit their benevolent meal service to two days per week. By limiting the number of days per week that St. Timothy's can provide benevolent meal service, the Ordinance forces Plaintiffs to choose between acting in accordance with their faith or facing a fine of $720 per day. The Ordinance thus puts "substantial pressure" on Plaintiffs "to modify their behavior and to violate their beliefs." The Ordinance imposes a substantial burden on Plaintiffs' religious exercise.

### 2. The City has not identified any compelling government interest served by limiting the number of days that benevolent meals can be provided.

Plaintiffs have carried their burden to show a prima facie case under RLUIPA. The burden now shifts to the City to show a compelling government interest. Only "interests of the highest order" are considered compelling governmental interests. *Int'l Church*, 673 F.3d at 1071 (quoting *In Grace Church v. City of San Diego*, 555 F. Supp. 2d 1126 (S.D. Cal. 2008)). "[B]roadly formulated interests" do not withstand strict scrutiny. *Fulton*, 141 S. Ct. at 1881 (citation omitted); *Mast*, 141 S. Ct. at 2430. Rather, the government "must show 'a compelling interest in imposing the burden on religious exercise in the particular case at hand, not a compelling interest in general.'" *Grace Church*, 555 F. Supp. 2d at 1140 (quoting *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 353 (2d Cir. 2007)).

The City asserts two categories of justification for the Ordinance: (1) "protect[ing] the public welfare, maintain[ing] peace and order, and prevent[ing] crime"; and (2) facilitating the provision of "benevolent meal services" in residential areas, which were "not allowed" under the BMC prior to adopting the Ordinance. Sondag Decl., Ex. 19 (Responses to Interrogatories 7, 9, 10). Neither is a compelling government interest under RLUIPA.

First, protecting the public welfare, maintaining peace and order, and preventing crime are all certainly compelling government interests in a broad, general sense. However, the City has not articulated how the specific provisions of the Ordinance that limit meal service to two days per week, or even three days per week if the amendment to the Ordinance is enacted, serve to protect public welfare, maintain peace and order, or prevent crime in practical application. The Court can find no logical, causal relationship between the limitation and these interests.

Second, the City seeks to reframe the intention of the Ordinance by asserting that the provisions do not limit benevolent meal service at all, but are, in fact, "permissive." The City argues that, without a conditional use permit, Plaintiffs would not be allowed to serve meals at all. This argument is belied by the uncontested facts of this case, which include St. Timothy's decade-long record of benevolent meal service, with City knowledge, and without City interference. Additionally, the City has not moved to restrict the number of days that meal services can be provided at any of the other 20 non-single-family residential use types that serve meals to the public, such as golf courses, daycare facilities, or hospitals. It is unclear why a church serving meals to the public for free would be considered a "restaurant" under the City zoning laws, but a golf course or bed and breakfast serving paid meals would not. This blatant inconsistency undermines the idea that without the Ordinance and a conditional use permit, St. Timothy's would be disallowed from serving meals at all. If the other non-single-family residential uses can serve meals unrestricted, why not a church? Thus, the idea that the Ordinance's limitation is permissive instead of restrictive defies any stretch of the imagination.

Similarly, "[o]ne way to evaluate a claim of compelling interest is to consider whether in the past the governmental actor has consistently and vigorously protected that interest." *Grace Church*, 555 F. Supp. 2d at 1140-41. Alleged governmental concerns "ring hollow" when the

government has been "complacent" about a subject for many years only to "suddenly burst into action." *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1225, 1228 (C.D. Cal. 2002). Here, the City has long permitted, and arguably even supported benevolent meal services at St. Timothy's, without limitation as to the number of days such meals could be provided. This undisputed fact is fatal to their argument that the Ordinance's restrictions are intended to promote public welfare, peace, and order, and to deter crime.

Plaintiffs also assert that the City's identified interests are not compelling because they are "post-hoc rationalizations." The "strict scrutiny analysis requires not only that the government's stated purpose is a compelling interest, but that it is also a genuinely-held purpose." *Cottonwood*, 218 F. Supp. 2d at 1228 (emphasis added). "To be a compelling interest, the State must show that the alleged objective was the legislature's 'actual purpose'" and "the legislature must have had a strong basis in evidence to support that justification[.]" Shaw v. Hunt, 517 U.S. 899, 908 n.4 (1996). "[P]ost-hoc rationalizations provide an insufficient basis to find a compelling governmental interest"; rather, "the court must look to the compelling interest asserted by defendants at the time of the ban." *Native Am. Council of Tribes v. Weber*, 897 F. Supp. 2d 828, 849 (D.S.D. 2012), *aff'd*, 750 F.3d 742 (8th Cir. 2014); *Masonry Bldg. Owners of Or. v. Wheeler*, 394 F. Supp. 3d 1279, 1306 (D. Or. 2019) ("[S]hifting post-hoc rationalizations do little to advance the City's stated purposes for passing the Ordinance.").

Plaintiffs argue that the facts in the record show that the City's stated interests of public welfare, maintaining peace and order, and preventing crime were not "genuinely-held" purposes behind enactment of the Ordinance. Plaintiffs point to the fact that the City used St. Timothy's acquisition of an OHA commercial kitchen permit to suddenly disallow their food service, even though acquiring the permit would serve to ensure public health and safety. Sondag Decl. Exs.

13, 15; Howard Dep. Exs. 7, 11. Meanwhile, food prepared at home and brought to a church potluck would not be subject to the Ordinance, even though no food safety regulations would serve to ensure health and sanitation practices for that food. Plaintiffs also point to comments by City officials that St. Timothy's ministry included "vagrants," who were a "blight" on Brookings, and that City officials believed the Ordinance could "reduce the amount of activity" in that area. Baron Dep. Ex. 43; Baron Dep. 27:22-28:8; Hedenskog Dep. 71:5-12, 73:7-12 (Ordinance "limit[s] the impact" of "indigent individuals hanging around the meal service location").

Significant evidence exists in the record to show that the City of Brookings intended the Ordinance to restrict St. Timothy's service to the homeless population and other individuals in need, and to reduce the number of such people congregating in the area around St. Timothy's Church. However, such a finding is not material to the Court's ruling that the Ordinance violates RLUIPA, as concluded below. Moreover, the City disputes Plaintiffs' contention that the Ordinance was intended to limit service to any specific population or to reduce any specific population in a given area. The Court is conscious of its role not to weigh disputed facts. Given that reaching a conclusion on this issue is not material to the legal analysis, the Court declines to make a finding regarding the true intentions behind the City's enactment of the Ordinance.

### 3. Even if the City's stated interest was compelling, the Ordinance is not the least restrictive means to achieve that interest.

Even if the City could articulate a genuinely-held, compelling government interest, it also bears the burden of showing that the regulation is the least restrictive means of advancing that interest. 42 U.S.C. § 2000cc. A government "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier v. Woodford*, 418 F.3d

989, 999 (9th Cir. 2005). Here, even if the City legitimately wanted to allow benevolent meal

service that was previously disallowed, the City has not shown that the Ordinance was the least

restrictive means to achieve that purpose. No explanation has been provided for the restriction

on the number of days that meal service can be offered under the Ordinance, and the City has not

shown that it considered and rejected the efficacy of less restrictive measures.

For all of the reasons above, the Ordinance violates RLUIPA.

### 4. The Court is not required to reach Plaintiff's constitutional claims due to Plaintiff's success on the merits of the RLUIPA claim.

As discussed above, because Plaintiffs prevail under RLUIPA, the Court need not reach

Plaintiffs' constitutional claims. *See, e.g., Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557

U.S. 193, 205 (2009) (courts do not decide constitutional questions if statutory basis for

resolution exists); *Standard Oil Co. of Cal. v. Arizona*, 738 F.2d 1021, 1023 (9th Cir. 1984)

(same). Plaintiffs' motion for summary judgment is therefore granted in its entirety.

### B. The Defendant's motions are denied.

Defendant City of Brookings' motion for summary judgment is denied for all of the

reasons discussed above. The Ordinance violates RLUIPA, and Plaintiffs are entitled to summary

judgment.

Defendant City of Brookings' motion to dismiss seeks to moot this case due to the City's

recent amendment to the Ordinance, which allows benevolent meal service up to three days per

week, instead of the prior limitation of two days per week. It is unclear to the Court whether the

amendment has been officially adopted as part of the Ordinance. Even if it has been adopted, it

is not sufficient to avoid summary judgment on the merits of this case. Plaintiffs have submitted

undisputed evidence in the record that St. Timothy's currently serves benevolent meals three to

four times per week, and there have been times in the recent past that meals have been served up

to six times per week. Therefore, the amendment to the Ordinance does not materially change the circumstances of this case. Defendant's motion to dismiss is denied.

### CONCLUSION

The City of Brookings is very fortunate to have Reverand Lindley and the entire congregation of St. Timothy's as compassionate, caring, and committed members of the community. Consistent with their faith, and with the City's full awareness, St. Timothy's has cared for vulnerable people in the community for decades, including during the early days of the Covid-19 pandemic when there were few, if any, other accessible resources in the area. The clergy and the congregation at St. Timothy's have shown that they have been prepared to work with the City to care for those in need, and at the same time preserve the livability of the area for their neighbors by cooperating with law enforcement when necessary. The homeless are not "vagrants," but are citizens in need. This is a time for collaboration, not ill-conceived ordinances that restrict care and resources for vulnerable people in our communities.

### ORDER

For the foregoing reasons, Plaintiffs' motion for summary judgment (#43) is GRANTED, and Defendant's motions for summary judgment (#54) and dismissal (#75) are DENIED. Final Judgment will be entered on behalf of the Plaintiffs.

DATED this __27__ day of March, 2024.

MARK D. CLARKE
United States Magistrate Judge